**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA,**<br>**700 Spring Forest Rd # 400**<br>**Raleigh, NC 27609**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JONI J. JOHNSON, M.D.**<br>**50 Lafayette Street**<br>**Stafford, VA 22554**<br><br>**and**<br><br>**PEDIATRIC PARTNERS FOR ATTENTION AND LEARNING, INC.**<br>**2128 Jefferson Davis Highway, Suite 201**<br>**Stafford, VA 22554**<br>**Serve: Registered Agent**<br>**Joni Johnson**<br>**50 Lafayette Street**<br>**Stafford, VA 22554**<br><br>**and**<br><br>**VERNON GREEN, JR.**<br>**221 Pearl Blossom Road**<br>**Stafford, VA, 22554**<br><br>**and**<br><br>**G CUBED MINISTRIES d/b/a GCUBED COMMUNITY SERVICES a/ka G3 COMMUNITY SERVICES**<br>**10 Center Street, Suite 107**<br>**Stafford, VA, 22556**<br>**Serve: Registered Agent**<br>**Vernon Green, Jr.**<br>**221 Pearl Blossom Road**<br>**Stafford, VA, 22554** | ) | **Case No.:** |

**COMPLAINT**
**(Declaratory Judgment)**

Plaintiff, Medical Mutual Insurance Company of North Carolina ("MMIC"), by counsel, for its cause of action against Defendants Joni J. Johnson ("Johnson"), Pediatric Partners for Attention and Learning, Inc. ("PP4AL"), G Cubed Ministries doing business as GCubed Community Services and also known as G3 Community Services ("G3") and Vernon Green, Jr. ("Green"), states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs, and MMIC and the Defendants are citizens of different states.

2. This Court also has jurisdiction over this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

**VENUE**

3. Venue is appropriate in this Circuit pursuant to 28 U.S.C. § 1391(b)(2). The insurance policy that is the subject of this Declaratory Judgment was entered into with Joni J. Johnson, whose principal place of business is located in Stafford County, Virginia. The underlying Lawsuit that is the subject of this Declaratory Judgment action is pending in the Circuit Court of Stafford County, Virginia.

**PARTIES**

4. Defendant Johnson is a resident of Virginia.

5. Defendant PP4AL is a health care practice headquartered in Stafford County, Virginia and incorporated in Virginia. At all times relevant hereto, upon information and belief, Johnson was PP4AL's sole shareholder.

6. Defendant Green is a resident of Virginia.

7. Defendant G3 is a Virginia corporation with its principal place of business in Stafford County, Virginia.

8. Plaintiff MMIC is a mutual insurance company organized under the laws of North Carolina with its principal place of business in North Carolina.

## FACTS

### *The Underlying Lawsuit and Allegations of the Underlying Complaint*

9. Johnson, Avery, PP4AL, Green and G3 are parties to a lawsuit brought in the Circuit Court of Stafford County styled G3 Community Services and Vernon Green, Jr. v. Coventry Health Care of Virginia, Inc., Pediatric Partners for Attention and Learning, Inc., Sharonda L. Avery, Joni J. Johnson and Maryann Byrne, C.A. No. CC19-2221 (the "Lawsuit"). MMIC is defending Johnson and PP4AL in the Lawsuit under a reservation of rights.

10. The Complaint[1] filed in the Lawsuit ("Complaint") asserts that in early 2016 Joni J. Johnson ("Johnson") was the owner and founder of Pediatric Partners for Attention and Learning, Inc. ("PP4AL"). Complaint at ¶ 20. Around that time, Green "selected" Johnson in connection with treatment he was seeking for post-traumatic stress disorder ("PTSD"). ¶¶ 19-20. Johnson referred Green to Sharonda L. Avery ("Avery"), whom Johnson identified to Green as a licensed psychologist authorized to practice in Virginia. ¶ 22. Both Johnson and Avery "claimed" that Avery had "multiple degrees", including doctoral degrees in Philosophy and Psychology, a master's degree in special education, and "several bachelors' degrees". ¶ 23.

11. Thereafter, Avery "provided medical treatment" to Green for his PTSD for nearly a year "under the direction of and as an agent for" Johnson and PP4AL. Complaint ¶ 24. The

---

[1] A copy of the Complaint is attached as Exhibit A hereto.

