# EXHIBIT A

# COMMONWEALTH OF VIRGINIA



STAFFORD CIRCUIT COURT
Civil Division
1300 COURTHOUSE RD PO BOX 69
STAFFORD VA 22554
(540) 658-4220

Summons

To: JONI J JOHNSON
PRIVATE PROCESS

Case No. 179CL19002221-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, July 25, 2019

Clerk of Court: KATHLEEN M STERNE

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:    WHITE, JACK L
                    (703)590-1234

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. _CL19-2221_
(CLERK'S OFFICE USE ONLY)

Stafford County ......................................................... Circuit Court

G3 COMMUNITY SERVICES ............ v./In re: ..... COVENTRY HEALTH CARE OF VIRGINIA, INC.,

PLAINTIFF(S)
VERNON GREEN JR.

DEFENDANT(S)
d/b/a AETNA Better Health of Virginia, et al.

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Counterclaim
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court

**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment

**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
  [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights

**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[x] Other General Tort Liability

## ADMINISTRATIVE LAW

[ ] Appeal/Judicial Review of Decision of (select one)
  [ ] ABC Board
  [ ] Board of Zoning
  [ ] Compensation Board
  [ ] DMV License Suspension
  [ ] Employee Grievance Decision
  [ ] Employment Commission
  [ ] Local Government
  [ ] Marine Resources Commission
  [ ] School Board
  [ ] Voter Registration
  [ ] Other Administrative Appeal

## DOMESTIC/FAMILY

[ ] Adoption
  [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
  [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
  [ ] Complaint – Contested*
  [ ] Complaint – Uncontested*
  [ ] Counterclaim/Responsive Pleading
  [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
  [ ] Separate Maintenance Counterclaim

## WRITS
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS

[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
  [ ] Guardian/Conservator
  [ ] Standby Guardian/Conservator
  [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
  [ ] Impress/Declare/Create
  [ ] Reformation
[ ] Will (select one)
  [ ] Construe
  [ ] Contested

## MISCELLANEOUS

[ ] Amend Death Certificate
[ ] Appointment (select one)
  [ ] Church Trustee
  [ ] Conservator of Peace
  [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
  [ ] Reinstatement pursuant to § 46.2-427
  [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
  [ ] Correct Erroneous State/Local
  [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[x] Damages in the amount of $ 2,313,142.45 .................... are claimed.

07/19/2019
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR [x] PLAINTIFF [ ] DEFENDANT

Samuel M. Adelmann
PRINT NAME

1751 Pinnacle Drive, Suite 1000
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

Tysons, VA 22102 (703) 590-1234

sadelmann@flhhfirm.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 07/16

## Civil Action Type Codes
## (Clerk's Office Use Only)

Accounting ............................................................ ACCT
Adoption ............................................................... ADOP
Adoption – Foreign ............................................... FORA
Adult Protection .................................................... PROT
Aid and Guidance ................................................. AID
Amend Death Certificate ....................................... ADC
Annexation ........................................................... ANEX
Annulment ............................................................ ANUL
Annulment – Counterclaim/Responsive Pleading .. ACRP
Appeal/Judicial Review
    ABC Board ...................................................... ABC
    Board of Zoning .............................................. ZONE
    Compensation Board ........................................ ACOM
    DMV License Suspension ................................ JR
    Employment Commission ................................ EMP
    Employment Grievance Decision ..................... GRV
    Local Government ........................................... GOVT
    Marine Resources ............................................ MAR
    School Board ................................................... JR
    Voter Registration ........................................... AVOT
    Other Administrative Appeal ........................... AAPL
Appointment
    Conservator of Peace ...................................... COP
    Church Trustee ................................................ AOCT
    Custodian/Successor Custodian (UTMA) ...... UTMA
    Guardian/Conservator ..................................... APPT
    Marriage Celebrant ......................................... ROMC
    Standby Guardian/Conservator ....................... STND
Approval of Transfer of Structured Settlement ........... SS
Asbestos Litigation ............................................... AL
Attachment ........................................................... ATT
Bond Forfeiture Appeal ......................................... BFA
Child Abuse and Neglect – Unfounded Complaint .. CAN
Civil Contempt ..................................................... CCON
Claim Impleading Third Party Defendant –
    Monetary Damages/No Monetary Damages ........ CTP
Complaint – (Miscellaneous) ................................. COM
Compromise Settlement ........................................ COMP
Condemnation ....................................................... COND
Confessed Judgment ............................................. CJ
Contract Action .................................................... CNTR
Contract Specific Performance .............................. PERF
Counterclaim – Monetary Damages/No Monetary
    Damages ........................................................ CC
Cross Claim .......................................................... CROS
Declaratory Judgment ........................................... DECL
Declare Death ....................................................... DDTH
Detinue ................................................................. DET
Divorce
    Complaint – Contested/Uncontested ............... DIV
    Counterclaim/Responsive Pleading ................. DCRP
    Reinstatement – Custody/Visitation/Support/
    Equitable Distribution .................................... CVS
Driving Privileges
    Reinstatement pursuant to § 46.2-427 ............. DRIV
    Restoration – Habitual Offender or
    3rd Offense ..................................................... REST

