# EXHIBIT B



**Medical Mutual**™
PROTECTING OUR PROFESSION

# MEDICAL PROFESSIONAL LIABILITY INSURANCE POLICY
## DECLARATIONS PAGE

| Name and Address of **Named Insured** | Name and Address of Agent |
|---|---|
| Joni Janine Johnson, MD<br>2128 Jefferson David Hwy.<br>Suite 201<br>Stafford, VA  22554 | Chas. Lunsford Sons & Associates, Inc.<br>16 East Church Ave<br>Roanoke, VA  24011 |

| Issuing Company | Policy |
|---|---|
| Medical Mutual Insurance Company Of North Carolina<br>700 Spring Forest Rd. Suite 400<br>Raleigh, NC  27609 | Policy Number:   PS119567<br>Effective Date:   September 1, 2017<br>Expiration Date:   September 1, 2018<br>*All dates herein as of 12:01 A.M. Standard Time at the*<br>*Principal Address of the above* **Named Insured** |

| Supplemental Payments | Reimbursable Amounts |
|---|---|
| Supplemental Payments<br>   Reimbursable Medical Expenses:<br>   Good Samaritan Aid: | $10,000 Maximum Reimbursable Amount<br>$10,000 Maximum Reimbursable Amount |

| Schedule of Liability Limits | | | |
|---|---|---|---|
| **Insured(s)** | Retroactive Date | Limits of Liability<br>Each **Claim**/Annual Aggregate | Premium |
| **Coverages A – Individual Professional Liability** | | | |
| Joni Janine Johnson, MD | 09/01/2012 | $2,350,000/$7,050,000 | $7,662.00 |
| Michelle Graf, NP | | (Included) | |
| | | **TOTAL PREMIUM:** | **$7,662.00** |

Signed By: _____     Date:   __August 4, 2017__

Authorized Company Representative

This is a non-assessable claims made policy which is issued subject to this Declarations Page, all coverage parts and endorsements .
Please read the entire policy carefully. For a list of relevant endorsements, refer to the following Schedule of Endorsements.

PD02 (01/16)

**MEDICAL MUTUAL INSURANCE COMPANY**
**OF NORTH CAROLINA**

PHILLIT
PIN: 572155749
Page 1 of 2

**Declarations Page** (continued)
**Policy Number:** PS119567

| Schedule of Forms & Endorsements | |
|---|---|
| **Form Number** | **Form Name** |
| PC02 (01/16) | MEDICAL PROFESSIONAL LIABILITY INSURANCE POLICY |
| PE01 (01/16) | VICARIOUS LIABILITY ENDORSEMENT |
| PE50 (01/16) | ADVANCED PRACTICE PROVIDERS SHARED LIMITS |
| PE60 (01/16) | MUTUAL INSURANCE HOLDING COMPANY AMENDATORY ENDORSEMENT |
| PE67 (01/16) | BROAD REGULATORY PROTECTION ENDORSEMENT |
| PE68VA (01/16) | VIRGINIA AMENDATORY ENDORSEMENT |
| PM31 (05/17) | e-MD® NETWORK SECURITY AND PRIVACY EVIDENCE OF COVERAGE |



# MEDICAL PROFESSIONAL LIABILITY INSURANCE POLICY

Medical professional liability insurance provides coverage for health care providers and facilities against legal liability resulting from the death or **Injury** of any person due to the **Insured's** misconduct, negligence, or incompetence in rendering or failure to render **Professional Services**. This policy is not intended to, nor does it, cover general or premises liability.

This is a claims-made policy, issued by Medical Mutual Insurance Company of North Carolina, the "Company," and is subject to the Declarations Page and all other endorsements included, which together constitute the agreement to provide liability insurance. Please read this policy, the Declarations Page, and all endorsements carefully to determine what is and what is not covered, and to understand the **Insured's** rights and duties, including the opportunity to purchase an Extended Reporting Period. Pursuant to all policy documents, as agreed to by the Company and the **Insured**, the Company will provide coverage as follows:

## TABLE OF CONTENTS

I.   **PROFESSIONAL LIABILITY COVERAGE**..................................................................2
     *Who and what the Company protects*

II.  **LIMITS OF LIABILITY**................................................................................2
     *Explanation of coverage amounts*

III. **REPORTING A CLAIM**................................................................................3
     *Information that must be provided to the Company and when*

IV.  **INSURED'S DUTIES**................................................................................3
     ***Insured's*** *responsibilities owed to the Company*

V.   **DEFENSE AND CLAIM EXPENSES**................................................................4
     *How the Company handles and pays for the defense of a **Claim***

VI.  **SUPPLEMENTAL PAYMENTS**......................................................................5
     *Additional payments by the Company available to the **Insured***

VII. **CONSENT TO SETTLE**................................................................................6
     *The Company must have the **Insured's** written consent to settle a **Claim***

VIII. **EXTENDED REPORTING PERIOD (TAIL COVERAGE)**..........................................6
     *Possible extension of the period of time in which a **Claim** can be reported after this policy ends.*

IX.  **OTHER INSURANCE**................................................................................7
     *When this coverage applies if there is other insurance for the same **Claim***

X.   **EXCLUSIONS**................................................................................8
     *When there is no protection under this policy*

XI.  **DEFINITIONS**................................................................................10
     *Policy terms that appear in **bold text** are defined here*

XII. **POLICY CONDITIONS**................................................................................13
     *General rules that apply to this policy*

## I.   PROFESSIONAL LIABILITY COVERAGE

Under this policy, the Company and the **Insured** agree that the Company will provide the following professional liability insurance coverage:

**(a)**   Coverage A. Individual Professional Liability
The Company will pay, on behalf of the **Insured** listed under Coverage A of the Declarations Page, all damages that the **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:

   **(i)**   because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declarations Page, and before the end of the **Policy Period**;

   **(ii)**   and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting Period.

**(b)**   Coverage B. **Medical Practice** Professional Liability
The Company will pay, on behalf of the **Medical Practice** listed under Coverage B of the Declarations Page, all damages that an **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:

   **(i)**   because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declarations Page, and before the end of the  **Policy Period**;

   **(ii)**   and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting Period.

## II.   LIMITS OF LIABILITY

The following Limits of Liability apply to this policy:

**(a)**   Limits of Liability - Each **Claim**
Subject to paragraph (b) below, the Limits of Liability stated in the Declarations Page as applicable to each **Claim** is the most the Company will pay for all damages resulting from any one **Claim** to which this insurance applies. In addition, the following rules apply:

   **(i)**   the Each **Claim** limit shown in the Declarations Page under Coverage A shall apply separately, unless otherwise noted, to each **Insured** listed. Any individual providing **Locum Tenens Coverage** for an **Insured** shall share in the Each Claim limit of the **Insured** in whose place the substituted individual is temporarily working; and

   **(ii)**   the Each **Claim** limit shown in the Declarations Page under Coverage B shall apply as a single, shared limit for the **Medical Practice**, its **Non-Physician Employees**, and any listed **Advanced Practice Provider**.

**(b)**   Limits of Liability - Annual Aggregate
The Limits of Liability stated in the Declarations Page as the Annual Aggregate is the most the Company will pay as damages resulting from all **Claims** to which this insurance applies. In addition, the following rules apply:

   **(i)**   the Annual Aggregate applies separately, unless otherwise noted, for each **Insured** listed under Coverage A of the Declarations Page; and

   **(ii)**   the Annual Aggregate applies as a single, shared Annual Aggregate for all **Insureds** listed under Coverage B of the Declarations Page.

**(c)**  Related **Claims** or Multiple Claimants
The following rules apply to related **Claims** or to multiple claimants:

**(i)**  all **Claims** arising out of, or in connection with, the same **Medical Incident** shall be considered one related **Claim** subject to the Each **Claim** Limits of Liability as stated in the Declarations Page as applicable to each **Insured**; and

**(ii)**  **Claims** made by the mother and child, or children, arising out of, or in connection with, obstetrical injuries to them, shall be considered individual **Claims** and shall be subject to the Each **Claim** Limits of Liability as stated in the Declarations Page as applicable to each **Insured**. This does not increase the **Insured's** Annual Aggregate Limits of Liability.