Complaint alleges that Avery's work was not adequately supervised, that she was allowed to work with Green alone with no peer or supervisory review of her treatment regimen, that she was unlicensed, and that she prescribed medications to Green. ¶¶ 25-26. Another agent of PP4AL, Maryann Byrne, "signed off" on the prescriptions. ¶ 26. Avery received invoices from and made payments to PP4AL for his medical treatment provided by Avery. ¶ 27. PP4AL billed Green's health insurer, Aetna, for this same treatment, which bills were signed off on by Johnson. Aetna paid PP4AL, which was an "in-network provider", "contracted rates" for the invoices, "thereby representing and approving" that Avery was a licensed treater. ¶¶ 30, 33.

12. According to the Complaint, in reliance on Johnson's recommendation and Avery's "continued" representation that she was a licensed psychologist, Green discussed "employment with Ms. Avery to work as" G3's Executive Director. ¶ 37.

13. "With a view to hiring her", Green stopped treating with Avery in early 2017. ¶ 38. In violation of her duties, Avery allegedly failed to provide Green with a qualified referral for continued treatment. ¶ 39. Johnson, who "on information and belief" was aware that Green had stopped treating with Avery, also breached her duty to provide Green with a referral for continued treatment. ¶ 40.

14. Green thereafter hired Avery as G3's Executive Director on June 1, 2017. Her duties included overseeing G3's "day-to-day operations", developing business, and "evangelizing" G3 programs to the Stafford County community and schools. ¶ 42. As an "extension of her duties" Avery was issued a debit card for G3's bank accounts. 43.

15. In early 2018 Green and his staff noticed unaccounted expenditures "attributable to the actions of" Avery, who "failed and refused" to provide documentation for the expenditures. ¶¶ 48-49. Thereafter, Avery failed to provide requested documentation of her

degree in and license to practice psychology. ¶¶ 50-51. Avery was terminated March 16, 2018. ¶ 52.

16. According to the Complaint, after terminating Avery, G3 discovered numerous improper expenditures "attributable to" Avery and "multiple misappropriations", totaling $13,142.45 of corporate funds for personal purchases. ¶¶54-55. G3 reported Avery to the Stafford County Sheriff's office and Avery was charged with multiple crimes, including embezzlement, obtaining money by false pretenses and credit card fraud. ¶ 56. An investigation by the Sheriff's office determined that Avery had never been licensed or otherwise authorized to practice as a psychologist or therapist in any jurisdiction. ¶ 57. Green and G3 came to learn that Avery possessed no college degrees. ¶ 58.

17. Johnson and PP4PL failed to conduct due diligence regarding Avery's licensure. Instead, PP4PL and Green's health care insurer "appeared to or did represent" that Avery was licensed and qualified. ¶ 59.

18. According to the Complaint, G3 and Green have suffered severe harm as a direct result of Avery's misrepresentations and actions (and, as to Green, the actions and representations of PP4AL, Aetna and Byrne), including pecuniary losses, loss of business opportunities, damage to reputation, embarrassment, humiliation, inconvenience, costs and attorney's fees. Green has also suffered "a sense of betrayal, mental anguish [and] profound injustice". ¶¶ 60-61.

19. The Complaint asserts four causes of action against PP4AL and Johnson: Gross Negligence (Count II), Negligent Hiring (Count V), Constructive Fraud (Count VI) and Conspiracy (Count VIII).

20. As to Count II, the Complaint alleges that PP4AL and Johnson breached duties as Avery's employers to ensure that Avery was properly certified as a health care provider. ¶¶ 76-79. Count II seeks not less than $500,000 for compensatory damages and $250,000 for punitive damages for Green only.

21. The Complaint alleges under Count V (Negligent Hiring) that PP4AL hired Avery as a psychologist, ¶ 103, that Johnson, on behalf of PP4AL, was the "decisionmaker responsible for hiring" Avery, ¶ 104, that PP4AL "knew or should have known" that Avery was not a licensed psychologist, and that PP4AL had a duty to investigate her credentials. ¶¶ 105-06. Avery's actions were "condoned" by PP4AL and Johnson, ¶ 110, and caused "severe harm" to Green. ¶ 108-10. Count V seeks compensatory damages of not less than $500,000 and punitive damages of $350,000 for Green only.