Ejectment ............................................................. EJET
Encumber/Sell Real Estate .................................... RE
Enforce Vendor's Lien .......................................... VEND
Escheatment .......................................................... ESC
Establish Boundaries ............................................ ESTB
Expungement ........................................................ XPUN
Forfeiture of Property or Money ........................... FORF
Freedom of Information ........................................ FOI
Garnishment ......................................................... GARN
Injunction ............................................................. INJ
Intentional Tort .................................................... ITOR
Interdiction .......................................................... INTD
Interpleader ......................................................... INTP
Interrogatory ........................................................ INTR
Judgment Lien – Bill to Enforce ........................... LIEN
Landlord/Tenant ................................................... LT
Law Enforcement/Public Official Petition ............. LEP
Mechanics Lien ..................................................... MECH
Medical Malpractice ............................................. MED
Motor Vehicle Tort ............................................... MV
Name Change ....................................................... NC
Other General Tort Liability ................................. GTOR
Partition ............................................................... PART
Permit, Unconstitutional Grant/Denial by Locality LUC
Petition – (Miscellaneous) .................................... PET
Product Liability .................................................. PROD
Quiet Title ............................................................ QT
Referendum Elections ........................................... ELEC
Reinstatement (Other than divorce or driving
    privileges) ...................................................... REIN
Removal of Case to Federal Court ......................... REM
Restore Firearms Rights – Felony ......................... RFRF
Restore Firearms Rights – Review ......................... RFRR
Separate Maintenance ........................................... SEP
Separate Maintenance – Counterclaim/Responsive
    Pleading ......................................................... SCRP
Sever Order ........................................................... SEVR
Sex Change ........................................................... COS
Taxes
    Correct Erroneous State/Local ........................ CTAX
    Delinquent ...................................................... DTAX
Termination of Mineral Rights .............................. MIN
Trust – Impress/Declare/Create ............................ TRST
Trust – Reformation ............................................. REFT
Uniform Foreign Country Money Judgments ........ RFCJ
Unlawful Detainer ................................................ UD
Vehicle Confiscation ............................................ VEH
Voting Rights – Restoration .................................. VOTE
Will Construction ................................................. CNST
Will Contested ...................................................... WILL
Writs
    Certiorari ........................................................ WC
    Habeas Corpus ................................................ WHC
    Mandamus ...................................................... WM
    Prohibition ...................................................... WP
    Quo Warranto ................................................. WQW
Wrongful Death ..................................................... WD



**VIRGINIA:**

## IN THE CIRCUIT COURT OF STAFFORD COUNTY

| | |
|---|---|
| G3 COMMUNITY SERVICES | ) |
| | ) |
| and, | ) |
| | ) |
| VERNON GREEN JR. | ) |
| | ) |
| Plaintiffs, | ) Civil Action No: $CC19-2221$ |
| | ) |
| v. | ) |
| | ) |
| COVENTRY HEALTH CARE | ) |
| OF VIRGINIA, INC., | ) |
| d/b/a AETNA Better Health of Virginia | ) |
| R/A: C.T. Corporation System | ) JURY TRIAL DEMANDED |
| 4701 Cox Road, Suite 285 | ) |
| Glen Allen, VA 23060; and | ) |
| | ) |
| PEDIATRIC PARTNERS FOR | ) |
| ATTENTION AND LEARNING, INC., | ) |
| 2128 Jefferson Davis Hwy, Suite 201 | ) |
| Stafford, VA 22554; and | ) |
| | ) |
| SHARONDA L. AVERY, | ) |
| 10 Snow Drive | ) |
| Stafford, Virginia 22554; and | ) |
| | ) |
| JONI J. JOHNSON, | ) |
| 50 Lafayette Street | ) |
| Stafford, Virginia 22554; and | ) |
| | ) |
| MARYANN BYRNE, | ) |
| 108 Brandice Street | ) |
| Stafford, VA 22554; and | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, G3 Community Services, and Vernon Green Jr., by and through counsel, hereby

move this Court to enter judgment in their favor against Defendants Coventry Health Care of

1

Virginia, Inc. ("Aetna"), Pediatric Partners for Attention and Learning, Inc. ("PP4AL"), Sharonda L. Avery ("Ms. Avery"), Joni J. Johnson ("Dr. Johnson"), and MaryAnn Byrne ("Ms. Byrne"), (collectively "Defendants") and in support of their Complaint state as follows.

## NATURE OF ACTION

1.      This is a civil action alleging negligence, gross negligence, breach of contract, quantum meruit, negligent hiring, actual fraud, constructive fraud, conspiracy, and conversion.