**(d)**  The Limits of Liability stated in the Declarations Page include any and all costs, fees, expenses, and prejudgment interest as awarded by a court to any plaintiff.

## III.   REPORTING A CLAIM

The **Insured**, or an authorized representative of the **Insured**, shall give notice to the Company of any **Claim** as soon as practicable during either the **Policy Period** or any Extended Reporting Period. Notice of a **Claim** shall be deemed given when the Company receives:

**(a)**  a report of a **Medical Incident** that by its nature may result in a **Claim** for damages against an **Insured**, and which report contains: (i) the name of the **Insured**; (ii) the name(s) of the patient(s) involved; (iii) the date and location of the **Medical Incident**; and (iv) a description of the **Professional Services** rendered giving rise to the **Medical Incident**; or

**(b)**  a copy of any written notice of a demand for money or for services, or the substance of any other notice indicating that a **Claim** may be made, against an **Insured** because of a **Medical Incident**; or

**(c)**  a copy of a **Legal Action** naming an **Insured** because of a **Medical Incident**.

## IV.   INSURED'S DUTIES

In addition to all the conditions and other responsibilities described throughout this policy, the **Insured** has all of the following duties:

**(a)**  To neither admit negligence nor accept liability for any **Medical Incident** without the prior written consent of the Company.

**(b)**  To not, without the prior written consent of the Company, voluntarily make any payment, assume any obligation, or incur any expense, other than for first aid to others, relating to any **Medical Incident**.

**(c)**  To assist in the defense of **Claims** by, among other things, attending hearings and trials, assisting in securing and giving evidence, cooperating with counsel, and assisting in identifying and securing the attendance of witnesses.

**(d)**  To cooperate with the Company and assist it in: (i) investigating any **Claim**; and (ii) enforcing any right of contribution or indemnity against any person or organization that may be liable to an **Insured** for damages with respect to which insurance is afforded under this policy.

**(e)**  To not, with regard to any **Claim** or **Medical Incident**, attempt to or actually destroy, alter, modify, or delete any evidence, or potential evidence, relating to any patient care information, data, records, or films, whether existing in paper or any electronic format, regardless of where and how stored. In the event that an **Insured** receives, either from a patient or from a patient's lawyer or representative, a notice to preserve such evidence, then the **Insured** shall immediately notify the Company and shall preserve all information covered by the notice.

**(f)**   To notify the Company, as soon as practicable and in writing, of any investigation, arrest, indictment, or conviction of an **Insured** for any crime.

**(g)**   To notify the Company, as soon as practicable and in writing, of any material change in the **Insured's** practice, including, but not limited to:

> **(i)**   a change in medical specialty;
>
> **(ii)**   an **Insured's** intention to practice medicine in a state other than that listed in the **Insured's** application or in a state previously approved by the Company;
>
> **(iii)**   a change in an **Insured's** medical licensing status;
>
> **(iv)**   an **Insured's** treatment for alcohol or drug abuse or dependency, or any disability; and
>
> **(v)**   any investigations of an **Insured** by a state medical licensing agency, licensed hospital or health care facility, or medical review board.

**(h)**   To notify the Company, as soon as practicable and in writing, of material changes in the **Medical Practice**, including, but not limited to:

**(i)**   the addition or deletion of any physician or **Advanced Practice Provider** to or from the **Medical Practice**;

> **(ii)**   additions, deletions, or changes in practice locations; and
>
> **(iii)**   a merger, acquisition, or change in ownership of the **Medical Practice**.

**(i)**   To provide notice to the Company, by the **Insured** listed under Coverage A of the Declarations Page, within thirty (30) days of the conclusion of any **Locum Tenens Coverage** arrangement involving that **Insured**. The notification must include:

> **(i)**   the name of the physician or **Advanced Practice Provider** providing such coverage;
>
> **(ii)**   the dates that individual provided **Professional Services** on behalf of the **Insured**;
>
> **(iii)**   that individual's license number and board certification status; and
>
> **(iv)**   for any locum tenens substitution of an **Advanced Practice Provider**, confirmation that a physician supervisor was established and documented prior to such substitution, as required by any applicable state law or statute.

## V.   DEFENSE AND CLAIM EXPENSES

The following rules apply to the Company's defense of **Claims** and expenses incurred:

**(a)**   Duty to Defend

> **(i)**   The Company shall defend any **Claim** seeking damages covered by this policy, even if the allegations of the **Claim** are groundless, false, or fraudulent. The Company's duty to defend an **Insured** ends when the **Insured's** applicable Limits of Liability have been exhausted by the payments of judgments or settlements.
>
> **(ii)**   The Company has no duty to appeal any judgment. However, if the Company does appeal, then it will pay for the cost of pursuing that appeal.

**(b)**   Choice of Counsel

The Company, in its sole discretion, shall select and retain legal counsel to defend the **Insured**. If a **Claim** is asserted against more than one **Insured**, then the Company may retain the same legal counsel to defend two or more **Insureds**, or it may retain additional legal counsel.  In addition to being defended by the Company's selected legal counsel, the **Insured** may also choose to hire, at his or her own expense, independent legal counsel; but the Company will not pay any fees or costs related to independent counsel. The **Insured's** independent counsel has the same duties as those of  the **Insured** as stated in Section IV of this policy.

**(c)** Claim Expenses
The Company shall pay all expenses it and its selected legal counsel incur in defending a **Claim**. Claim expenses paid by the Company fall outside of and are not counted in determining the Limits of Liability.

**(d)** Per Diem Reimbursement
Whenever an **Insured** listed under Coverage A of the Declarations Page is required by the Company to attend a trial, deposition or mediation of a **Claim** covered by this policy, that **Insured** is entitled to reimbursement from the Company of up to:

**(i)** $1,000 per day, or part of a day, for loss of actual earnings for any **Insured** physician; or

**(ii)** $500 per day, or part of a day, for loss of actual earnings for any **Advanced Practice Provider**.

**(e)** Appeals
If the Company, in its sole discretion, determines that an appeal is to be taken from any final adjudication of a **Claim**, or if either it or an **Insured** becomes a party to an appeal taken by another party, then it shall bear the cost of the appeal proceedings, including securing any appeal bond that may be ordered or otherwise required by law to stay execution on a judgment against an **Insured**.

## VI.    SUPPLEMENTAL PAYMENTS

These Supplemental Payment benefits are only available if reimbursable amounts are shown on the Declarations Page. These benefits are in addition to, and will not erode, the limits provided under other coverages of this policy. By making any of the Supplemental Payments below, the Company does not assume any duty to defend or to take other actions beyond those stated. This policy provides, under this section, the following:

**(a)** Reimbursable Medical Expenses
Subject to the Maximum Reimbursable Amount stated in the Declarations Page, the Company will reimburse for necessary medical expenses, regardless of fault, caused by an incident at the **Medical Practice**, other than a **Medical Incident**, resulting in **Injury**. The Maximum Reimbursable Amount applies as a single, shared amount for all **Insureds**.

The incident must take place during the **Policy Period**. The **Insured** must submit the expense reimbursement request within six months from the date of that incident. The Company's obligation to pay medical expenses is contingent upon the injured person providing permission to obtain copies of the medical documents related to their **Injury**. This Supplemental Payment is not available to **Insureds**, their family members, or to employees of the **Medical Practice**.

**(b)** Good Samaritan Aid
Subject to the Maximum Reimbursable Amount stated in the Declarations Page, the Company will reimburse for actual out of pocket expenses that the **Insured** incurs for first aid rendered at a location other than the **Medical Practice** to a person, other than a patient of the **Insured**, who is believed to be in need of first aid. The Maximum Reimbursable Amount applies as a single, shared limit for all **Insureds**.

The first aid must be provided both during the **Policy Period** and at the time that the incident occurred. The **Insured** must submit the expense reimbursement request to the Company within six months from the date of the incident.