22. Count VI (Constructive Fraud) alleges that PP4AL, Byrne and Johnson "made false material statements of fact", either negligently or innocently, regarding Avery's credentials and licensure including "advertising" her "within the practice of PP4AL" as a licensed psychologist with multiple advanced degrees, for the purpose of enriching themselves and harming Green, and with the intent to mislead Green. ¶¶ 114-19. Such false statements induced Green to begin and continue treatment with Avery; and Green was damaged by his reliance on such statements in that he paid for "unlicensed, unprofessional services as well as not receiving proper and necessary treatment for his medical condition". ¶¶ 120-21. Count V seeks compensatory damages of not less than $500,000 and punitive damages of $350,000.

23. Count VIII (Common Law Conspiracy) alleges that in order to enrich themselves, all defendants "combined and undertook a concerted effort to deprive Mr. Green" of qualified and competent health care services. ¶ 138. In furtherance of the conspiracy, the defendants

"committed tortious conduct including negligence, fraud and constructive fraud." ¶ 140. As a direct and proximate result of the alleged conspiracy, Green suffered damages including "payments for premiums and medical bills" and was further "deprived of competent healthcare services." ¶¶ 141-42). Count VIII seeks compensatory damages of not less than $750,000 and punitive damages of $350,000.

***Facts Regarding Avery and Known to Johnson as of the Signing of the 2017 Policy Renewal Applications for PP4AL and Johnson***

24. In 2012, Johnson founded PP4AL as a multidisciplinary clinic offering comprehensive medical, behavioral health, and cognitive/educational services to children.

25. In November 2012, Johnson retained Avery on behalf of PP4AL on a part-time basis as an in-house, educational advocate. In May 2013, Avery joined PP4AL on a full-time basis. She was at that time responsible for educational advocacy, tutoring and other educational functions.

26. Commencing July 2014, PP4AL retained Avery as a fulltime health service provider with the title "Director of Cognition and Instruction". In that position, Avery performed services as a psychologist, including administering testing to patients and engaging in counseling and therapy services.

27. Prior to Avery's assumption of the position of Director of Cognition and Instruction, Johnson requested that Avery provide confirmation of her educational degrees and proof of appropriate licensure. Avery never provided Johnson with proof of such licensure. Instead Avery advised Johnson that because of Avery's autism, Avery was exempted from the standard Board of Psychology licensing requirements and instead had been granted a three year "provisional license" to practice as a psychologist in Virginia.

28. Avery provided Johnson with copies of what purported to be diplomas from Grand Canyon University for a PhD in general psychology and from Virginia Commonwealth University for a doctorate in clinical psychology. Avery did not provide documentation of other degrees she claimed to hold. Avery never provided Johnson with any documentation of any "provisional license" to practice as a psychologist in Virginia.

29. Prior to Avery's assumption of the position of Director of Cognition and Instruction in July 2014, Johnson knew that in the Spring of 2014, the Spotsylvania County School Division had complained to the Virginia Department of Health Professions ("DHP") DHP that Avery was "engaged in the unlicensed practice of psychology". At or around that time, a DHP investigator spoke to Johnson about PP4AL's "standard practices" in connection with its investigation of the complaint against Avery.

30. Avery provided Johnson a copy of what purported to be a May 12, 2014 letter from the Director of DHP's Enforcement Division stating that its investigation of the "complaint alleging [Avery's] being engaged in the unlicensed practice of psychology" had been "thoroughly investigated" and that "the Department has now officially closed this matter *undetermined*", subject to being reopened "if additional complaints are received".

31. Despite knowing that DHP's investigation into Avery's alleged unlicensed practice of psychology had been closed as "undetermined", Johnson agreed in July 2014 to allow Avery to provide counseling and therapy services.

32. In January 2017 Johnson asked Avery about the status of her licensure to practice psychology in Virginia. Avery advised Johnson that Avery did not believe she would be able to obtain permanent licensure and did not respond to Avery's question as to why Avery believed so.

33. Johnson urged Avery to seek licensure in the District of Columbia; but Avery advised Johnson that Avery did not think she could obtain permanent licensure from the District either because of what Avery described as "the same issues". Avery did not tell Johnson what such "issues" were.