## PARTIES

2.      Plaintiff **G3 Community Services** ("G3CS" or "Plaintiff") is a Virginia 501(c)(3) non-profit organization with its principal place of business located in Stafford County.

3.      Plaintiff **Vernon Green Jr.** ("Mr. Green") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in Stafford County, Virginia.

4.      Defendant **Coventry Health Care of Virginia, Inc., d/b/a Aetna Better Health of Virginia** ("Aetna") is a corporation organized and existing under the laws of Virginia, with its principal place of business located at 9881 Mayland Drive, Richmond, Virginia 23233. Aetna regularly conducts business in Stafford County.

5.      Defendant **Pediatric Partners for Attention and Learning, Inc.** ("PP4AL") is a corporation organized and existing under the laws of Virginia, with its principal place of business located at 2128 Jefferson Davis Highway, Suite 201 Stafford, Virginia 22554.

6.      Defendant **Sharonda L. Avery** ("Ms. Avery") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 10 Snow Drive, Stafford, Virginia 22554.

7.      Defendant **Joni J. Johnson** ("Dr. Johnson") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 50 Lafayette Street Stafford, Virginia 22554.

8.      Defendant **MaryAnn Byrne** ("Ms. Byrne") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 108 Brandice Street, Stafford, VA 22554.

2

## JURISDICTION AND VENUE

9.      Venue is appropriate in Stafford, County because G3CS has its principal place of business and regularly conducts business in Stafford County and because the acts complained of principally occurred in Stafford County within the Commonwealth of Virginia.

10.     At all times relevant to this Complaint, Mr. Green resided in Stafford County and sought treatment from the Defendants in Stafford County.

11.     At all times relevant to this Complaint each of the Defendants lived in or regularly conducted business in Stafford County.

12.     This Court has subject matter jurisdiction pursuant to Virginia Code §8.01-262 (1) through (4) because each of the Defendants reside or have their principal office in Stafford County and because the relevant acts giving rise to this complaint occurred in Stafford County.

## FACTS

13.     Mr. Green is a service-disabled veteran who served honorably in the Army for more than 20 years, retiring as a Chief Warrant Officer.

14.     During his service Mr. Green specialized in cyber-security, information technology, and operational technology.

15.     Shortly after his retirement, Mr. Green founded a Small Business Administration 8(a) certified, service disabled, veteran, and minority owned small business which contracts both commercially and with the U.S. government to provide cyber-security and information technology services.

16.     Due to the success of Mr. Green's efforts with the company he founded, he began undertaking efforts to provide vocational assistance and mentorship opportunities for young African-American males in Stafford County. These community service efforts quickly expanded to various other demographics.

3

17.    As a result of the many philanthropic opportunities and invitations Mr. Green received, in 2017 he founded G3 Community Services ("G3CS") which is a 501(c)(3) nonprofit organization set up to give back to the community. The mission of G3CS is to restore, inspire and empower the family unit through coaching, mentorship, and education; thereby strengthening their community.

18.    Expanding upon the original vocational assistance, G3CS grew its program offerings to include mentoring adolescent boys and girls, working in and through schools in Stafford County, and providing income assistance for the underprivileged, as well as other support offerings within the community.

19.    Separate from his philanthropic efforts, in or around early 2016, Mr. Green sought treatment to address his service-related Post-Traumatic Stress Disorder ("PTSD"), a mental health condition identified in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5).

20.    Mr. Green selected Dr. Johnson, owner and founder of Pediatric Partners for Attention and Learning, Inc. ("PP4AL"), who was and is a licensed member of the healing arts, and a medical practitioner.

21.    Dr. Johnson referred Mr. Green to "Doctor" Sharonda Avery, for medical treatment and assistance. Ms. Avery was held out to be a licensed member of the healing arts and an agent of PP4AL.

22.    Dr. Johnson identified Ms. Avery as a licensed psychologist, authorized to practice in the Commonwealth of Virginia.

23.    Dr. Johnson and Ms. Avery claimed that Ms. Avery had multiple degrees, including a Doctorate of Philosophy (PhD) in General Psychology from Grand Canyon University; a

4

Doctorate in Psychology (PsyD) in Clinical Psychology from Virginia Commonwealth University; a Masters of Education in the field of Special Education, Cross-Categorical from Grand Canyon University, as well as several bachelor's degrees.

24.     For nearly a year, Ms. Avery personally provided medical treatment to Mr. Green for his PTSD, under the direction of and as an agent for Dr. Johnson and her PP4AL practice.

25.     Ms. Avery's work was not adequately supervised. She was allowed to work with Mr. Green alone and apparently there was no peer or supervisory review of her treatment regimen, of any kind.

26.     Although she lacked both a medical license and Drug Enforcement Administration licensure to prescribe medications, Ms. Avery prescribed medication to Mr. Green. Her prescriptions were signed off on by Ms. Maryann Byrne, another agent of the PP4AL practice.