## VII.    CONSENT TO SETTLE

The Company must obtain written consent from the **Insured** before making any indemnity payment to settle any **Claim** prior to judgment or award. Once consent is obtained, the Company may, in its sole discretion, negotiate the terms of and settle the **Claim**. Written consent shall not be required:

**(a)**    if the **Insured** is deceased, has been adjudicated incompetent, or cannot be located; or

**(b)**    if the **Insured's** license to practice medicine has been suspended, revoked, or surrendered.

## VIII.    EXTENDED REPORTING PERIOD (TAIL COVERAGE)

An "Extended Reporting Period" is commonly referred to as "Tail Coverage." In the event of cancellation or non-renewal of this policy or termination of an individual's coverage under this policy, an **Insured** listed under Coverage A and/or a **Medical Practice** listed under Coverage B, as allowed by state statute, may have the right, upon payment of an additional premium computed in accordance with the Company's rules, rates, and rating plans then in effect, to an Extended Reporting Period of unlimited duration, during which **Claims** may be reported under this policy. Such right to purchase an Extended Reporting Period must be exercised by an **Insured** listed under Coverage A and/or a **Medical Practice** listed under Coverage B by written notice to the Company. The terms and specific requirements of the Extended Reporting Period shall be governed in accordance with an amendatory endorsement attached to this policy.

Coverage under this section is only provided for those **Claims** arising out of, or in connection with, a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declarations Page and prior to the cancellation or non-renewal of this policy, and which **Claims** are first made and reported during the Extended Reporting Period. It is understood and agreed that no Extended Reporting Period shall be construed to be a new policy, and any **Claim** submitted shall be handled in accordance with this policy. The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided under this policy.

The Extended Reporting Period endorsement reinstates the **Insured's** Limits of Liability under Coverage A and Coverage B.

Except as otherwise provided for in this section or the amendatory endorsement, the Company may only cancel an Extended Reporting Period endorsement if the **Insured** has committed a material breach of the policy.

Death, Disability or Retirement

While this policy is in force, the Company will provide an **Insured**, listed under Coverage A, an Extended Reporting Period at no charge in the event the **Insured**:

**(a)**    dies; or

**(b)**    becomes permanently disabled and is unable to carry out the practice of medicine; or

**(c)**    retires from the practice of medicine, subject to the below specific requirements:

**(i)**    as of the date of "Retirement," as defined below, holds a license in good standing issued from the medical board in the **Insured's** state of licensure; and

**(ii)**    the **Insured** is fifty (50) years of age or older, and has been insured with the Company for at least one (1) year immediately preceding "Retirement;" or

**(iii)**    the **Insured** has been insured with the Company for at least seven (7) consecutive years immediately preceding "Retirement;" or

**(iv)**    the **Insured** is sixty-two (62) years of age or older, and has been insured with the Company for at least one (1) year immediately preceding "Retirement," but does not

meet the definition of "Retirement" due to planned future engagement in the practice of medicine in a substantially different practice arrangement where such future practice of medicine does not exceed eighty (80) hours per month.

"Retirement" means the complete and permanent withdrawal from the practice of medicine.

Proof of death must be furnished to the Company as soon as practicable. Notwithstanding any provisions in the policy or in the Extended Reporting Period, the period of time for reporting **Claims** ends upon the closing of a deceased **Insured's** estate.

Proof of permanent disability must be furnished to the Company as soon as practicable. The Company reserves the right to require that the **Insured** undertake an independent medical exam by a physician of the Company's choice to confirm the diagnosis of any disability.

The Company may demand proof of "Retirement." If any retired **Insured** subsequently resumes the practice of medicine, the Extended Reporting Period shall be deemed cancelled effective the date that the Insured resumed the practice of medicine.

## IX.   OTHER INSURANCE

**(a)**   For purposes of this section, the term "Other Insurance" shall include any insurance or risk transfer policy or agreement including, but not limited to, deductibles, self-insured retentions, risk sharing programs, alternative arrangements, or indemnity contracts, whether primary, pro-rata, contributory, excess, contingent, or on any other basis, even if such policy or agreement is not provided by a licensed insurer.

**(b)**   If any **Insured** is covered by Other Insurance, either primary or excess, with limits at least equal to the limits provided by this policy, for a **Claim** also covered by this policy, then that **Insured** shall not be entitled to protection under this policy.

**(c)**   If coverage under this policy is not precluded for a **Claim** against any **Insured** by paragraph (b) above because either (i) the Other Insurance available to the **Insured** does not have limits at least equal to the limits of this policy, or (ii) the Other Insurance has a provision substantially similar to paragraph (b) above, then this insurance is excess over such Other Insurance, unless such Other Insurance is specifically written as only excess over the limits of this policy. When this insurance is excess, the Company shall have no duty to defend an **Insured** if any other insurer has a duty to defend the **Insured** against that **Claim**. If no other insurer defends the **Insured**, then the Company will undertake the defense, but will be entitled to be subrogated to the **Insured's** rights against all other insurers.

**(d)**   In no event shall this insurance participate with Other Insurance on any basis greater than either equal shares, or on a pro-rata basis, unless such Other Insurance is specifically written to apply in excess of the limits of this policy. However:

**(i)**   if the **Insured** has Other Insurance which applies to a **Claim** on the same basis as this policy, and the Other Insurance permits contribution by equal shares, then both the Company and the Other Insurance will contribute equal amounts for damages and claim expenses until the Company's applicable Limits of Liability have been paid, the applicable limit has been exhausted, or the entire **Claim** has been paid, whichever comes first; or

**(ii)**   if any Other Insurance does not permit contribution by equal shares, then both the Company and the Other Insurance will contribute on a pro-rata basis by limit with each insurer's share of damages and claim expenses based on the ratio of the **Insured's** applicable Limits of Liability under this policy to the total Limits of Liability under all applicable policies.

**MEDICAL MUTUAL INSURANCE COMPANY
OF NORTH CAROLINA**

## X.    EXCLUSIONS

The following exclusions apply regardless of whether the **Claim** or **Legal Action** is intertwined with the rendering of **Professional Services**. This insurance does not apply to damages arising out of or in connection with any of the following:

**(a)**    An act, error, or omission by an **Insured** prior to the effective date of this policy if:

   **(i)**    an **Insured** knew or should have known of a **Medical Incident** that by its nature may result in a **Claim**; or

   **(ii)**    a **Claim** or **Legal Action** arising out of, or in connection with, the same **Medical Incident**, was reported to any "Other Insurance;" or

   **(iii)**    a **Medical Incident** giving rise to a **Claim** has been reported to "Other Insurance."

**(b)**    Damages awarded or costs taxed against an **Insured** caused by, due to, or because of any act or omission by an **Insured** that constitutes a failure to cooperate with the Company.

**(c)**    An act, error, or omission of a physician or **Advanced Practice Provider** who is not listed as an **Insured** in the Declarations Page, unless the **Insured** has purchased from the Company an endorsement insuring the vicarious liability of the **Insured** for the acts, errors, or omissions of any such person.

**(d)**    A **Claim** against an **Insured** in that **Insured's** capacity as administrator, director, officer, owner, superintendent, or trustee of any entity not covered by this policy. However, this exclusion does not apply to **Professional Services** by the **Insured** for the **Insured's** own patient at such an entity.

**(e)**    **Professional Services** that are outside the scope of the **Insured's** specialty as stated in the **Insured's** most recent application, renewal questionnaire, or similar information provided in support of issuance of this policy.

**(f)**    The rendering of or failure to render **Professional Services** occurring in any location where the **Insured** was not licensed to practice medicine and where such a license was required.

**(g)**    Providing **Professional Services** during the suspension, revocation, or surrender of an **Insured's** license or certificate to practice medicine, or which constitutes a violation of, or falls outside the scope of any restriction imposed upon such license or certificate.

**(h)**    Providing **Professional Services** while the denial, restriction, involuntary reduction, or suspension of hospital or clinical privileges (except for temporary restrictions due to incomplete medical records, or failure of the **Insured** to attend hospital medical staff meetings) of the **Insured** are in effect, unless the **Insured** has first notified the Company of such imposed actions, and the Company has agreed in writing to extend coverage during the effective period of such actions.