34. According to letters written by Johnson to DHP, in or around late March 2017, Avery became "distant and disengaged from the practice and her patients", was late to patient appointments, and frequently rescheduled appointments. By April 2017, Avery had become "increasingly unreliable", continued to be late to appointments, repeatedly rescheduling appointments, and failing to provide dates and times to see patients.

35. By August 2017 PP4AL had removed Avery completely from the schedule for patient treatment. On October 10, 2017, PP4AL terminated Avery's employment with PP4AL.

## POLICY PROVISIONS

36. MMIC issued a Medical Professional Liability Policy, Policy No. PS119567 (the "Policy"), to Joni Janine Johnson for the policy period from September 1, 2017 to September 1, 2018. Thereafter, MMIC issued an Extended Reporting Endorsement to the Policy effective March 2, 2018, extending the period for reporting claims for an unlimited duration in accordance with applicable provisions and endorsements of the Policy. Pursuant to the Policy's Extended Reporting Period Schedule of Liability Limits, the Limits of Liability under the Policy were $2,400,000 per Claim and $7,200,000 Aggregate.[2]

37. Relevant portions of the Policy are set forth below.

> **I. PROFESSIONAL LIABILITY COVERAGE**
>
> Under this policy, the Company and the **Insured** agree that the Company will provide the following professional liability coverage:

2 A copy of the Policy is attached as Exhibit B hereto.

**(a)** Coverage A. Individual Professional Liability

The Company will pay, on behalf of the **Insured** listed under Coverage A" of the Declarations Page, all damages that the **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:

**(i)** because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declarations Page, and before the end of the **Policy Period**;

**(ii)** and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting Period.

**(b)** Coverage B. **Medical Practice** Professional Liability

The Company will pay, on behalf of the **Medical Practice** listed under Coverage B of the Declarations Page, all damages that an **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:

**(i)** because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declarations Page, and before the end of the **Policy Period;**

**(ii)** and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting Period.

**II. LIMITS OF LIABILITY**

The following Limits of Liability apply to this policy:

**(a)** Limits of Liability - Each **Claim**

Subject to paragraph (b) below, the Limits of Liability stated in the Declarations Page as applicable to each **Claim** is the most the Company will pay for all damages resulting from any one **Claim** to which this insurance applies.

* * *

**(c)** Related **Claims** or Multiple Claimants

The following rules apply to related **Claims** or Multiple Claimants:

**(i)** all **Claims** arising out of, or in connection with, the same **Medical Incident** shall be considered one related **Claim** subject to the Each **Claim**

Limits of Liability as stated in the Declarations Page as applicable to each **Insured . . .**

* * *

**(d)** The Limits of Liability stated in the Declarations Page include any and all costs, fees, expenses and prejudgment interest as awarded by a court to any plaintiff.

*** * ***

**IV. INSURED'S DUTIES**

In addition to all the conditions and other responsibilities described throughout this policy, the **Insured** has all of the following duties:

* * *

(h) To notify the Company, as soon as practicable and in writing, of material changes in the **Medical Practice** including, but not limited to:

(i) the addition or deletion of any physician or **Advanced Practice Provider** to or from the **Medical Practice**;

* * *

**X. EXCLUSIONS**

The following exclusions apply regardless of whether the **Claim** or **Legal Action** is intertwined with the rendering of **Professional Services**. This insurance does not apply to damages arising out of or in connection with any of the following:

(a) An act, error or omission by an **Insured** prior to the effective date of this policy if:

(i) an **Insured** knew or should have known of a **Medical Incident** that by its nature may result in a **Claim**;

* * *

(c ) An act, error or omission of a physician or **Advanced Practice Provider** who is not listed as an **Insured** in the Declaration Page unless the **Insured** has purchased from the Company an endorsement insuring the vicarious liability of the **Insured** for the acts, errors, or omissions of any such person.

* * *

(e) **Professional Services** that are outside the scope of the **Insured's** specialty as stated in the **Insured's** most recent application, renewal questionnaire, or similar information provided in support of issuance of this policy.

* * *

(l) Advertising, marketing, warranting (express or implied), or soliciting patients for **Professional Services**.

* * *

(w) An allegation asserting an unfair or deceptive act or practice . . .