27.     Mr. Green was invoiced by, and made payments to, PP4AL for medical treatment provided by Ms. Avery.

28.     Mr. Green executed an agreement with Aetna to receive health insurance benefits, and paid monthly premiums as required under the agreement.

29.     Accordingly, Aetna was Mr. Green's duly authorized insurance provider.

30.     PP4AL, Dr. Johnson, Ms. Byrne and Ms. Avery, were in-network providers with Aetna.

31.     PP4AL billed Aetna for treatment Mr. Green received from Ms. Avery.

32.     Dr. Johnson approved the invoices and billings sent to Mr. Green and Aetna.

33.     Aetna approved of and paid the contracted rates for the invoices received from PP4AL for the treatment Mr. Green received from Ms. Avery, thereby representing and approving that Ms. Avery was a duly licensed member of the healing arts.

5

34.     Dr. Johnson received remuneration for billing Mr. Green and Aetna, for medical treatments provided by Ms. Avery.

35.     Mr. Green reasonably believed that he was receiving competent medical treatment and care from Ms. Avery for his PTSD and anxiety.

36.     Mr. Green reasonably relied upon his belief that he was receiving competent medical treatment and care from Ms. Avery for his PTSD and anxiety.

37.     Based on the recommendation of Dr. Johnson, and on Ms. Avery's continued affirmative representation that she was a licensed psychologist, Mr. Green discussed employment with Ms. Avery to work as the Executive Director in his non-profit organization, G3CS.

38.     In early 2017, Mr. Green discontinued his treatment from Ms. Avery, with a view to hiring her.

39.     In violation of duties imposed by the Commonwealth of Virginia, Ms. Avery failed to provide Mr. Green a referral or recommendations for continued treatment from a qualified member of the healing arts.

40.     On information and belief, aware of the discontinuation of medical treatment, Dr. Johnson, a licensed medical doctor, failed, in violation of duties imposed by the Commonwealth of Virginia, to provide Mr. Green a referral for continued treatment to a qualified member of the healing arts.

41.     With Mr. Green no longer under Ms. Avery's care, on June 1, 2017, G3CS hired Ms. Avery to serve in the role of Executive Director.

42.     Ms. Avery's job duties as Executive Director included overseeing the day-to-day operations of the organization, networking and evangelizing G3CS programs to the community including to Stafford County schools, and developing business.

6

43.     As an extension of her duties, Ms. Avery was granted access to G3CS's bank accounts, including being issued a debit card for the organization's checking account.

44.     G3CS had specific protocols in place for expenditures related to their community service programs.

45.     Specifically, if an individual was in need of financial assistance, then that individual was required to fill out company-created documentation to certify the nature and scope of the need.

46.     The submitted documentation would then be reviewed by G3CS staff to ensure compliance with the applicable program. Mr. Green would then, exercising his sole managerial authority and discretion, approve or deny the request.

47.     Ms. Avery was not authorized to approve grants or make purchases for the entity, on her own volition without prior approval.

48.     Beginning in early 2018, when auditing the accounts for year-end analysis, Mr. Green and his staff noticed unaccounted for expenditures attributable to the actions of Ms. Avery. Concerned about what appeared to be unauthorized expenses, Mr. Green and his staff instructed Ms. Avery to provide support for the expenditures.

49.     Ms. Avery failed and outright refused to provide documentation supporting the legitimacy of the expenses.

50.     As part of his efforts to market Ms. Avery's skill set, Mr. Green requested Ms. Avery provide documentation of her claimed degrees and licensure as a psychologist.

51.     Ms. Avery never provided board licensure or documentation of any educational degrees.

52.     On March 26, 2018, Ms. Avery was terminated as the Executive Director of G3CS.

7

53. Contemporaneous with her termination, G3CS discovered numerous improper and unauthorized expenditures attributable to Ms. Avery.

54. Staff of G3CS discovered that Ms. Avery had made multiple misappropriations of corporate funds for personal purchases, including payments for her personal vehicle's car insurance, rental furniture for her private home, payment of personal cable TV bills, charges for hotel rooms, personal cellular telephone service, private jewelry, unauthorized cash withdrawals, and other expenses which amounted to a misappropriation of business funds.

55. As is currently known, Ms. Avery made $13,142.45 in unauthorized purchases with G3CS funds.

56. Upon discovery of the apparent embezzlement, G3CS reported the misappropriation of funds to the Stafford County Sheriff's Office. Ms. Avery was then charged with multiple crimes, including embezzlement, obtaining money by false pretenses, and credit card fraud.

57. Upon further investigation by the Sheriff's Office, it was determined that Ms. Avery is not, and has never been, a licensed accredited health care provider. Nor was or is she authorized to perform any duties as a psychologist, therapist, clinician or member of the healing arts in the Commonwealth of Virginia, nor in any State or principality of the United States. In short, Ms. Avery's claims of being licensed or trained to provide any counseling or treatment are simply false.