**(i)**    The rendering of or failure to render **Professional Services** outside the geographical boundaries of the **Insured's** specific U.S. state, unless the **Insured** has advised the Company in writing in advance of that **Insured's** intention to practice medicine in any other U.S. state or territory, and the Company has agreed in writing to extend coverage to such **Professional Services**.

**(j)**    An unauthorized activity by an **Insured** relating to the prescribing or dispensing of controlled substances.

**(k)**    Providing **Professional Services** while a hospital or clinic-imposed punitive or disciplinary observation, supervision, proctorship, preceptorship, or required consultation involving the **Insured** are in effect, unless the **Insured** has first notified the Company of such action and the Company has agreed in writing to extend coverage during the effective period of such action.

**MEDICAL MUTUAL INSURANCE COMPANY**
**OF NORTH CAROLINA**

**(l)**   Advertising, marketing, warranting (express or implied), or soliciting patients for **Professional Services**.

**(m)**   Damages arising out of any contractual liability from a defective good or product invented, designed, manufactured, or sold by an **Insured**. However, this exclusion shall not apply to an **Insured's** negligence arising from a good or product which was specifically used by the **Insured** to provide **Professional Services**.

**(n)**   Liabilities of others assumed by the **Insured** under any contract or agreement. However, this exclusion does not apply to any written indemnification agreement between an **Insured** and a third party where the liabilities of the third party under such an agreement are based solely upon **Professional Services** by the **Insured**, where such agreement was entered into prior to the **Medical Incident**, and where the **Insured** would have been liable to such third party without regard to the agreement.

**(o)**   An **Insured's** services as an expert witness or litigation consultant.

**(p)**   Discrimination by an **Insured** on any basis including, but not limited to, race, creed, age, sex, sexual orientation, marital status, or disability.

**(q)**   Any **Claim** or **Legal Action** where an allegation of **Sexual Misconduct** is made against any individual listed under Coverage A of the Declaration Page. Notwithstanding this exclusion, the Company shall have such rights and duties to defend and investigate as are otherwise applicable to Coverage A.

**(r)**   Any **Claim** or **Legal Action** where an allegation of **Sexual Misconduct** is made against the **Medical Practice** listed under Coverage B of the Declarations Page. However, this exclusion shall apply to damages only to the extent that the **Medical Practice**, other than the individual **Insured** under Coverage A whose conduct is addressed by Exclusion item (q), knew or should have known about an **Insured's Sexual Misconduct** and failed to appropriately investigate or act to prevent damages from any such misconduct. Notwithstanding this exclusion, the Company shall have such rights and duties to defend and investigate as are otherwise applicable to Coverage B.

**(s)**   Damages arising out of, in connection with, or enhanced, exacerbated, or aggravated by an individual's, listed under Coverage A of the Declarations Page, abuse of or being under the influence of alcohol, drugs, or any other impairing substance. Notwithstanding this exclusion, the Company shall have such rights and duties to defend and investigate as are otherwise applicable to Coverage A.

**(t)**   Under Coverage B, damages arising out of, in connection with, or enhanced, exacerbated, or aggravated by an **Insured's** abuse of or being under the influence of alcohol, drugs, or any other impairing substance. However, this exclusion shall apply to damages only to the extent that the **Medical Practice,** other than the individual **Insured** under Coverage A whose conduct is addressed by Exclusion item (s), knew or should have known about an **Insured's** abuse of alcohol, drugs, or any other impairing substance and failed to appropriately investigate or act to prevent damages from any such misconduct. Notwithstanding this exclusion, the Company shall have such rights and duties to defend and investigate as are otherwise applicable to Coverage B.

**(u)**   Damages arising out of or in connection with allegations asserting an invasion of privacy, slander, libel, or defamation.

**(v)**   Damages arising out of, in connection with, or enhanced, exacerbated, or aggravated by an **Insured's** misrepresentation or concealment of any material fact or circumstance relating to a **Claim**, including any involvement in the alteration of patient records, or the willful failure to preserve any relevant evidence.

**(w)**   An allegation asserting an unfair or deceptive act or practice, anti-trust, or restraint of trade, commerce, or services.

(x)     An **Insured's** criminal act or an **Insured's** violation of any statute, ordinance or regulation that provides for any criminal penalty whether or not there is a criminal charge, prosecution, or conviction.

(y)     Any willful, fraudulent, malicious (including malicious prosecution or abuse of process) or intentional acts or omissions, including, but not limited to, battery. However, this exclusion shall not preclude coverage for acts of gross negligence, or a similar higher statutory standard of proof required to establish the legal responsibility of an **Insured** when rendering **Professional Services**.

(z)     Damages arising out of or in connection with nuclear reaction, radiation, radioactive contamination, or the discharge, dispersal, release, or escape of pollutants, or any consequence of these. However, this exclusion does not apply to damages directly resulting from the rendering or failure to render **Professional Services**.

(aa)    Damages alleging wrongful termination, refusal to employ, demotion, evaluation, reassignment, discipline, or other employment related practices.

## XI.    DEFINITIONS

The following definitions shall apply to the **boldface** terms contained in this policy:

(a)     **"Advanced Practice Provider"** means nurse practitioners, physician assistants, certified registered nurse anesthetists, certified nurse midwives, psychotherapists, licensed clinical social workers, podiatrists, chiropractors, and dentists. For any **Advanced Practice Provider** sharing a limit with either the **Medical Practice** or an **Insured**, coverage is only provided while acting within the course and scope of and in furtherance of their employment by the **Medical Practice** or by an **Insured** listed in the Declaration Page under Coverage A.

(b)     **"Claim"** means, and is considered to be, first made against an **Insured** upon the earliest of:

(i)     an **Insured** having knowledge of a **Medical Incident** that by its nature may result in a demand or request for payment of damages or for services to which this insurance applies; or

(ii)    an **Insured** receiving a notice of a demand for money, for services, or any other notice indicating that a **Claim** may be made because of a **Medical Incident**; or

(iii)   an **Insured** receiving notice of a threatened or filed **Legal Action** alleged to have resulted from a **Medical Incident**.

All **Claims** arising out of or in connection with the same **Medical Incident** shall be deemed to have been made at the time the first **Claim** is made.

(c)     **"Injury"** means physical harm, mental anguish, mental illness, emotional upset or distress, sickness, disease, or death, caused by the conduct of the **Insured**, and otherwise covered by this policy.

(d)     **"Insured"** means:

(i)     each individual listed in Coverage A of the Declarations Page;

(ii)    any physician or **Advanced Practice Provider** providing **Locum Tenens Coverage** while an individual, listed in the Declarations Page under Coverage A, is temporarily absent from professional practice, but only as to **Professional Services** rendered on behalf of that individual;

(iii)   any **Advanced Practice Provider** listed in Coverage B of the Declarations Page;

(iv)    any **Medical Practice** listed in Coverage B of the Declarations Page and any **Non-Physician Employees**; and

(v)     if a **Medical Practice**, solely owned by an individual listed in Coverage A of the Declaration Page, is not listed under Coverage B, then that **Medical Practice** and its

**Non-Physician Employees** would share in the Limits of Liability with the individual.

(e) **"Legal Action"** means a civil proceeding that seeks damages which, if awarded, would be covered under this policy and includes:

    (i) a civil summons and/or complaint, including an order extending the time for filing a complaint; or

    (ii) a demand for arbitration or any other alternative dispute resolution proceeding; or

    (iii) a pre-suit, screening panel, or similar proceeding mandated by the laws of the state; or

    (iv) the equivalent of any of the above, naming an **Insured** as a party thereto and initiating a civil action for the recovery of money damages against an **Insured.**

(f) **"Locum Tenens Coverage"** means the process by which a licensed physician or **Advanced Practice Provider** temporarily works in the place of an **Insured**, listed in the Declarations Page under Coverage A, due to that **Insured's** vacation, illness, or other non-routine absence, subject to a limitation of sixty (60) days per **Policy Period**. The substituted individual working in this temporary capacity must:

    (i) have equivalent training, certification and appropriate site approval as necessary;

    (ii) be appropriately licensed by the state regulatory agency responsible for licensing in the specific U.S. state of the substituted **Insured**;

    (iii) have substantially similar qualifications to those of the **Insured** in whose place the individual is working; and

    (iv) act only within the scope of duties on behalf of the **Insured**.