* * *

(y) Any willful, fraudulent, malicious . . . or intentional acts or omissions . . . However, this exclusion shall not preclude coverage for acts of gross negligence . . .

* * *

(aa) Damages alleging wrongful termination, refusal to employ, demotion, evaluation, reassignment, discipline, or other employment related practices.

## XI. DEFINITIONS

The following definitions shall apply to the **boldface** terms contained in this policy:

**(a)** **"Advanced Practice Provider"** means nurse practitioners, physician assistants, certified registered nurse anesthetists, certified nurse midwives, psychotherapists, licensed clinical social workers, podiatrists, chiropractors, and dentists.

* * *

(d) **"Insured"** means:

(i) Each individual listed in Coverage A of the Declarations Page;

* * *

(iv) any **Medical Practice** listed in Coverage B of the Declarations Page . . .

* * *

(g) **"Medical Incident"** means an act, error or omission, or series of related acts, errors or omissions, arising out of or in connection with the rendering or failure to render **Professional Services** . . .

* * *

(j) "**Non-Physician Employees**" means those individuals while acting within the scope of and in furtherance of their employment by the **Medical Practice** or by an **Insured** listed in the Declarations Page under Coverage A.

* * *

(l) **"Professional Services"** means those medical or health care services the **Insured** provides, including:

(i) medical . . . treatment . . .

(ii) making medical diagnoses and rendering medical opinions and/or advice;

(iii) prescribing, furnishing or dispensing drugs or medical, surgical, or dental supplies or appliances;

* * *

**XII. POLICY CONDITIONS**

The following conditions apply to this policy:

* * *

**(h)** **Insured's** Representations

By acceptance of this policy, each Insured agrees that the statements in the respective applications, renewal questionnaires, and any other documents submitted to the Company are true and correct. In addition, it is understood and agreed that those statements are incorporated into and shall form a part of this policy. The Company reserves the right to rescind this policy or any coverage provided hereby, for any material misrepresentations made by an **Insured**.

38. Relevant portions of PP4AL's and Johnson's Policy applications are set forth below.

***Medical Mutual Insurance Company of North Carolina***
***Entity Professional Liability Application***

39. PP4AL's June 19, 2017 policy application includes, in relevant part, the following question, answers and certifications.

**Organization**

Type of Practice (select the one most appropriate) * **Single Specialty Practice**

**Prior Acts Coverage Certification**

I request Prior Acts Coverage retroactive to 11/01/2012 , which is consistent with the attached Declarations page from my current carrier.

I certify that I have no knowledge of any professional liability claims which have been asserted against this applicant, or any related professional corporation or professional association for which I am seeking coverage, which have not been reported to my prior or applicable carrier.

I furthermore certify that I have no knowledge of any occurrence, incident or circumstance likely to result in such a claim as of this date, other than those reported on this application.

*** * ***

**I certify that the above is true complete and correct to the best of my knowledge, information and belief. I understand that an incorrect or incomplete response could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.**

**General Information**

**Non-Physician/Non-Dentist Personnel**

Do you employ or contract with any non-physician or non-dentist personnel? **Yes**

Provide the number of personnel for each category:

Nurses * **0**
CRNAs * **0**
Nurse Midwives * **0**
Podiatrists * **0**
Pharmacists * **0**
Nurse Practitioners * **1**
Physician Assistants * **0**
Chiropractors * **0**
Dental Assistants/Hygienists * **0**
Psychotherapists * **0**
Licensed Clinical Social Workers * **2**
Anesthesia Assistants * **0**
Other * **2**

Please specify: * **Licensed Professional Counselors**

**Claims History**

* * *

**2.)** Do you have knowledge of any circumstances involving the rendering or failure to render professional services that could result in a claim being brought against you? **No**

**Authorization and Release**

I, the undersigned Applicant, understand that this is an application and is not an insurance binder. I certify the representations in this application to be true and understand that the policy if issued, is conditioned upon the truth of the representations in this application. I further understand that the falsity of any representations made in this application for insurance could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.

* * *

**** Signed by **Jonijj68@gmail.com** using password confirmation on **06/19/2017 - 22:17:47** ****

**Medical Mutual Insurance Company of North Carolina**
**Medical Practitioners Professional Liability Application**

40. Johnson's July 13, 2017 policy application includes, in relevant part, the following question, answers and certifications.