58. Mr. Green and G3CS came to learn that Ms. Avery does not hold any degrees from any accredited institution of higher education either at the baccalaureate or post-graduate level.

59. At no time did Dr. Johnson, Ms. Byrne or PP4AL, nor any health care provider or insurer of Mr. Green engage in the required due diligence to ensure Ms. Avery was actually

8

licensed to provide medical treatment and counselling services. Indeed, both PP4AL and its agents, as Plaintiff's health care provider, as well as Plaintiff's health insurance carrier appeared to or did represent that Ms. Avery was a properly licensed and qualified practitioner.

60.     G3CS has suffered severe harm due to Ms. Avery's misrepresentations and actions including pecuniary losses, loss of business opportunities, damage to reputation, embarrassment, inconvenience, costs and attorney's fees.

61.     Mr. Green has suffered severe harm as a direct result of Ms. Avery's representations and actions, as well as the actions and representations of Aetna, PP4AL, Dr. Johnson, and Ms. Byrne, including pecuniary losses, loss of business opportunities, damage to reputation, embarrassment, humiliation, inconvenience, a sense of betrayal, mental anguish, profound injustice, costs and attorney's fees.

## COUNT I:
## NEGLIGENCE
### (Mr. Green v. Aetna)

62.     Plaintiff restates and realleges the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

63.     Defendant Aetna had a duty to protect its insureds from unlicensed and non-credentialed practitioners within its network of providers. At a minimum, Aetna had a duty to ask for proof of licensure and to demand proof of certification of the qualifications to engage in any medical practice regulated by the Commonwealth of Virginia.

64.     Aetna also had a duty to ensure that the actual care given to Mr. Green was provided by a properly licensed health care professional and to avoid payment to any employer who falsely or negligently held Ms. Avery out to be a competent health care professional.

9

65. By failing to undertake this minimal duty, Aetna negligently breached its duty and Mr. Green was severely harmed as a direct result.

66. Aetna also had a duty to maintain reasonable and adequate standards and procedures for credentialing and recredentialing providers with whom it contracted.

67. Indeed, Aetna contracted with PP4AL and the physicians and practitioners within the PP4AL practice to cover services on an "in-network" basis. Thus, further vouching for the quality of care of the provider and the certification of the licensure and training of the in-network providers it contracted with.

68. Aetna owed a duty to its insureds to periodically investigate, verify and recredential medical practices within its network, including PP4AL.

69. Aetna breached its duty to its insureds, including Mr. Green, by among other things, failing to properly recredential its providers, including PP4AL.

70. Aetna's negligence was the direct and proximate cause of harm to Mr. Green.

71. As a direct and proximate result of Aetna's negligence, Mr. Green received unprofessional, unlicensed, and incompetent treatment for his medical condition.

72. As a direct and proximate result of Aetna's negligence, Mr. Green was deprived of professional and competent medical treatment.

73. As a direct and proximate result of Aetna's negligence, Mr. Green suffered damages, including without limitation, past and future medical expenses, mental anguish, and pain and suffering.

74. Additionally, as a further direct and proximate result of Aetna's negligence, Mr. Green suffered damages, including without limitation, legal fees incurred during the course of the investigation and criminal prosecution of Ms. Avery.

10

75. Accordingly, Mr. Green seeks judgment against Aetna as to Count I, including without limitation, compensatory damages including pain and suffering, mental anguish, and emotional distress, plus attorney's fees and costs.

## COUNT II:
## GROSS NEGLIGENCE
### (Mr. Green v. Aetna, PP4AL, Dr. Johnson, Ms. Byrne)

76. Plaintiff restates and realleges the allegations in paragraphs 1 through 75 above, as if fully set forth herein.

77. The failure of Aetna, PP4AL, Dr. Johnson, and Ms. Byrne to take the simple untroublesome step of ensuring proper certification of a medical health care provider—namely, Ms. Avery—culminates in the very definition of gross negligence: the utter disregard of prudence amounting to the complete neglect of the safety of another.

78. The fact that Ms. Avery was knowingly unlicensed to practice medicine in any state, and had no educational training in the fields in which she held herself to be qualified, and consciously rendered medical opinions and diagnoses, demonstrated an utter disregard to all persons she treated and exhibited an extreme lack of care.

79. Both Ms. Avery and her employer (PP4AL and Dr. Johnson) held themselves out as providing services to vulnerable populations—taking advantage of the disadvantaged—to include persons with disabilities and special needs children. The fact that neither her employer, nor the insurers who paid for her services and insured the patients who saw Ms. Avery, verified to be sure that Ms. Avery held the proper credentials to render medical decisions amounts to an utter disregard for public health and safety and demonstrates a conscious indifference towards their professional duty.