(g) **"Medical Incident"** means an act, error, or omission, or series of related acts, errors or omissions, arising out of or in connection with the rendering of or failure to render **Professional Services**. A continuing course of treatment of a patient shall be considered one **Medical Incident**.

(h) **"Medical Practice"** means a sole proprietorship, corporation, professional association, partnership, or other legal entity established for the providing of **Professional Services**.

(i) **"Named Insured"** means the physician or **Medical Practice** listed in the Declarations Page in the box titled "Name and Address of **Named Insured**."

(j) **"Non-Physician Employees"** means those individuals while acting within the course and scope of and in furtherance of their employment by the **Medical Practice** or by an **Insured** listed in the Declarations Page under Coverage A. Unless otherwise noted, these individuals share in the Limits of Liability with the **Medical Practice** or an **Insured** listed under Coverage A. These individuals do not include **Advanced Practice Provider**.

(k) **"Policy Period"** means the period of time stated in the Declarations Page commencing with the effective date and ending with the expiration date, or earlier termination of this policy, if any, in accordance with this policy's Cancellation condition in Section XII, item (d). The **Policy Period** does not include any Extended Reporting Period.

(l) **"Professional Services"** means those medical or health care services the **Insured** provides, including:

    (i) medical, surgical, dental, or nursing treatment, including furnishing food or beverage in connection with these;

    (ii) making medical diagnoses and rendering medical opinions and/or advice;

    (iii) prescribing, furnishing, or dispensing drugs or medical, surgical, or dental supplies or appliances;

**(iv)** performing postmortem examinations or otherwise handling or treating deceased human bodies, including performing autopsies, removing organs, or performing other procedures;

**(v)** those rendered as a Good Samaritan in a sudden and unforeseen emergency for which no remuneration is demanded, expected, or received, even if such services are rendered outside the course and scope of the **Insured's** normal area of practice;

**(vi)** those rendered as a member of a formal accreditation, standards review, or similar committee of a licensed acute care hospital, provided that such hospital is accredited by The Joint Commission;

**(vii)** those rendered in conjunction with a formal committee of a professional medical society or medical association;

**(viii)** those rendered in conjunction with a peer review or credentialing committee of a lawfully structured physician or physician/hospital organization or association;

**(ix)** supervision of physician residents or fellows who are employed in a formal postgraduate training program, provided that:

    **a.** such physician residents or fellows are covered for any liability arising from their rendering of or failure to render **Professional Services** under an insurance or self-insurance program; and

    **b.** no **Insured** has agreed, by written contract or otherwise, to indemnify any health care facility, any individual, or any other entity for any liability arising from the acts or omissions of the same physician residents or fellows.

**(x)** those resulting from a patient's participation in either a Food and Drug Administration compliant clinical trial, or under an approved Institutional Review Board protocol clinical trial; and provided the **Insured** has reviewed and approved the patient's consent form to participate, and the sponsoring institution or organization has agreed in writing to defend and indemnify any person or entity covered by this policy who is involved in the clinical trial; and

**(xi)** those administrative services provided by an **Insured** as a Medical Director of a healthcare entity, regardless of such entity's status as an **Insured** under this policy, provided that:

    **a.** the entity's primary purpose is to provide healthcare services to patients, and;

    **b.** the administrative services are within the scope of the **Insured's** specialty and area of expertise and may include, but are not limited to:

        **1.** directing and coordinating clinical protocols, guidelines, and staff schedules, and/or

        **2.** assisting with and making recommendations for budgets, regulatory compliance, staff and patient educational services, and clinical operations, and;

    **c.** the entity is not already providing insurance coverage for any such administrative services, and;

    **d.** if the involved entity is not an **Insured** under this policy, that all services are rendered pursuant to a valid written agreement with such entity, which agreement has been approved by the Company before such services commence.

**(m)** **"Sexual Misconduct"** means any physical, emotional or mental assault, harassment, or contact of any sexual nature.

## XII.   POLICY CONDITIONS

The following conditions apply to this policy:

**(a)**   Action Against the Company

No legal action shall be brought by an **Insured** against the Company until there has been full compliance by the **Insured** with all of the terms of this policy. In addition, no legal action shall be brought against the Company for reimbursement of monies payable by an **Insured** until the amount of the **Insured's** obligation to pay has been determined finally by judgment after trial, by arbitration, or by written agreement of the claimant and the Company.

No person or organization has any right under this policy to bring the Company into any action to determine the **Insured's** liability for a **Claim**.

**(b)**   Assignment

The interests of the **Insured** under this policy are not assignable.

**(c)**   Authority of the **Named Insured**

The **Named Insured** is authorized to act on behalf of all **Insureds** with respect to acceptance of this policy and any endorsements, the giving or receiving of notice of cancellation, receiving unearned premium, exercising or declining the right to purchase an Extended Reporting Period (Tail Coverage), and agreeing to any changes in this policy.

**(d)**   Cancellation and Non-Renewal

If the Company cancels this policy, then it will calculate the unearned premium on a pro-rata basis, and then refund it to the **Named Insured**. If the **Named Insured** cancels this policy, then the Company will compute the unearned premium in accordance with the customary short-rate table and procedure (if allowed under state statute). Cancellation and non-renewal provisions of this policy are set forth in an attached amendatory endorsement.

**(e)**   Changes to this Policy/Merger Clause

The terms of this policy may be waived or changed only by an endorsement issued by the Company which becomes a part of this policy. Any prior or contemporaneous discussions or representations regarding this policy, the Declarations Page, or any endorsements agreed to or declined are merged into this policy, which is deemed the final agreement with respect to the matters contained in it.

**(f)**   Extra Contractual Benefits

From time to time the Company may offer or provide certain persons who apply for coverage, or become **Insureds**, with risk management and/or practice management services, education and products. In addition, the Company may arrange for third party service providers, such as academic institutions, health care consultants, lawyers, accountants and others who service the practice needs of health care professionals, to provide discounted goods and services to those persons. While the Company has arranged for the provision of these goods, services and/or third party provider discounts, the third party service providers are liable to the applicants or **Insureds** for the provision of such goods and/or services. The Company is not responsible for the provision of such goods and/or services, nor is it liable for the failure of the provision of the same. Further, the Company is not liable to the applicants or **Insureds** for the negligent provision of such goods and/or services by third party service providers.

**(g)**   Governing Law and State Specific Statutes

This policy shall be interpreted and construed in accordance with the laws of the state in which this policy is issued. If any term in, or provision of, this policy, or any duty arising

from either, conflicts with a statute of that state, then that term or provision shall be deemed amended so as to conform to the minimum requirements of the statute.

**(h)**   **Insured's** Representations

By acceptance of this policy, each **Insured** agrees that the statements in the respective applications, renewal questionnaires, and any other documents submitted to the Company are true and correct. In addition, it is understood and agreed that those statements are incorporated into and shall form a part of this policy. The Company reserves the right to rescind this policy or any coverage provided hereby, for any material misrepresentations made by an **Insured**.

**(i)**   Policy Territory

This policy applies to **Professional Services** performed anywhere in the world but only if any **Legal Action** against the **Insured** is filed in the United States of America, or in one of its territories or possessions.

**(j)**   Premiums

All premiums for this policy shall be computed based on the Company's rules, rates, and rating plans in effect with respect to the period for which the premiums are due. The premium is due either on the first day of the **Policy Period**, or as invoiced by the Company. If any premium is not paid when due, then this Policy may be canceled as described in Policy Conditions item (d) above. The **Named Insured** is responsible for paying all premiums. The **Named Insured** shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at such times during and after the **Policy Period** as the Company requests.

**(k)**   Subrogation

In the event of any payment under this policy, the Company shall be subrogated to all of the **Insured's** rights of recovery thereof against any person or organization, and the **Insured** shall execute and deliver instruments and papers, and do whatever else is necessary, to allow for the Company's pursuit of such rights. The **Insured** shall do nothing after any **Claim** to prejudice the Company's rights of subrogation.