**Prior Acts Coverage Certification**

I request Prior Acts Coverage retroactive to 09/01/2012 , which is consistent with the attached Declarations page from my current carrier.

I certify that I have no knowledge of any professional liability claims which have been asserted against this applicant, or any related professional corporation or professional association for which I am seeking coverage, which have not been reported to my prior or applicable carrier.

I furthermore certify that I have no knowledge of any occurrence, incident or circumstance likely to result in such a claim as of this date, other than those reported on this application.

*** * ***

**I certify that the above is true complete and correct to the best of my knowledge, information and belief. I understand that an incorrect or incomplete response could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.**

**Claims History**

* * *

**2.)** Do you have knowledge of any circumstances involving the rendering or failure to render professional services that could result in a claim being brought against you? **No**

**Authorization and Release**

I, the undersigned applicant, understand that this is an application and is not an insurance binder.

I certify the representations in this application to be true and understand that the policy if issued, is conditioned upon the truth of the representations in this application. I further understand that the falsity of any representations made in this application for insurance could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.

* * *

**** Signed by* ***jonijj68@gmail.com*** *using password confirmation on* ***07/13/2017 - 22:47:49*** *****

## COUNT I

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL as to the Claims Set Forth in the Complaint Due to Materially False Statements On the Policy Applications.***

41. Plaintiff incorporates paragraphs 1 through 31 by reference herein as if they were set forth in full.

42. Johnson's certifications in the 2017 Entity and Medical Professional renewal applications, that the applicant had "no knowledge of any occurrence, incident or circumstance likely to result in such a claim as of this date, other than those reported on this application", were false.

43. Johnson knew, as of the date of the signing of the applications, that Avery was repeatedly missing appointments with patients, failing to reschedule missed appointments, and arriving late to other appointments. Johnson knew by such time that Avery had become distant and disengaged from the practice and her patients and that Avery had become increasingly unreliable.

44. Johnson knew, as of the date of the signing of the applications, that Avery had failed to provide any substantiation to her claimed "provisional license" despite repeated requests to do so, that Avery had in fact been investigated by DHP for allegations in 2014 by the Spotsylvania County School Division that Avery was practicing as an unlicensed psychotherapist, and that such investigation had been closed "undetermined" in 2014, and that Avery was nonetheless continuing to treat patients as a psychologist. By early 2017, Johnson knew that Avery would not be able to secure permanent licensing due to undisclosed "issues" that Avery failed to explain.

45. The Entity Professional Liability Application required that Johnson disclose whether PP4AL employed a psychotherapist. The application falsely indicated that PP4AL employed "zero" psychotherapists.

46. The Entity Professional Liability Application reported that the insured was a single specialty practice (i.e., pediatrics), rather than a multidisciplinary practice that employed a psychotherapist as part of a range of health services offered.

47. Additionally, the Policy required in Section IV(h)(i) that the insured "advise the Company as soon as practicable and in writing of material changes in the Medical Practice, including but not limited to…the addition or deletion of any physician or Advanced Service Provider to or from the Medical Practice". The policy defines Advanced Service Provider to

include psychotherapists. PP4AL retained Avery to provide services in 2012 and to serve as a full-time, in-house psychologist in 2014, and terminated Avery's employment effective September 30, 2017. At no time did PP4AL or Johnson advise the Company that PP4AL or Johnson was adding or deleting an Advanced Service Provider or provide any information with regard to Avery as required by the Policy.

48. The above responses and certifications were materially false and were relied upon by MMIC in deciding to issue the insurance applied for, in that MMIC would not have issued the Policy on the same terms had truthful answers been provided.

49. Under the terms of the Policy, the responses and certifications on the 2017 Entity and Medical Professional renewal applications became a part of the Policy. The materially false answers to the questions cited above relieves MMIC of any obligation to defend or indemnify its insureds with regard to the claims set forth in the Complaint.

## COUNT II

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL as to the Claims Set Forth in the Complaint Where the Claims Stated Are Precluded from Coverage Under Multiple Policy Exclusions.***

50. Plaintiff incorporates paragraphs 1 through 31 by reference herein as if they were set forth in full.

51. The Policy excludes coverage for "damages arising out of or in connection with" an act error or omission by the Insured prior to the effective date of the Policy if "the Insured knew or should have known of a Medical Incident that by its nature may result in a Claim." See Policy Section X(a)(i).