80. As a direct and proximate result of this gross negligence, Mr. Green suffered damages, including without limitation, insurance premiums, medical bills, mental anguish, and legal fees in the investigation and criminal prosecution of Ms. Avery.

81. Accordingly, Mr. Green seeks judgment against Aetna, PP4AL, Dr. Johnson, and Ms. Byrne as to Count II, including without limitation, compensatory damages, attorney's fees, and costs.

82. Further, as the negligence was gross in nature, Mr. Green is entitled to punitive damages in the full statutory maximum amount of $350,000.

## COUNT III:
## BREACH OF CONTRACT
### (Mr. Green v. Aetna)
### (In the Alternative)

83. Plaintiff restates and realleges the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

84. Mr. Green signed an insurance policy with Aetna to receive health insurance benefits and coverage (the "Agreement").

85. The Agreement was and is a valid, enforceable, and legally-binding agreement between Mr. Green and Aetna.

86. Pursuant to the Agreement Aetna owed Mr. Green an obligation to provide in-network medical professionals who were duly licensed and authorized to practice the healing arts for which they held themselves out as qualified.

87. Aetna breached its obligations to Mr. Green by failing to verify and recredential professionals and medical practices within its network, including PP4AL and Ms. Avery.

88. Mr. Green performed all of his duties, promises and obligations to Aetna, to include paying his monthly premiums.

12

89. As a direct result of Aetna's breach, Mr. Green suffered severe and extensive damages.

90. As a direct result of Aetna's breach, Mr. Green was damaged by receiving incompetent and unlicensed medical diagnoses, opinions and advice.

91. As a direct result of Aetna's breach, Mr. Green suffered damages of at least $50,000.

92. As a consequential damage of Aetna's breach, Mr. Green was damaged because he was deprived of the opportunity to seek competent and licensed medical advice and treatment, due to the false belief, perpetuated by Aetna, that he was already receiving licensed and competent medical advice and treatment.

93. Accordingly, Mr. Green seeks judgment against Aetna as to Count III, including without limitation, direct and consequential damages, attorney's fees, and costs.

## COUNT IV:
## QUANTUM MERUIT
### (Mr. Green v. Aetna)
### (In the Alternative)

94. Plaintiff restates and realleges the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

95. Mr. Green made monthly premium payments to Aetna with the good faith, reasonable belief that he was receiving health insurance benefits in return, including a network of medical providers who were licensed, credentialed, and competent health care professionals.

96. Aetna knew that such premiums were paid by Mr. Green with the reasonable expectation of obtaining health insurance benefits and healthcare services from Aetna's network of licensed, credentialed, and competent health care professionals.

13

97.     From early 2016 to early 2017, Mr. Green paid his monthly premiums and received services from Aetna's in-network healthcare provider, PP4AL and Ms. Avery, an individual unlicensed to render medical opinions and diagnoses.

98.     Aetna benefited as it was financially enriched from the value of the premiums Mr. Green paid.

99.     Aetna would be unjustly enriched if allowed to retain the benefits resulting from the premiums paid by Mr. Green, in that it failed to provide Mr. Green with a network of licensed, credentialed, and competent healthcare professionals.

100.    It would be inequitable to reward Aetna with the premiums paid by Mr. Green when it failed to provide a network of licensed, credentialed and competent healthcare professionals in return.

101.    Accordingly, Mr. Green seeks judgment against Aetna as to Count IV, including without limitation, direct and consequential damages in the value of his contributions, attorney's fees, and costs.

## COUNT V:
## NEGLIGENT HIRING
### (Mr. Green v. PP4AL, Dr. Johnson, and Ms. Byrne)

102.    Plaintiff restates and realleges the allegations in paragraphs 1 through 82 above, as if fully set forth herein.

103.    PP4AL hired Ms. Avery to serve as a psychologist.

104.    Dr. Johnson, on behalf of PP4AL, was the decisionmaker responsible for hiring Ms. Avery.

105.    PP4AL knew or should have known at the time of hiring Ms. Avery that Ms. Avery was not a licensed psychologist and did not hold the appropriate credentials to practice psychology.

14

106.    PP4AL had a duty to investigate Ms. Avery's credentials prior to holding her out as a psychologist.

107.    PP4AL breached its duty to its patients by either failing to properly investigate and verify Ms. Avery's credentials, or knowingly holding Ms. Avery out as a psychologist without the proper licensure.

108.    Ms. Avery caused severe harm to the patients she treated, including Mr. Green.

109.    As a direct result of Ms. Avery's actions which were condoned by PP4AL, Dr. Johnson, and Ms. Byrne, Mr. Green suffered severe harm because he did not receive competent professional advice or treatment from Ms. Avery.

110.    As a further direct result of Ms. Avery's actions which were condoned by PP4AL, Dr. Johnson, and Ms. Byrne, Mr. Green suffered further severe harm because he was deprived of the opportunity to receive competent treatment from a properly licensed professional, due to the misrepresentations of PP4AL, Dr. Johnson, and Ms. Byrne.