IN WITNESS WHEREOF, Medical Mutual Insurance Company of North Carolina has caused this policy to be signed by its President and its Secretary, but this policy shall not be valid until the attachment of the Declarations Page is completed and signed by a duly authorized representative of the Company.

Thomas Hatton McCoy, MD
President

H. David Bruton, MD
Secretary



**Medical Mutual**™
PROTECTING OUR PROFESSION

## VIRGINIA AMENDATORY ENDORSEMENT
### THIS ENDORSEMENT CHANGES YOUR POLICY
### PLEASE FILE WITH YOUR POLICY

| Name and Address of **Named Insured** | Policy Period |
|---|---|
| Joni Janine Johnson, MD<br>2128 Jefferson David Hwy.<br>Suite 201<br>Stafford, VA  22554 | Policy Number:           PS119567<br>Effective Date of Policy:    September 1, 2017<br><br>Endorsement Effective Date:  September 1, 2017<br>Date Endorsement Issued:    August 4, 2017<br><br>*All dates herein as of 12:01 A.M. Standard Time at the Principal Address of the above **Named Insured*** |

 The following sections of the Medical Professional Liability Insurance Policy have been supplemented and/or amended to comply with any Virginia governing law, regulation or requirement:

## VIII.   EXTENDED REPORTING PERIOD (TAIL COVERAGE)
The terms and specific requirements of the Extended Reporting Period, as described in Section VIII of this policy, shall be governed in accordance with the following:

In the event of cancellation or non-renewal of this policy or termination of an individual's coverage under this policy, except for:

      **(a)**      cancellation or non-renewal due to non-payment of premium; or

      **(b)**      non-compliance with policy terms, conditions or fraud; or

      **(c)**      in the event the Company replaces this policy with a policy that does not apply on a claims-made basis or that is subject to a later retroactive date than is shown on the Declarations Page,

an **Insured** listed under Coverage A and/or a **Medical Practice** listed under Coverage B, shall have the right, upon payment of an additional premium computed in accordance with the Company's rules, rates, and rating plans then in effect, to an Extended Reporting Period of unlimited duration, during which **Claims** may be reported under this policy.

Such right to purchase an Extended Reporting Period must be exercised by an **Insured** listed under Coverage A and/or a **Medical Practice** listed under Coverage B by written notice to the Company not later than thirty (30) days after the effective date of the cancellation or non-renewal. The entire premium for the Extended Reporting Period shall be deemed fully earned. The Extended Reporting Period cannot be cancelled by the Company except for non-payment of premium or fraud. In the event the endorsement is terminated, the Company is not liable to return any premium paid.

If the Company excludes any existing coverage from this policy and the policy remains in effect or is renewed, the Company shall offer an Extended Reporting Period for such coverage on the same basis that the Extended Reporting Period would be offered if the entire policy were being cancelled or non-renewed. However, the exclusion of any existing coverage shall not include changes in policy limits or deductibles.

**XII.    POLICY CONDITIONS**, Item **(d) CANCELLATION AND NON-RENEWAL**
The Cancellation and Non-renewal provisions, as described in Section XII of this policy, are set forth below.

The **Named Insured** may cancel this policy only by providing the Company written notice stating when such cancellation shall be effective. In such event, the earned premium shall be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective, or as soon as practicable after cancellation becomes effective, but delay of payment of unearned premium by the Company shall not be deemed to delay or otherwise affect the cancellation.

The Company agrees to notify the **Named Insured** if it intends to cancel or non-renew this policy by mailing the **Named Insured**, written notice of such intent, including the reason for cancellation or non-renewal, not less than ninety (90) days prior to the effective date of cancellation or non-renewal. However, where cancellation or non-renewal of this policy is for non-payment of premium, the Company agrees to notify the **Named Insured** of its intention to cancel or non-renew this policy not less than fifteen (15) days prior to the effective date of cancellation.

Written notice to the **Named Insured** shall be deemed notice to all **Insureds** for all purposes under this policy.

All other terms and conditions of the policy remain unchanged.

**Signed By:**  _____                **Date:**  _August 4, 2017_____
            Authorized Company Representative



**Medical Mutual™**
PROTECTING OUR PROFESSION

## BROAD REGULATORY PROTECTION ENDORSEMENT
### THIS ENDORSEMENT CHANGES YOUR POLICY
### PLEASE FILE WITH YOUR POLICY

| Name and Address of **Named Insured** | Policy Period | |
|---|---|---|
| Joni Janine Johnson, MD<br>2128 Jefferson David Hwy.<br>Suite 201<br>Stafford, VA  22554 | Policy Number:<br>Effective Date of Policy:<br><br>Endorsement Effective Date:<br>Date Endorsement Issued: | PS119567<br>September 1, 2017<br><br>September 1, 2017<br>August 4, 2017 |
| | *All dates herein as of 12:01 A.M. Standard Time at the Principal Address of the above **Named Insured*** | |

In consideration of the premium, it is agreed that all of the provisions of the Medical Professional Liability Insurance Policy are incorporated herein by reference and apply the same as if restated in this endorsement. Coverage under this endorsement will not respond to **Claims** which are covered under other coverage parts of this policy.

## I.      COVERAGE BENEFITS

Under this endorsement, the Company will reimburse an **Insured** for **Audit Expenses**, **Legal Expenses**, and/or **Regulatory Fines and Penalties**, to the extent insurable by law, resulting from an "Insured Event" (as defined in Section II of this endorsement) which:

**(a)**     occurred on or after the Retroactive Date stated in the Declarations Page, and before the end of the **Policy Period**;

**(b)**     was first **Instituted** against the **Insured** during the **Policy Period**; and

**(c)**     was reported to the Company during the **Policy Period**. All related proceedings arising out of the same circumstances shall be deemed **Instituted** as of the earliest notice date to the Company.

The Company shall not assume any duty to defend under this section, but only to make appropriate reimbursements to the **Insured**.

## II.      INSURED EVENT

An "Insured Event" shall include the following:

**(a)**     Proceedings **Instituted** against an **Insured**, alleging improper disposal of medical waste materials;

**(b)**     Proceedings **Instituted** against an **Insured**, alleging violation of the provisions of the Occupational Safety and Health Act;

**(c)**     Proceedings **Instituted** against an **Insured**, alleging violation of provisions regarding equal access under the Americans with Disability Act. However, this shall not include any costs of modifying the **Insured's** premises;

**(d)**     Personal income tax audit **Instituted** against an **Insured**. This applies to examinations of the **Insured's** individual federal or state income tax return by the appropriate government entity;

**MEDICAL MUTUAL INSURANCE COMPANY**
**OF NORTH CAROLINA**

**(e)**     Proceedings **Instituted** against an **Insured** for violations of the attestation period granted for demonstration of meaningful use of certified Electronic Health Records technology as required in the EHR Incentive Program of the Health Information Technology for Economic and Clinical Health Act (HITECH Act);

**(f)**     Proceedings **Instituted** against an **Insured**, alleging violation of the provisions of the Emergency Medical Treatment and Active Labor Act (EMTALA) or Stark Laws;

**(g)**     Disciplinary proceedings **Instituted** against an **Insured**, alleging competency or professional conduct issues. These proceedings shall be limited to the following:

    **(i)**     Any professional review action against the **Insured** by the professional review body of a healthcare entity where the **Insured** has clinical privileges or membership, and the action is taken for purposes that may adversely affect membership and privileges. This shall not include any application by the **Insured** for initial placement on medical staff or any application for renewing, reactivating or reinstating privileges;

    **(ii)**     Proceedings threatened or **Instituted** by a state licensing authority against an **Insured**. This shall not include any initial application for a license or any application for renewing, reactivating or reinstating a license; or

    **(iii)**     Proceedings **Instituted** by a medical specialty board, professional or other peer review organization against an **Insured**.