52. The effective date of the Policy was September 1, 2017. Prior to that that date, PP4AL and Johnson were aware of an act, error or omission arising out of or in connection with

the rendering or failure to render Professional Services by Avery that were likely to result in a Claim.

53. Prior to September 1, 2017, PP4AL and Johnson knew that Avery's performance, including failing to keep or reschedule treatment patient appointments, was so increasingly erratic and unreliable throughout the summer of 2017 that by August 2017 PP4AL had "removed her completely from the schedule". Upon information and belief, PP4AL and Johnson also knew prior to September 1, 2017 that Avery's purported three year "provisional license" would have expired in or about early 2017, and that Avery was unlicensed during a time when she was continuing to work for PP4AL as a psychologist conducting therapy for patients.

54. The Policy excludes coverage for "damages arising out of or in connection with" an act, error or omission of an Advanced Practice Provider who is not listed as an Insured in the Declaration Page of the Policy, unless the Insured has purchased from the Company an endorsement insuring the vicarious liability of the Insured for the acts, errors, or omissions of any such person. (Policy Sec. X(c)).

55. PP4AL retained Avery as a psychologist and psychotherapist and neither disclosed that fact to the Company nor listed Avery in the Declaration Page of the Policy. The claims against Johnson and PP4AL set forth in the Complaint seek "damages arising out of or in connection with" Avery's acts, errors, or omissions. As such, coverage for the damages sought in the Complaint appears to be precluded in full pursuant to Exclusion X(c) of the Policy.

56. The Policy excludes coverage for "damages arising out of or in connection with" "advertising, marketing, warranting (express or implied) or soliciting patients for Professional Services". (Policy Sec. X(l)). Count VI of the Complaint alleges constructive fraud in connection with certain representations and warranties that PP4AL and Johnson allegedly made

to Green regarding the qualifications of Avery. As such, damages sought under Count VI of the Complaint are excluded from coverage under the Exclusion X(l) of the Policy.

57. The Policy excludes coverage for "damages arising out of or in connection with" an "allegation asserting an unfair or deceptive act or practice". (Policy Sec. X(w)). The Complaint in its various counts alleges what amounts to a deceptive trade practice to induce Green to undertake medical services with an unlicensed provider in order to obtain financial gain. Damages arising out of or in connection with such an unfair or deceptive trade practice are excluded from coverage under the Exclusion X(l) of the Policy.

58. The Policy excludes coverage for "damages arising out of or in connection with" damages alleging certain listed wrongful "employment related practices." (Policy Sec. X(aa)). Count II of the Complaint alleges gross negligence by PP4AL and Johnson in failing to properly verify the credential of Avery when acting to hire her on behalf of PP4AL. These facts allege a failure to perform an employment function. Count V alleges negligent hiring which directly states a claim for an "employment related practice". Damages arising out of or in connection with such allegations of such practices would appear to be excluded from coverage under the Exclusion X(l) of the Policy.

WHEREFORE, Plaintiff prays that this Court order the following relief:

a) Determining and adjudicating the rights and liabilities of the parties to Plaintiff's policy of insurance with regard to the existence of any duty to defend or indemnify Johnson and PP4AL with regard to the claims set forth in the Complaint;

b) Declaring that MMIC has no duty to defend or indemnify Johnson and PP4AL in the Lawsuit; and

c) For such other and further relief as is just and equitable.

DATE: December 20, 2019

Respectfully submitted,

MEDICAL MUTUAL INSURANCE
COMPANY OF NORTH CAROLINA

By: ______/s/________________

Danny M. Howell (VSB No. 30352)
danny@dmhowelllaw.com
Robert Jackson Martin, IV (VSB No. 80655)
jackson@dmhowelllaw.com
Jennifer L. Rowlett (VSB No. 81373)
jennifer@dmhowelllaw.com
Law Offices of Danny M. Howell, PLLC
200 Little Falls Road, Suite 207
Falls Church, Virginia 22046
Telephone: (703) 556-8900
Fax: (703) 237-1224

*Counsel for Medical Mutual Insurance Company of North Carolina*