111.    PP4AL is liable for the harm caused by Ms. Avery because it was foreseeable that she would cause harm to others by treating patients without a license.

112.    Accordingly, Mr. Green seeks judgment against PP4AL, Dr. Johnson, and Ms. Byrne as to Count V, including without limitation, compensatory damages, attorney's fees, and costs.

## COUNT VI:
## CONSTRUCTIVE FRAUD
### (Mr. Green v. PP4AL, Dr. Johnson and Ms. Byrne)

113.    Plaintiff restates and realleges the allegations in paragraphs 1 through 112 above, as if fully set forth herein.

114.    PP4AL, Dr. Johnson, and Ms. Byrne made false and material statements of fact to Mr. Green regarding Ms. Avery's educational degrees, licensure and experience as a psychologist.

15

115.    Advertising Ms. Avery, within the practice of PP4AL, as a licensed psychologist with multiple graduate and post-graduate degrees were misrepresentations of existing facts.

116.    PP4AL, Dr. Johnson, and Ms. Byrne negligently made the above false, deceptive and misleading, statements regarding Ms. Avery's credentials and licensure.

117.    Alternatively, PP4AL, Dr. Johnson, and Ms. Byrne innocently made the above false, deceptive and misleading, statements regarding Ms. Avery's credentials and licensure.

118.    In either event, PP4AL, Dr. Johnson and Ms. Byrne held Ms. Avery out as a licensed psychologist for the purpose of enriching themselves and harming Mr. Green.

119.    PP4AL, Dr. Johnson and Ms. Byrne held Ms. Avery out as a licensed psychologist with the intent to mislead their patients, including Mr. Green.

120.    Mr. Green relied on PP4AL, Dr. Johnson, and Ms. Byrne's false statements which induced him to begin treatment with Ms. Avery and continue to receive treatment from Ms. Avery.

121.    Mr. Green was damaged by his reliance on PP4AL, Dr. Johnson, and Ms. Byrne's false statements by paying for unlicensed, unprofessional services as well as not receiving proper and necessary treatment for his medical condition.

122.    Mr. Green continues to suffer and will suffer in the future, severe harm due to his reliance on PP4AL, Dr. Johnson, and Ms. Byrne's false statements.

123.    Accordingly, Mr. Green seeks judgment against PP4AL, Dr. Johnson, and Ms. Byrne as to Count VI, including without limitation, compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT VII:
## ACTUAL FRAUD
### (G3CS and Mr. Green v. Ms. Avery)

124.    Plaintiff restates and realleges the allegations in paragraphs 1 through 123 above, as if fully set forth herein.

16

125.    Ms. Avery made false and material statements of fact to Mr. Green and G3CS regarding her educational degrees, licensure and experience as a psychologist.

126.    Ms. Avery holding herself out as a licensed psychologist with multiple graduate and post-graduate degrees were misrepresentations of existing facts.

127.    Ms. Avery's statements were intentionally false, deceptive and misleading, and made with the knowledge of their falsehood for the purpose of enriching herself and harming Mr. Green and G3CS.

128.    Mr. Green relied on Ms. Avery's false statements in continuing to receive treatment from her.

129.    G3CS relied on Ms. Avery's false statements in hiring her and advertising her credentials associated with their programs.

130.    Mr. Green was damaged by his reliance on Ms. Avery's false statements by paying for unlicensed, unprofessional services as well as not receiving proper and necessary treatment for his medical condition.

131.    G3CS was damaged by its reliance on Ms. Avery's false statements by paying her a salary for which she was not qualified and loss of goodwill and reputation by associating its name with hers.

132.    G3CS continues to suffer and will suffer in the future, severe harm due to its reliance on Ms. Avery's false statements.

133.    As a direct result of Ms. Avery's misrepresentations, G3CS incurred legal fees directly attributable to ensuring the integrity of G3CS was not compromised, either within the community or under its legal and regulatory obligations.

17

134.    As a direct result of Ms. Avery's wrongdoing G3CS incurred, and continues to incur, legal fees to ensure it can continue to make necessary contributions to the community of Stafford County.

135.    Mr. Green continues to suffer and will in the future suffer severe harm due to his reliance on Ms. Avery's false statements.

136.    Accordingly, G3CS and Mr. Green seek judgment against Ms. Avery as to Count VII, including without limitation, compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT VIII:
## COMMON LAW CONSPIRACY
### (Mr. Green v. All Defendants)

137.    Plaintiff restates and realleges the allegations in paragraphs 1 through 136 above, as if fully set forth herein.

138.    Defendants Aetna, PP4AL, Dr. Johnson, Ms. Byrne and Ms. Avery combined and undertook a concerted effort to deprive Mr. Green of licensed, credentialed, and competent healthcare services and treatment in furtherance of their conspiracy to enrich themselves.