**(h)**     Billing error proceedings which are **Instituted** against an **Insured** by a civil lawsuit filed by a "qui tam plaintiff" (a private plaintiff under the U.S. False Claims Act) or a formal investigation undertaken or written demand made by a government entity or commercial payer seeking recovery or other recourse for the **Insured's** actual or alleged erroneous billing for payment or reimbursement for **Professional Services**;

All related proceedings arising out of the same circumstances shall be considered as one "Insured Event." Any appeals shall be considered to be part of the original "Insured Event."

## III.     LIMITS OF LIABILITY

Under this endorsement, the Limits of Liability are in addition to, and will not erode, the limits provided under other coverage parts of this policy. With respect to the amount of **Audit Expenses**, **Legal Expenses**, and/or **Regulatory Fines and Penalties** provided, the following limits apply:

|  | Each Claim | Annual Aggregate |
|---|---|---|
| Per **Insured**, and for any one "Insured Event:" | $50,000 | $50,000 |
| For multiple **Insureds**, who are jointly involved in the same "Insured Event," the maximum amount for all **Insureds** shall not exceed: |  | $250,000 |
| The overall aggregate limit for all payments, and for all **Insureds** is: |  | $500,000 |

## IV.   CHOICE OF COUNSEL

The Company will provide the **Insured** with names of panel counsel. If the **Insured** retains panel counsel to provide defense, then the Company will, subject to the provisions of this coverage, reimburse 100% of covered costs. If the **Insured** retains non-panel counsel to provide defense, then the Company will only reimburse 75% of covered costs, and the **Insured** must pay a co-insurance of 25% of these costs.

There shall be no infringement by the Company upon the professional judgment of any attorney or tax practitioner providing legal or audit services reimbursable under this coverage. No attorney providing legal or audit services under this coverage shall be required to act by the Company in derogation of his/her professional responsibilities to the **Insured**.

## V.   EXTENDED REPORTING PERIOD (TAIL COVERAGE)

Conditioned on the purchase of or entitlement to an Extended Reporting Period Endorsement for the policy, an **Insured** will also receive an Extended Reporting Period under this Broad Regulatory Protection Endorsement for a period of up to one year immediately following termination of the policy. If an Extended Reporting Period Endorsement is not issued for the policy, then coverage under this Broad Regulatory Protection Endorsement terminates at the end of the **Policy Period**.

The Limits of Liability for the coverage under this Broad Regulatory Protection Endorsement, during its Extended Reporting Period, shall be part of, and not in addition to, the Limits of Liability for the **Policy Period** as set forth in Section III above. Additionally, the existence of an Extended Reporting Period for this coverage will not increase the maximum **Audit Expense**, **Legal Expense** or **Regulatory Fines and Penalties** coverage amount.

Cancellation or termination, for any reason, of the policy's Extended Reporting Period Endorsement automatically terminates the Extended Reporting Period under this Broad Regulatory Protection Endorsement.

## VI.   EXCLUSIONS

Additional exclusions pertaining to this endorsement are listed below. No benefits shall be payable for **Audit Expenses**, **Legal Expenses**, and/or **Regulatory Fines and Penalties**:

(a)   involving disputes with respect to this insurance, including questions as to whether **Audit Expenses**, **Legal Expenses**, and/or **Regulatory Fines and Penalties** are reimbursable under this coverage; or

(b)   if the **Audit Expenses**, **Legal Expenses**, and/or **Regulatory Fines and Penalties** arise out of any matter that the **Insured** has conspired with another to have **Instituted**. However, this exclusion does not apply where federal or state law requires action by an **Insured** that may result in a **Claim** under this coverage; or

(c)   involving any defense of "Criminal Prosecution" against an **Insured**. "Criminal Prosecution" shall mean any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment and/or criminal fine.

## VII.   DEFINITIONS

Additional definitions pertaining to this endorsement are listed below:

(a) **"Audit Expense,"** as it pertains to any:

    (i) personal income tax audit, means a Tax Practitioner's fees for services rendered and associated expenses;

    (ii) billing error proceeding, means the fees for services rendered and associated expenses of an accountant, a lawyer or a billing, coding or audit consultant (not an employee of the **Insured**), specifically engaged for the purpose of responding to a payor's request to return professional fees that are alleged to have been improperly billed and paid as the result of such audit. No taxes, penalties, interest or expenses (other than for fees and services as outlined above) shall be covered.

(b) **"Instituted"** means the receipt by an **Insured** of written notice that an "Insured Event" has begun or is being pursued.

(c) **"Insured"**, as it related to this endorsement, means:

    (i) each individual listed in Coverage A of the Declarations Page;

    (ii) any **Medical Practice** listed in Coverage B of the Declarations Page; and

    (iii) if a **Medical Practice** of an individual listed in Coverage A of the Declaration Page, is not listed under Coverage B, then that **Medical Practice** would share in the Limits of Liability with the individual.

(d) **"Legal Expense"** means:

    (i) reasonable and necessary fees incurred by an attorney(s) for legal services rendered to defend an "Insured Event;" and

    (ii) all other reasonable and necessary fees, costs, and associated expenses resulting from the investigation, adjustment, defense and appeal of an "Insured Event."

**Legal Expenses** shall not include any wages, salaries, fees, or other compensation or income paid to any **Insured** for time spent in cooperating in the defense and investigation of any **Claim** or potential **Claim**. **Legal Expenses** also do not include the costs associated with the adoption and implementation of any corporate integrity agreement, compliance program or similar provision regarding the operations of the **Insured's** business, negotiated as part of a settlement with or by order of a government entity.

(e) **"Regulatory Fines and Penalties"** means any civil fines or penalties the **Insured** is required to pay as a result of a covered proceeding "Insured Event". However, the repayment of fees, reimbursements, profits, charges or benefit payments received by the **Insured** from any governmental or commercial payer or program, or from any patient, to which the **Insured** was not legally entitled are not included.

All other terms and conditions of the policy remain unchanged.

**Signed By:** _____   **Date:** _August 4, 2017_____

    Authorized Company Representative



**Medical Mutual**™
PROTECTING OUR PROFESSION

## VICARIOUS LIABILITY ENDORSEMENT
THIS ENDORSEMENT CHANGES YOUR POLICY
PLEASE FILE WITH YOUR POLICY

| Name and Address of **Named Insured** | Policy Period | |
|---|---|---|
| Joni Janine Johnson, MD<br>2128 Jefferson David Hwy.<br>Suite 201<br>Stafford, VA  22554 | Policy Number:<br>Effective Date of Policy:<br><br>Endorsement Effective Date:<br>Date Endorsement Issued: | PS119567<br>September 1, 2017<br><br>September 1, 2017<br>August 4, 2017 |
| | *All dates herein as of 12:01 A.M. Standard Time at the Principal Address of the above **Named Insured*** | |

In consideration of the premium, it is agreed that **Section X. EXCLUSIONS** paragraph **(c)** is deleted in its entirety, but only as respects the vicarious liability of Joni Janine Johnson, MD arising from the acts, errors, or omissions of the entities and/or the individuals listed below. Except vicarious liability coverage will be provided only if the entities and/or the individuals listed below maintain valid and collectible insurance continuously with limits of liability at least equal to that of Joni Janine Johnson, MD.

      Joan E. Cephas, LCSW

      Joseph Cannon Farrell, LCSW

All other terms and conditions of the policy remain unchanged.

**Signed By:** _(signature)_         **Date:**  August 4, 2017
Authorized Company Representative



**Medical Mutual**™
PROTECTING OUR PROFESSION

## ADVANCED PRACTICE PROVIDERS SHARED LIMITS
THIS ENDORSEMENT CHANGES YOUR POLICY
PLEASE FILE WITH YOUR POLICY

| Name and Address of **Named Insured** | Policy Period | |
|---|---|---|
| Joni Janine Johnson, MD<br>2128 Jefferson David Hwy.<br>Suite 201<br>Stafford, VA  22554 | Policy Number:<br>Effective Date of Policy:<br><br>Endorsement Effective Date:<br>Date Endorsement Issued: | PS119567<br>September 1, 2017<br><br>September 1, 2017<br>August 4, 2017 |
| | *All dates herein as of 12:01 A.M. Standard Time at the Principal Address of the above **Named Insured*** | |

In consideration of the premium charged, it is agreed that the **Named Insured's** Each **Claim** and Annual Aggregate Limit shown in the Declarations Page under Coverage A or Coverage B applies as a single shared limit for the **Named Insured**, **Non-Physician Employees** and any **Advanced Practice Provider** listed below:

     Michelle Graf, NP

All other terms and conditions of the policy remain unchanged.