139.    The Defendants combined for the lawful purpose of providing healthcare services and treatment by the unlawful means of holding out an unlicensed, unqualified and incompetent individual to provide such services.

140.    As alleged above, Defendants committed tortious conduct including negligence, fraud and constructive fraud in furtherance of the conspiracy.

141.    As a direct and proximate result of the conspiratorial actions of the Defendants Mr. Green suffered severe and extensive damages including payments for premiums and medical bills.

18

142. As a further direct and proximate result of the conspiratorial actions of the Defendants Mr. Green suffered severe damage by being deprived of competent healthcare services for his medical condition.

143. Mr. Green seeks judgment against all Defendants as to Count VIII and an award for the damages he suffered, including without limitation, compensatory damages including mental anguish and emotional distress, punitive damages, and attorney's fees and costs.

## COUNT IX:
## CONVERSION
## (G3CS v. Ms. Avery)

144. Plaintiff restates and realleges the allegations in paragraphs 1 through 143 above, as if fully set forth herein.

145. Ms. Avery made multiple and repeated purchases with G3CS funds, for her own personal benefit.

146. Ms. Avery was not authorized to make purchases for her own benefit with G3CS funds.

147. Ms. Avery intentionally and knowingly misappropriated G3CS funds for her own benefit and to the detriment of G3CS.

148. By making unauthorized purchases, Ms. Avery wrongfully exercised authority over the goods, namely money, of G3CS.

149. Ms. Avery deprived G3CS of possession of its money.

150. Ms. Avery's actions were a denial of G3CS's rights over its own money.

151. G3CS suffered severe harm and damage as a result of Ms. Avery's wrongful and intentional taking of G3CS's funds.

152. G3CS has been damaged in an amount to be proven at trial, but no less than $13,142.45.

19

153.    Accordingly, G3CS seeks judgment against Ms. Avery as to Count IX, including without limitation, compensatory damages, punitive damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mr. Vernon Green Jr., respectfully requests the following relief:

154.    For Defendant Aetna's negligence (Count I) Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $500,000.

    a.  Additionally, Plaintiff requests the Court award him reasonable attorney's fees and costs in bringing this action.

155.    For Defendants' Aetna, PP4AL, Dr. Johnson and Ms. Byrne's gross negligence (Count II) Plaintiff requests this Court award compensatory damages in an amount to be proven at trial, but not less than $500,000.

    a.  Additionally, Plaintiff requests the Court award exemplary and punitive damages in the full statutory maximum amount of $350,000.

    b.  Additionally, Plaintiff requests the Court award him reasonable attorney's fees and costs in bringing this action.

156.    In the alternative, for Defendant Aetna's breach of contract (Count III) Plaintiff requests this Court award direct and consequential damages in an amount to be proven at trial, but not less than $100,000.

157.    In the alternative, as quantum meruit for Plaintiff's payments to Aetna (Count IV) Plaintiff requests this Court award damages in an amount to be proven at trial, but not less than $50,000.

158.    For Defendants' Dr. Joni Johnson, Ms. Maryann Byrne, and PP4AL's negligent hiring (Count V), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $500,000.

20

    a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of \$350,000.

    b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

159.    For Defendants' Dr. Joni Johnson, Ms. Maryann Byrne, and PP4AL's constructive fraud (Count VI), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than \$500,000.

    a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of \$350,000.

    b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

160.    For Defendant Ms. Avery's actual fraud (Count VII), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than \$500,000.

    a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of \$350,000.

    b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

161.    For all of the Defendants' conspiracy to injure Plaintiff (Count VIII), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than \$750,000.

21

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

162. Plaintiff, Mr. Green, as to all Defendants respectfully requests any such other relief as this Court deems proper and just.


WHEREFORE, Plaintiff G3 Community Services respectfully requests the following relief:

163. For Defendant Ms. Avery's actual fraud (Count VII), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $750,000.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

164. For Defendant Ms. Avery's conversion of property (Count IX), Plaintiff requests this Court to award damages in an amount to be proven at trial, but not less than $13,142.45.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b.  Additionally, Plaintiff requests the Court award pre-judgment and post-judgment interest.

c.  Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

165.    Plaintiff, G3CS, respectfully requests any such other relief as this Court deems proper and just.

## DEMAND FOR JURY TRIAL

166.    Plaintiffs demand a trial by jury on all claims in this matter.

Dated: July 19, 2019

WE ASK FOR THIS,

G3 COMMUNITY SERVICES and
MR. VERNON GREEN JR.
By Counsel

Jack L. White, *pro hac vice* forthcoming
Kevin E. Byrnes, VSB No. 47623
Samuel M. Adelmann, VSB No. 81786
**FH+H, PLLC**
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
jwhite@fhhfirm.com
kbyrnes@fhhfirm.com
sadelmann@fhhfirm.com
*Counsel for Plaintiffs*

23