**Signed By:** _____      **Date:** _August 4, 2017_____
      Authorized Company Representative



**Medical Mutual**™
PROTECTING OUR PROFESSION

## MUTUAL INSURANCE HOLDING COMPANY AMENDATORY ENDORSEMENT
### THIS ENDORSEMENT CHANGES YOUR POLICY
### PLEASE FILE WITH YOUR POLICY

| Name and Address of **Named Insured** | Policy Period | |
|---|---|---|
| Joni Janine Johnson, MD<br>2128 Jefferson David Hwy.<br>Suite 201<br>Stafford, VA  22554 | Policy Number:<br>Effective Date of Policy:<br><br>Endorsement Effective Date:<br>Date Endorsement Issued:<br><br>*All dates herein as of 12:01 A.M. Standard Time at the Principal Address of the above **Named Insured*** | PS119567<br>September 1, 2017<br><br>September 1, 2017<br>August 4, 2017 |

In consideration of the premium, it is understood and agreed that the policy is amended to add Section XIII. as follows:

## XIII. MUTUAL COMPANY POLICY PROVISIONS

**(a)**   Members Of The Company

Each physician named in the Declarations under Coverage A, by virtue of the issuance of this policy, is a member of Medical Mutual Holdings, Inc.the parent company of Medical Mutual Insurance Company of North Carolina, so long as the physician's coverage is in force.  Each physician shall be entitled to one vote, either in person or by proxy, at meetings of members of Medical Mutual Holdings, Inc. Upon cancellation or upon other termination of the physician's coverage, the physician ceases to be a member of Medical Mutual Holdings, Inc.

**(b)**   Annual Meeting

The annual meeting of the members of Medical Mutual Holdings, Inc. will be held at such time and place as shall be designated by its Board of Directors, of which due notice will be mailed or delivered to each of its members at the address stated in the policy at least thirty (30) days prior thereto.

All other terms and conditions of the policy remain unchanged.

**Signed By:**   _____     **Date:**   _August 4, 2017_____
Authorized Company Representative



**Medical Mutual**™
PROTECTING OUR PROFESSION

# CERTIFICATE OF INSURANCE

**This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend, or alter the coverage afforded by the policies listed below.**

**INSURED:**

    Joni Janine Johnson, MD
    2128 Jefferson David Hwy.
    Suite 201
    Stafford, VA  22554

**COMPANY AFFORDING COVERAGE:**

Medical Mutual Insurance Company of North Carolina
700 Spring Forest Road 4th Floor
Raleigh, NC 27609

**TYPE OF INSURANCE:**  Medical Professional Liability - Claims Made

**POLICY NUMBER:** PS119567                    **RETROACTIVE DATE:** September 1, 2012

**POLICY PERIOD:**

    **FROM:** September 1, 2017;12:01 A.M.      **TO:** September 1, 2018;12:01 A.M.

**LIMITS OF LIABILITY:**

    **EACH CLAIM**                   **ANNUAL AGGREGATE**
    2,350,000                     7,050,000

_(signature)_
Authorized Representative

Date:  August 4, 2017

Certificate Holder:





# e-MD® Network Security and Privacy
## EVIDENCE OF COVERAGE
### (CLAIMS-MADE AND REPORTED)

As a Medical Professional Liability (MPL) insurance policyholder with Medical Mutual Insurance Company of North Carolina, the Insured is provided e-MD® coverage under Master Policy Number 484931 issued to Medical Mutual Insurance Company of North Carolina and effected through NAS Insurance Services, LLC on behalf of certain Underwriters at Lloyd's, London. The terms, conditions, and exclusions of the coverage evidenced herein are more fully described in the Master Policy on file with Medical Mutual Insurance Company of North Carolina.

| | |
|---|---|
| Named Insured: | Joni Janine Johnson, MD |
| MPL Policy Number: | PS119567 |
| Coverage Period: | Same as your medical professional liability Policy Period. |
| Retroactive Date: | Same as your medical professional liability Retroactive Date. If your medical professional liability policy is issued on an occurrence basis, the retroactive date shall be the initial effective date of your e-MD® Network Security and Privacy coverage. |

PLEASE FILE THIS CERTIFICATE WITH YOUR MPL POLICY

Named Coverages:
- I. Multimedia Liability
- II. Security and Privacy Liability
- III. Privacy Regulatory Defense and Penalties
- IV. PCI DSS Assessment
- V. Privacy Breach Responses Costs, Notification Expenses, and Breach Support and Credit Monitoring Expenses
- VI. BrandGuard®
  - Waiting Period:...................2 weeks
  - Period of Indemnity:............up to 6 months
- VII. Network Asset Protection
  - Co-Insurance:......................10% Special Expenses
  - Waiting Period:...................8 hours
  - Period of Restoration:.........up to 120 days
- VIII. Cyber Extortion
- IX. Cyber Terrorism Coverage
  - Waiting Period:...................8 hours
  - Period of Restoration:.........up to 120 days

| | |
|---|---|
| Limits of Liability*: | $50,000 Per Claim / $50,000 Annual Aggregate |
| Group Annual Aggregate Limit: | $50,000 |
| Retention: | None |

\*  Subject to the provisions of the Master Policy and the Group Annual Aggregate Limit, the Limits of Liability apply separately to each **insured physician** and **advanced practice provider** listed with individual limits under Coverage A, and the **insured medical practice** listed under Coverage B, of the medical professional liability Declarations Page.

*Immediately report claims to:*   *NAS Insurance Services, LLC*
                                   *16501 Ventura Blvd., Suite 200*   *Phone: (818) 382-2030*
                                   *Encino, CA 91436*                 *Email: claims@nasinsurance.com*



**Medical Mutual**™
PROTECTING OUR PROFESSION

### POLICY CONTACT INFORMATION

# Manage Your Account with Policyholder Services

Where do you go if you want to...

      ...generate a COI?
      ...view your policy?
      ...add or remove a provider?
      ...view financial transactions and invoices?
      ...change profile information (address, phone, e-mail)?

Policyholder Services will make managing your account a whole lot easier.  For more, visit us at:
**www.medicalmutualgroup.com** and click on the **"Sign In"** or **"PHS"** in the top menu bar.

If you're not registered, click on **"Register Now"** link to complete a member registration form - it's quick and easy.
For immediate access, you will need your policy number and the PIN on your Declarations Page.

*Please note: Only authorized practice representatives are granted access to Policyholder Services and resources .*

---

**Thank you very much for your continued patronage and partnership with Medical Mutual.  We look forward to serving you and encourage you to contact us at the numbers referenced below should you have any questions or need assistance.**

| Underwriting | Tami Phillips<br>(919) 878-7584<br>tami.phillips@mmicnc.com | Jennelle Coolidge, Underwriting Assistant<br>(919) 878-7519<br>jennelle.coolidge@mmicnc.com |
|---|---|---|
| **Agency** | Chas. Lunsford Sons & Associates, Inc.<br>(540) 855-5159 | |
| **Claims** | Kristi Wright, Claims Supervisor<br>(919) 878-7512<br>Kristi.Wright@mmicnc.com | |
| **Risk Management** | Jason Lee, Senior Risk Manager<br>(919) 878-7516<br>jason.lee@mmicnc.com | |
| **Accounting** | Vicky Campbell, Senior Staff Accountant<br>(919) 878-7509<br>vicky.campbell@mmicnc.com | |
| **Legacy Fund** | Beth Carroll, Senior Corporate Affairs Coordinator<br>(919) 878-7501<br>beth.carroll@mmicnc.com | |
| **HR Consultant** | Breni Malpass, HR Advisor<br>(888) 473-9778<br>Breni.malpass@callhrexperts.com | |