**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JONI J. JOHNSON, M.D.**<br><br>**AND**<br><br>**PEDIATRIC PARTNERS FOR ATTENTION AND LEARNING, INC.**<br><br>**AND**<br><br>**VERNON GREEN, JR.**<br><br>**AND**<br><br>**G CUBED MINISTRIES D/B/A GCUBED COMMUNITY SERVICES A/K/A G3 COMMUNITY SERVICES**<br><br>**AND**<br><br>**JENNIFER GAUSE**<br><br>**AND**<br><br>**KAMAU GAUSE**<br><br>**AND**<br><br>**C.D, A MINOR, BY NEXT FRIEND AND THROUGH HIS MOTHER, JENNIFER GAUSE**<br><br>**AND**<br><br>**L.G., A MINOR, BY NEXT FRIEND AND THROUGH HER FATHER, KAMAU GAUSE** | **Case No.: 1:19-cv-01601-LO-TCB** |

**AND**

**I.G., A MINOR, BY NEXT FRIEND AND THROUGH HER MOTHER, JENNIFER GAUSE**

**AND**

**A.D. A MINOR, BY NEXT FRIEND AND THROUGH HER MOTHER, JENNIFER GAUSE**

**AND**

**CATHY GNIK, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF N.A., A MINOR, AND N.L., A MINOR**

**AND**

**COURTNEY ANDREW-KNIGHT**

**AND**

**TRISTEN ANDREW-MAJOR**

**AND**

**KATHLEEN BELL, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF A.B., A MINOR**

**AND**

**NICKI BURGESS AND DANIEL BURGESS, INDIVIDUALLY, AND AS PARENTS AND NEXT FRIENDS OF M.B., A MINOR**

**AND**

**BRIANNA CANNAVO, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF S.C., A MINOR**

**AND**

**KIMBERLEY CORREA AND PEDRO CORREA, INDIVIDUALLY, AND AS PARENTS AND NEXT FRIENDS OF A.C., A MINOR**

**AND**

**MEAGAN CRAWFORD AND CARTER CRAWFORD, INDIVIDUALLY, AND AS PARENTS AND NEXT FRIENDS OF E.C., A MINOR**

**AND**

**SIERRA DAVIS**

**AND**

**VALLI DAVIS**

**AND**

**JAMES DAVIS**

**AND**

**KASHA HAYWOOD AND JESSE HAYWOOD, INDIVIDUALLY, AND AS PARENTS AND NEXT FRIENDS OF Z.H., A MINOR**

**AND**

**RALPH JOHNSON, JR., INDIVIDUALLY, AND AS FATHER AND NEXT FRIEND OF J.J., A MINOR**

**AND**

**CATHERINE MIDDLEKAUFF**

**AND**

**CAMDEN MIDDLEKAUFF**

**AND**

**LESLI COCKRELL-NALLS AND BILLY NALLS, INDIVIDUALLY, AND AS PARENTS AND NEXT FRIENDS OF L.N., A MINOR, AND AS PARENTS OF KARAH NALLS, AND KARAH NALLS, INDIVIDUALLY;**

**AND**

**KIMBERLEY OVERTON AND MARK AUSLEY, INDIVIDUALLY, AND AS PARENTS AND NEXT FRIENDS OF L.O., A MINOR**

**AND**

**MARIA PAVLAK**

**AND**

**RICHARD PAVLAK**

**AND**

**RITA PAVLAK**

**AND**

**AUSTIN RODRIGUEZ**

**AND**

**JEFFREY ROOSA**

**AND**

**ALVEENA SPENCER**

**AND**

**JOHN VIARELLA**

**AND**

**AVA WAGGONER**

| | |
|---|---|
| **AND** | ) |
| | ) |
| **DAPHNEY WAGGONER** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **WILLIAM WAGGONER** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **LISA WILLIAMS AND MARIO WILLIAMS, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF J.W., A MINOR, AND N.W., A MINOR** | ) ) ) ) |
| | ) |
| **AND** | ) |
| | ) |
| **RYLAND LOVITT** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **DIANN CARREKER** | ) |
| | ) |
| **Defendants.** | ) |

**SECOND AMENDED COMPLAINT**
**(Declaratory Judgment)**

Plaintiff, Medical Mutual Insurance Company of North Carolina ("MMIC"), by counsel, for its Second Amended Complaint against Defendants Joni J. Johnson ("Johnson"), Pediatric Partners for Attention and Learning, Inc. ("PP4AL"), G3 Community Services ("G3") Vernon Green, Jr. ("Green"), N.L., a minor, suing by his Mother and Next Friend, Cathy Gnik; Tristan Andrew-Major; Courtney Andrew-Knight; A.B., a minor, suing by her Mother and Next Friend, Kathleen Bell; M.B., a minor, suing by her Parents and Next Friends, Nicki and Daniel Burgess; S.C., a minor, suing by his Mother and Next Friend, Brianna Cannavo; A.C., a minor, suing by his Parents and Next Friends, Kimberley and Pedro Correa; E.C., a minor, suing by his Parents and Next Friends, Meagan Crawford and Carter Crawford; Sierra Davis; Valli Davis; James

Davis; Z.H., a minor, suing by his Parents and Next Friends, Meagan Kasha Haywood and Jesse Haywood; J.J. , a minor, suing by his Father and Next Friend, Ralph Johnson, Jr.; Camden Middlekauff; Catherine Middlekauff; L.N., a minor, suing by his Parents and Next Friends, Lesli Cockrell-Nalls and Billy Nalls; Karah Nalls; L.O., a minor, suing by her Parents and Next Friends, Kimberley Overton and Mark Ausley; Rita Pavlak; Maria Pavlak; Richard Pavlak; Austin Rodriguez; Jeffrey Roosa; Alveena Spencer; John Viarella; Ava Waggoner; Daphney Waggoner; William Waggoner; J.W., a minor, suing by his Parents and Next Friends, Lisa Williams and Mario Williams; N.W., a minor, suing by his Parents and Next Friends, Lisa Williams and Mario Williams; N.A., a minor, suing by his Mother and Next Friend, Cathy Gnik; Ryland Lovitt; and Diann Carreker states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs, and MMIC and the Defendants are citizens of different states.

2. This Court also has jurisdiction over this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

## VENUE

3. Venue is appropriate in this Circuit pursuant to 28 U.S.C. § 1391(b)(2). The insurance policies that are the subject of this Declaratory Judgment were issued to Joni J. Johnson, whose principal place of business is in Stafford County, Virginia. The underlying Lawsuits that are the subject of this Declaratory Judgment action have been filed in the Circuit Court for Stafford County, Virginia.

**PARTIES**

4. Defendant Johnson is a resident of Virginia.

5. Defendant PP4AL is a health care practice headquartered in Stafford County, Virginia and incorporated in Virginia. At all times relevant hereto, upon information and belief, Johnson was PP4AL's sole shareholder.

6. Defendant Green is a resident of Virginia.

7. Defendant G3 is a Virginia non-profit organization with its principal place of business in Stafford County, Virginia.

8. Defendant, N.A., a minor, is currently 10 years old. N.A. is represented by his Mother and Next Friend, Cathy Gnik. N.A. and his mother reside in Orange County, Virginia. Defendant Cathy Gnik is an adult residing in Orange County, Virginia.

9. Defendant, N.L., a minor, is currently 15 years old. N.L. is represented by his Mother and Next friend, Cathy Gnik. N. L. and his mother reside in Orange County, Virginia.

10. Defendant, Tristen Andrew-Major, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

11. Defendant, Courtney Andrew-Knight, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

12. Defendant, A.B., a minor, is currently 13 years old. A.B. is represented by her Mother and Next Friend, Kathleen Bell. A.B. and her mother reside in Stafford County, Virginia. Defendant Kathleen Bell is an adult residing in Stafford County, Virginia.

13. Defendant, M.B., a minor, is currently 12 years old. M.B. is represented by her Parents and Next Friends, Nicki Burgess and Daniel Burgess. M.B. and her parents reside in

King George County, Virginia. Defendants Nicki Burgess and Daniel Burgess are adults residing in King George County, Virginia.

14. Defendant, S.C., a minor, is currently 8 years old. S.C. is represented by his Mother and Next Friend, Brianna Cannavo. At all times relevant to this cause of action, S.C. and his mother resided in Spotsylvania County, Virginia. Defendant Brianna Cannavo is an adult residing in Spotsylvania County, Virginia.

15. Defendant, A.C., a minor, is currently 13 years old. A.C. is represented by his Parents and Next Friends, Kimberley Correa and Pedro Correa. At all times relevant to this cause of action, A.C. and his parents resided in Stafford County, Virginia. Defendants Kimberley Correa and Pedro Correa are adults residing in Stafford County, Virginia.

16. Defendant, E.C., a minor, is currently 8 years old. E.C. is represented by his Parents and Next Friends, Meagan Crawford and Carter Crawford. At all times relevant to this cause of action, E.C. and his parents resided in Stafford County, Virginia. Defendants Meagan Crawford and Carter Crawford are adults residing in Stafford County, Virginia.

17. Defendant, Sierra Davis, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in Caroline County, Virginia.

18. Defendant, Valli Davis, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Caroline County, Virginia.

19. Defendant, James Davis, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Caroline County, Virginia.

20. Defendant, Z.H., a minor, is currently 14 years old. Z.H. is represented by his Parents and Next Friends, Kasha Haywood and Jesse Haywood. At all times relevant to this

cause of action, Z.H. and his parents resided in Stafford County, Virginia. Defendants Kasha Haywood and Jesse Haywood are adults residing in Stafford County, Virginia.

21. Defendant, J.J., a minor, is currently 16 years old. J.J. is represented by his Father and Next Friend, Ralph Johnson, Jr. At all times relevant to this cause of action, J.J. and his father resided in Stafford County, Virginia. Defendant Ralph Johnson, Jr. is an adult residing in Stafford County, Virginia.

22. Defendant, Camden Middlekauff, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Stafford County, Virginia.

23. Defendant, Catherine Middlekauff, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Stafford County, Virginia.

24. Defendant, L.N., a minor, is currently 16 years old. L.N. is represented by his parents and Next Friends, Leslie Cockrell-Nalls and Billy Nalls. At all times relevant to this cause of action, L.N. and his parents resided in Stafford County, Virginia. Defendants Leslie Cockrell-Nalls and Billy Nalls are adults residing in Stafford County, Virginia.

25. Defendant, Karah Nalls, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in Stafford County, Virginia. Defendants Leslie Cockrell-Nalls and Billy Nalls are the parents of Karah Nalls.

26. Defendant, L.O., a minor, is currently 13 years old. L.O. is represented by her Parents and Next Friends, Kimberley Overton and Mark Ausley. At all times relevant to this cause of action, L.O. and her parents resided in Stafford County, Virginia. Defendants Kimberley Overton and Mark Ausley are adults residing in Stafford County, Virginia.

27. Defendant, Rita Pavlak, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

28. Defendant, Maria Pavlak, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

29. Defendant, Richard Pavlak, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

30. Defendant, Austin Rodriguez, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

31. Defendant, Jeffrey Roosa, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Stafford County, Virginia.

32. Defendant, Alveena Spencer, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Richmond County, Virginia.

33. Defendant, John Viarella, is a resident of the Commonwealth of Massachusetts, over the age of 18, and currently resides in the Suffolk County, Massachusetts.

34. Defendant, Ava Waggoner, is a resident of the Commonwealth of Virginia, over theage of 18, and currently resides in the City of Fredericksburg, Virginia.

35. Defendant Daphney Waggoner, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

36. Defendant William Waggoner, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

37. Defendant, J. W., a minor, is currently 14 years old. J. W. is represented by his Parents and Next Friends, Lisa Williams and Mario Williams. At all times relevant to this cause of action, J.W. and his parents resided in Stafford County, Virginia. Defendants Lisa Williams and Mario Williams are adults residing in Stafford County, Virginia.

38. Defendant, N.W., a minor, is currently 16 years old. N.W. is represented by his Parents and Next Friends, Lisa Williams and Mario Williams. At all times relevant to this cause of action, N.W. and his parents resided in Stafford County, Virginia.

39. Defendant, Jennifer Gause, is an individual and resident of Triangle, Virginia.

40. Defendant, Kamau Gause, is an individual and resident of Triangle, Virginia.

41. Defendant, C.D., a minor, represented by his Next Friend and mother, Jennifer Gause. At all times relevant to this cause of action, C.D resided in Triangle, Virginia.

42. Defendant, L.G., a minor, represented by her Next Friend and father, Kamau Gause. At all times relevant to this cause of action, L.G. resided in Triangle, Virginia.

43. Defendant, I.G., a minor, represented by his Next Friend and mother, Jennifer Gause. At all times relevant to this cause of action, I.G resided in Triangle, Virginia.

44. Defendant, A.D., a minor, represented by his Next Friend and mother, Jennifer Gause. At all times relevant to this cause of action, A.D. resided in Triangle, Virginia.

45. Defendant Ryland Lovitt is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Stafford, Virginia.

46. Defendant Diann Carreker is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Stafford, Virginia.

47. Plaintiff MMIC is a mutual insurance company organized under the laws of North Carolina with its principal place of business in North Carolina.

## FACTS

48. Four separate lawsuits have been filed against Johnson and PP4AL. The lawsuits are styled: (1) G3 Community Services and Vernon Green, Jr. v. Coventry Health Care of Virginia, Inc., Pediatric Partners for Attention and Learning, Inc., Sharonda L. Avery, Joni J.

Johnson and Maryann Byrne, Civil Action No. CC19-2221 (the "Green Lawsuit"); (2) Gnik, Individually and as Mother and Next Friend of N.A., a Minor, and N.I., a Minor, et al. v. Sharonda L. Avery, et al., Civil Action No. 20001461-00 (the "Gnik Lawsuit"); (3) Jennifer Gause, et al., v. Pediatric Partners for Attention and Learning, Inc., Sharonda L. Avery and Joni J. Johnson, Civil Action No. CL20000594-00 (the "Gause Lawsuit") and Ryland Lovitt and Diann Carreker v. Sharonda L. Avery, et al., Civil Action No. CL20-1867 (the "Lovitt Lawsuit"). Each of these lawsuits was filed in Stafford County Circuit Court.[1]

***The Green Lawsuit***

49. Johnson, Avery, Byrne, PP4AL, Green and G3[2] are parties to the Green Lawsuit brought in the Circuit Court of Stafford County. MMIC is defending Johnson and PP4AL in the Green Lawsuit under a reservation of rights.

50. The Complaint filed in the Green Lawsuit (the "Green Complaint")[3] asserts that in early 2016 Johnson was the owner and founder of PP4AL. See Green Complaint at ¶ 20. Around that time, Green "selected" Johnson in connection with treatment he was seeking for post-traumatic stress disorder ("PTSD"). Id. at ¶¶ 19-20. Johnson referred Green to Avery, whom Johnson identified to Green as a licensed psychologist authorized to practice in Virginia. Id. at ¶ 22. Both Johnson and Avery "claimed" that Avery had "multiple degrees," including doctoral degrees in Philosophy and Psychology, a master's degree in special education, and "several bachelors' degrees." Id. at ¶ 23.

1 Collectively, the Green Lawsuit, Gnik Lawsuit, Gause Lawsuit, and Lovitt Lawsuit are referred to as the "Underlying Lawsuits."

2 Collectively, Green and G3 are referred to as the "Green Plaintiffs."

3 A copy of the Green Complaint is attached as Exhibit A hereto.

51. Thereafter, Avery "provided medical treatment" to Green for his PTSD for nearly a year "under the direction of and as an agent for" Johnson and PP4AL. Id. at ¶ 24. The Green Complaint alleges that Avery's work was not adequately supervised, that she was allowed to work with Green alone with no peer or supervisory review of her treatment regimen, that she was unlicensed, and that she prescribed medications to Green. Id. at ¶¶ 25-26. Another agent of PP4AL, Maryann Byrne, "signed off" on the prescriptions. Id. at ¶ 26. Avery received invoices from and made payments to PP4AL for his medical treatment provided by Avery. Id. at ¶ 27. PP4AL billed Green's health insurer, Aetna, for this same treatment, which bills were signed off on by Johnson. Aetna paid PP4AL, which was an "in-network provider," "contracted rates" for the invoices, "thereby representing and approving" that Avery was a licensed treater. Id. at ¶¶ 30, 33.

52. According to the Green Complaint, in reliance on Johnson's recommendation and Avery's "continued" representation that she was a licensed psychologist, Green discussed "employment with Ms. Avery to work as" G3's Executive Director. Id. at ¶ 37.

53. "With a view to hiring her," Green stopped treating with Avery in early 2017. Id. at ¶ 38. In violation of her duties, Avery allegedly failed to provide Green with a qualified referral for continued treatment. Id. at ¶ 39. Johnson, who "on information and belief" was aware that Green had stopped treating with Avery, also breached her duty to provide Green with a referral for continued treatment. Id. at ¶ 40.

54. Green thereafter hired Avery as G3's Executive Director on June 1, 2017. Her duties included overseeing G3's "day-to-day operations," developing business, and "evangelizing" G3 programs to the Stafford County community and schools. Id. at ¶ 42. As an "extension of her duties" Avery was issued a debit card for G3's bank accounts. Id. at ¶ 43.

55. In early 2018 Green and his staff noticed unaccounted expenditures "attributable to the actions of" Avery, who "failed and refused" to provide documentation for the expenditures. Id. at ¶¶ 48-49. Thereafter, Avery failed to provide requested documentation of her degree in and license to practice psychology. Id. at ¶¶ 50-51. Avery was terminated March 16, 2018. Id. at ¶ 52.

56. According to the Green Complaint, after terminating Avery, G3 discovered numerous improper expenditures "attributable to" Avery and "multiple misappropriations," totaling $13,142.45 of corporate funds for personal purchases. Id. at ¶¶ 54-55. G3 reported Avery to the Stafford County Sheriff's office and Avery was charged with multiple crimes, including embezzlement, obtaining money by false pretenses and credit card fraud. Id. at ¶ 56. An investigation by the Sheriff's office determined that Avery had never been licensed or otherwise authorized to practice as a psychologist or therapist in any jurisdiction. Id. at ¶ 57. Green and G3 came to learn that Avery possessed no college degrees. Id. at ¶ 58.

57. Johnson and PP4AL failed to conduct due diligence regarding Avery's licensure. Instead, PP4AL and Green's health care insurer "appeared to or did represent" that Avery was licensed and qualified. Id. at ¶ 59.

58. According to the Green Complaint, G3 and Green have suffered severe harm as a direct result of Avery's misrepresentations and actions (and, as to Green, the actions and representations of PP4AL, Aetna and Byrne), including pecuniary losses, loss of business opportunities, damage to reputation, embarrassment, humiliation, inconvenience, costs and attorney's fees. Green has also suffered "a sense of betrayal, mental anguish [and] profound injustice." Id. at ¶¶ 60-61.

59. The Green Complaint asserts four causes of action against PP4AL and Johnson: Gross Negligence (Count II), Negligent Hiring (Count V), Constructive Fraud (Count VI) and Conspiracy (Count VIII).

60. As to Count II, the Green Complaint alleges that PP4AL and Johnson breached duties as Avery's employers to ensure that Avery was properly certified as a health care provider. Id. at ¶¶ 76-79. Count II seeks not less than $500,000 for compensatory damages and $250,000 for punitive damages for Green only.

61. The Green Complaint alleges under Count V (Negligent Hiring) that PP4AL hired Avery as a psychologist, id. at ¶ 103, and that Johnson, on behalf of PP4AL, was the "decisionmaker responsible for hiring" Avery, id. at ¶ 104, and that PP4AL "knew or should have known" that Avery was not a licensed psychologist and had a duty to investigate her credentials. Id. at ¶¶ 105-06. Avery's actions were "condoned" by PP4AL, Byrne and Johnson, id. at ¶ 110, and caused "severe harm" to Green. Id. at ¶ 108-10. Count V seeks compensatory damages of not less than $500,000 and punitive damages of $350,000 for Green only.

62. Count VI (Constructive Fraud) alleges that PP4AL, Byrne and Johnson "made false material statements of fact," either negligently or innocently, regarding Avery's credentials and licensure including "advertising" her "within the practice of PP4AL" as a licensed psychologist with multiple advanced degrees, for the purpose of enriching themselves and harming Green, and with the intent to mislead Green. Id. at ¶¶ 114-19. Such false statements induced Green to begin and continue treatment with Avery; and Green was damaged by his reliance on such statements in that he paid for "unlicensed, unprofessional services as well as not receiving proper and necessary treatment for his medical condition." Id. at ¶¶ 120-21. Count V seeks compensatory damages of not less than $500,000 and punitive damages of $350,000.

63. Count VIII (Common Law Conspiracy) alleges that in order to enrich themselves, all defendants "combined and undertook a concerted effort to deprive Mr. Green" of qualified and competent health care services. Id. at ¶ 138. In furtherance of the conspiracy, the defendants "committed tortious conduct including negligence, fraud and constructive fraud." Id. at ¶ 140. As a direct and proximate result of the alleged conspiracy, Green suffered damages including "payments for premiums and medical bills" and was further "deprived of competent healthcare services." Id. at ¶¶ 141-42. Count VIII seeks compensatory damages of not less than $750,000 and punitive damages of $350,000.

***The Gnik Lawsuit and the Lovitt Lawsuit***

64. On May 11, 2020, the Gnik Lawsuit was filed in Stafford County Circuit Court.

65. On June 10, 2020, the Lovitt Lawsuit was filed in Stafford County Circuit Court.

66. The Gnik Lawsuit and the Lovitt Lawsuit were brought by the same plaintiff's attorney and, essentially, assert the same factual allegations.

67. The causes of action in the Gnik Lawsuit and the Lovitt Lawsuit are identical.

68. According to the Complaint filed in the Gnik Lawsuit (the "Gnik Complaint")[4] and the Complaint filed in the Lovitt Lawsuit (the "Lovitt Complaint")[5], Johnson was the owner and an employee of PP4AL. See Gnik Complaint ¶ 44; Lovitt Complaint ¶ 17.

69. The Gnik Complaint and Lovitt Complaint allege that between 2012 and 2019, 33 plaintiffs[6] were defrauded by Johnson and PP4AL. See Gnik Complaint ¶ 9; Lovitt Complaint ¶ 11.

---

[4] A copy of the Gnik Complaint is attached as Exhibit B hereto.

[5] A copy of the Lovitt Complaint is attached as Exhibit C hereto.

[6] The Plaintiffs are: (1) N.L., a minor, suing by his Mother and Next Friend, Cathy Gnik; (2) Tristan Andrew-Major; (3) Courtney Andrew-Knight; (4) A.B., a minor, suing by her Mother and Next Friend, Kathleen Bell; (5) M.B., a minor, suing by her Parents and Next Friends, Nicki

70. In 2012, PP4AL and Johnson hired Avery. See Gnik Complaint ¶ 60; Lovitt Complaint ¶ 26.

71. PP4AL, Johnson, and Avery "led patients and the larger general public to believe that Ms. Avery was a licensed psychologist." See Gnik Complaint ¶ 61; Lovitt Complaint ¶ 27.

72. According to the Gnik Complaint and Lovitt Complaint, PP4AL and Johnson claimed that "Ms. Avery had a Doctorate of Philosophy (Ph.D.) in General Psychology from Grand Canyon University, a Doctorate in Psychology (PsyD) in Clinical Psychology from Virginia Commonwealth University, a Masters of Education in the field of Special Education, and Cross-Categorical from Grand Canyon University." Id.

73. The Gnik Plaintiffs and Lovitt Plaintiffs were led to believe that Avery "was qualified to render treatment, make diagnoses, and prescribe medications that were subsequently signed off on by Dr. Johnson and other physician employees of PP4AL." See Gnik Complaint ¶ 62; Lovitt Complaint ¶ 28.

---

and Daniel Burgess; (6) S.C., a minor, suing by his Mother and Next Friend, Brianna Cannavo; (7) A.C., a minor, suing by his Parents and Next Friends, Kimberley and Pedro Correa; (8) E.C., a minor, suing by his Parents and Next Friends, Meagan Crawford and Carter Crawford; (9) Sierra Davis; (10) Valli Davis; (11) James Davis; (12) Z.H., a minor, suing by his Parents and Next Friends, Meagan Kasha Haywood and Jesse Haywood; (13) J.J. , a minor, suing by his Father and Next Friend, Ralph Johnson, Jr.; (14) Camden Middlekauff; (15) Catherine Middlekauff; (16) L.N., a minor, suing by his Parents and Next Friends, Lesli Cockrell-Nalls and Billy Nalls; (17) Karah Nalls; (18) L.O., a minor, suing by her Parents and Next Friends, Kimberley Overton and Mark Ausley; (19) Rita Pavlak; (20) Maria Pavlak; (21) Richard Pavlak; (22) Austin Rodriguez; (23) Jeffrey Roosa; (24) Alveena Spencer; (25) John Viarella; (26) Ava Waggoner; (27) Daphney Waggoner; (28) William Waggoner; (29) J.W., a minor, suing by his Parents and Next Friends, Lisa Williams and Mario Williams; (30) N.W., a minor, suing by his Parents and Next Friends, Lisa Williams and Mario Williams; (31) N.A., a minor, suing by his Mother and Next Friend, Cathy Gnik (collectively, "Gnik Plaintiffs"). Ryland Lovitt and Diann Carreker are referred to, collectively, as the "Lovitt Plaintiffs."

74. However, Avery did not have any of the degrees that she, Johnson, and PP4AL advertised—she did not even have a college degree. See Gnik Complaint ¶ 63; Lovitt Complaint ¶ 29.

75. The Gnik Complaint and Lovitt Complaint allege that Avery saw patients as a "psychologist" and "used her fake credentials to defraud families…" See Gnik Complaint ¶ 64; Lovitt Complaint ¶ 30.

76. Around 2017, Avery was fired, but Johnson and PP4AL never notified the Gnik Plaintiffs and Lovitt Plaintiffs that Avery was not licensed and was treating them as an unlicensed and unqualified layperson, nor did Johnson warn the Gnik Plaintiffs and Lovitt Plaintiffs that their diagnoses may have been erroneous or that the medications prescribed could have been unnecessary. See Gnik Complaint ¶ 65-67; Lovitt Complaint ¶ 31-33.

77. Avery was arrested on May 6, 2019 and entered a guilty plea to numerous criminal charges. See Gnik Complaint ¶ 71; Lovitt Complaint ¶ 37.

78. The Gnik Complaint and Lovitt Complaint allege that "at no point" "did PP4AL or Dr. Johnson make any effort to confirm the credentials of Ms. Avery." See Gnik Complaint ¶ 76; Lovitt Complaint ¶ 42.

79. The Gnik Plaintiffs and Lovitt Plaintiffs allege that they "suffered severe harm due to the misrepresentations and negligence of Ms. Avery, Dr. Johnson, and PP4AL." See Gnik Complaint ¶ 77; Lovitt Complaint ¶ 43.

80. In April of 2016, Cathy Gnik brought her children, N.A. and N.L., "to PP4AL to be assessed by" Johnson and Avery. See Gnik Complaint ¶ 78. In September or October of 2016, Courtney Andrew-Knight "brought her then-minor son, Plaintiff Tristen Andrew-Major ("Tristen"), to PP4AL to be assessed by Dr. Johnson and Ms. Avery..." Id. at ¶102. In January

of 2014, “Plaintiff Kathleen Bell ("Ms. Bell") brought her minor daughter, Plaintiff A.B., to PP4AL to be assessed by Dr. Johnson and Ms. Avery...” Id. at ¶ 117. In or around March of 2013, Nicki Burgess and Daniel Burgess “brought their minor daughter, Plaintiff M.B., to PP4AL to be assessed by Dr. Johnson and Ms. Avery...” Id. at ¶ 131. In approximately February of 2017, Brianna Cannavo “brought her minor son, Plaintiff S.C., to PP4AL to be assessed by Dr. Johnsen and Ms. Avery...” Id. at ¶ 156. In or around April of 2013, Kimberley and Pedro Correa “brought their minor son, Plaintiff A.C., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at ¶ 177. In or about 2014, Megan and Carter Crawford, “brought their minor son, Plaintiff E.C., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at ¶ 197. In or about 2014, Valli and James Davis “brought their then-minor daughter, Plaintiff Sierra Davis ("Sierra"), to PP4AL to be assessed by Dr. Jolmson and Ms. Avery...” Id. at ¶ 210. In or about 2015, Kasha and Jesse Haywood “brought their minor son, Plaintiff Z.H., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at ¶ 227. In or around 2015, Ralph Johnson “brought his minor son, Plaintif J.J., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at 240. In or around March of 2014, Catherine Middlekauff “brought her then-minor son, Plaintiff Camden Middlekauff ("Camden"), to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at ¶ 261. In or around March of 2016, Leslie Cockrell-Nalls and Billy Nalls “brought their children, Plaintiffs Karah Nalls ("Karah") and L.N., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at ¶ 300. In or around September of 2016, Kimerley Overton and Mark Ausely “brought their minor daughter, Plaintiffs L.O., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…” Id. at ¶ 327. In or around October of 2013, Maria and Richard Pavlak “brought their then-minor daughter, Plaintiff Rita Pavlak ("Rita"), to PP4AL to

be assessed by Dr. Johnson and Ms. Avery…" Id. at ¶ 358. In or around November of 2015, Austin Rodriguez, "who was then 14 years old, was brought to PP4AL by his mother, Christine Rodriguez, to be assessed by Dr. Johnson and Ms. Avery…" Id. at ¶ 374. In July of 2016, Jeffrey Roosa "learned from his ex-wife that his two minor children, non-parties B.R. and C.R., would start going to PP4AL to be assessed and treated." Id. at ¶ 397. In or about March of 2015, "Diann Carreker brought her adult daughter, Plaintiff Alveena Spencer ("Alveena"), to PP4AL to be assessed by Dr. Johnson and Ms. Avery…" Id. at ¶ 426. In approximately 2013, John Viarella, "who was then approximately 14 years old, was brought to PP4AL by his mother, Kimberly Viarella, to be assessed by Dr. Johnson and Ms. Avery…" Id. at ¶ 441. On or around July of 2014, Dapheny and William Waggoner "brought their then-minor daughter, Plaintiff Ava Waggoner ("Ava"), to PP4AL to be assessed by Dr. Johnson and Ms. Avery…" Id. at ¶ 455. In or around February of 2013, Lisa and Mario Williams "brought their minor son, Plaintiff N.W., to PP4AL to be assessed by Dr. Johnson and Ms. Avery…" Id. at ¶ 468. In or about 2013 or 2014, Dian Carreker "brought her then-minor son, Plaintiff Ryland Lovitt ("Ryland"), to PP4AL to be assessed by Dr. Johnson and Ms. Avery…, where "Ryland was 'assessed' by Ms. Avery" on "approximately two occasions." Lovitt Complaint ¶¶ 44; 46.

81. Avery, Johnson, and/or Mary Ann Byrne assessed the Gnik Plaintiffs and Lovitt Plaintiffs and provided various "diagnoses," sometimes providing a signed report that described the diagnosis. See Gnik Complaint at ¶¶ 81; 104; 119; 134; 158; 178; 199; 212; 229; 242; 263; 303; 329; 361; 377; 428; 442; 457; 470-471; Lovitt Complaint ¶ 47.

82. Following these assessments, the Gnik Plaintiffs and Lovitt Plaintiffs continued their psychological care and treatments with PP4AL for varying lengths of time. See Gnik

Complaint at ¶¶ 83; 105; 120; 137; 159; 179; 200; 217; 230; 243; 264; 307; 330; 363; 387; 403; 431; 445; 459; 474; Lovitt Complaint ¶ 48; 137.

83. The Gnik Plaintiffs and Lovitt Plaintiffs were invoiced by and made payments to PP4AL for services provided by Avery. See Gnik Complaint at ¶¶ 86; 109; 122; 140; 161; 181; 202; 219; 232; 252; 268; 310; 333; 366; 389; 410; 433; 447; 460; 476; Lovitt Complaint ¶ 50.

84. The Gnik Plaintiffs and Lovitt Plaintiffs only trusted PP4AL with their care and treatment because PP4AL, Avery, and Johnson misrepresented Avery's education, qualifications, and credentials. See Gnik Complaint at ¶¶ 87; 110; 124; 141; 162; 182; 203; 220; 233; 253; 269; 311; 334; 367; 390; 411; 434; 448; 461; 477; Lovitt Complaint ¶ 51.

85. The Gnik Plaintiffs and Lovitt Plaintiffs allege that had they known that PP4AL and Johnson failed to make an inquiry into Avery's education, training, or qualifications, they never would have been seen by the providers at PP4AL. See Gnik Complaint at ¶¶ 88; 111; 125; 142; 163; 183; 204; 221; 234; 254; 270; 312; 335; 368; 391; 412; 435; 449; 462; 478; Lovitt Complaint ¶ 52.

86. Had the Gnik Plaintiffs and Lovitt Plaintiffs known Avery lacked the credentials she advertised, the Gnik Plaintiffs and Lovitt Plaintiffs never would have allowed PP4AL, Johnson, or Avery to provide them with treatment. See Gnik Complaint at ¶¶ 89; 112; 126; 143; 164; 184; 205; 222; 235; 255; 271; 313; 336; 369; 392; 413; 436; 450; 463; 479; Lovitt Complaint ¶ 53.

87. If the Gnik Plaintiffs and Lovitt Plaintiffs knew that Avery's educational and professional qualifications were being misrepresented by PP4AL and Johnson, they never would have allowed Avery to provide them with treatment. See Gnik Complaint at ¶¶ 90; 113; 127;

144; 165; 185; 206; 223; 236; 256; 272; 314; 337; 370; 393; 414; 437; 451; 464; 480; Lovitt Complaint ¶ 54.

88. The Gnik Complaint asserts seven causes of action against Johnson and PP4AL: Breach of Duty Arising From Special Relationship (Count I), Negligent Hiring, Retention, and Supervision (Count II), Civil Conspiracy (Count III), Punitive Damages (Count IV), Parental Claim for Medical and Related Expenses and Loss of Services (also designated Count IV)[7], Negligence, Gross Negligence, and Recklessness (Count V), and Constructive Fraud (Count VI). The Lovitt Complaint asserts the same causes of action as the Gnik Complaint, but corrects the mistake in the Gnik Complaint that included Count IV twice: Breach of Duty Arising From Special Relationship (Count I), Negligent Hiring, Retention, and Supervision (Count II), Civil Conspiracy (Count III), Punitive Damages (Count IV), Parental Claim for Medical and Related Expenses and Loss of Services (Count V), Negligence, Gross Negligence, and Recklessness (Count VI), and Constructive Fraud (Count VII).

89. As to Count I, the Gnik Complaint and Lovitt Complaint allege that PP4AL, by offering medical and psychological services to the Gnik Plaintiffs and Lovitt Plaintiffs, created a "special relationship" and, therefore, owed them a duty to protect them from reasonably foreseeable dangers. See Gnik Complaint ¶ 485; Lovitt Complaint ¶ 67. The Gnik Plaintiffs and Lovitt Plaintiffs allege that a special relationship existed between them and PP4AL and Johnson, given that PP4AL and Johnson were supposed to be caring for the Gnik Plaintiffs and Lovitt Plaintiffs, the vast majority of whom were pediatric patients. See Gnik Complaint ¶ 486; Lovitt Complaint ¶ 68. The Gnik Plaintiffs and Lovitt Plaintiffs allege that PP4AL and Johnson

[7] In the Gnik Complaint, plaintiffs mislabeled this Count and mistakenly included "Count IV" twice.

breached this special relationship by failing to investigate Avery's credentials and warn them that Avery did not possess the credentials she claimed. See Gnik Complaint ¶ 489; Lovitt Complaint ¶ 70.

90. The Gnik Complaint and Lovitt Complaint allege under Count II (Negligent Hiring) that PP4AL and Johnson failed to maintain sufficient procedures to investigate the backgrounds of people they hired. See Gnik Complaint ¶ 499; Lovitt Complaint ¶ 81. The Gnik Plaintiffs and Lovitt Plaintiffs allege that in hiring Avery, Johnson and PP4AL "placed an unfit person in an employment situation involving an unreasonable risk of harm to Plaintiffs." See Gnik Complaint ¶ 500; Lovitt Complaint ¶ 82. Moreover, the Gnik Plaintiffs and Lovitt Plaintiffs allege that if Johnson and PP4AL "had bothered to investigate" Avery's background, they would have discovered that her credentials were false. See Gnik Complaint ¶ 501; Lovitt Complaint ¶ 83. The Gnik Plaintiffs and Lovitt Plaintiffs also allege that PP4AL and Johnson failed to properly investigate various complaints about Avery. See Gnik Complaint ¶ 502; Lovitt Complaint ¶ 84. Instead, PP4AL and Johnson continued to assure the Gnik Plaintiffs and Lovitt Plaintiffs that Avery "was appropriately credentialed and qualified to perform the care and treatment she was providing on behalf of Defendants PP4AL and Dr. Johnson." See Gnik Complaint ¶ 503; Lovitt Complaint ¶ 85. Likewise, Johnson and PP4AL negligently supervised Avery by failing to monitor her interactions with patients. See Gnik Complaint ¶ 506; Lovitt Complaint ¶ 88. By failing to monitor Avery and perform the appropriate investigations, PP4AL and Johnson placed the Gnik Plaintiffs and Lovitt Plaintiffs in "serious peril" and caused them to "suffer life-long damage." See Gnik Complaint ¶ 505; Lovitt Complaint ¶ 87.

91. As to Count III (Civil Conspiracy), the Gnik Plaintiffs and Lovitt Plaintiffs allege that Johnson owned PP4AL. See Gnik Complaint ¶ 515; Lovitt Complaint ¶ 97. Avery used her

position at PP4AL to represent to the Gnik Plaintiffs and Lovitt Plaintiffs that she was a licensed psychologist. See Gnik Complaint ¶ 516; Lovitt Complaint ¶ 98. Based on this misrepresentation, the Gnik Plaintiffs and Lovitt Plaintiffs and their parents, trusted Avery, Johnson, and PP4AL to provide them with proper medical care. See Gnik Complaint ¶ 517; Lovitt Complaint ¶ 99. When patients raised concerns about Avery's competency, Johnson and PP4AL made "false statements that Ms. Avery was a licensed psychologist." See Gnik Complaint ¶ 518; Lovitt Complaint ¶ 100. The Gnik Plaintiffs and Lovitt Plaintiffs allege that Johnson, PP4AL, and Avery "conspired to actively suppress anyone…from seeking to disclose information that would lead to the discovery of the fact that Ms. Avery was falsely representing to patients and the general public that she was a licensed psychologist." See Gnik Complaint ¶ 519; Lovitt Complaint ¶ 101. As a result of this conspiracy, the Gnik Plaintiffs and Lovitt Plaintiffs were defrauded and harmed by Avery. See Gnik Complaint ¶ 520; Lovitt Complaint ¶ 102.

92. The Gnik Complaint and Lovitt Complaint allege under Count IV (Punitive Damages) that Johnson and PP4AL "acted with a reckless disregard for the health and safety of their patients" by failing to verify Avery's educational and professional qualifications; hiring/retaining Avery when PP4AL and Johnson knew she was unqualified/incompetent; and failing to notify the Gnik and Lovitt Plaintiffs that Avery did not possess the credentials she claimed. See Gnik Complaint ¶ 523; Lovitt Complaint ¶ 105. The Gnik Plaintiffs and Lovitt Plaintiffs maintain that Johnson and PP4AL wantonly and willfully disregarded their rights and that punitive damages should be awarded as a result. See Gnik Complaint ¶ 525; Lovitt Complaint ¶ 107.

93. As to Count IV (Parental Claim for Medical and Related Expenses and Loss of Services)[8], the Gnik Plaintiffs and Lovitt Plaintiffs allege that Johnson and PP4AL are liable for the expenses that they incurred in the past and for the expenses they will incur in the future for attempting to mitigate or cure the damage resulting from the treatment performed by Avery. See Gnik Complaint ¶¶ 528-542; Lovitt Complaint ¶ 110.

94. Count V of the Gnik Complaint and Count VI of the Lovitt Complaint (Negligence, Gross Negligence, and Recklessness) allege that Johnson and PP4AL "knew that they had an ongoing duty to perform thorough background checks; confirm the educational and professional qualifications of job applicants and employees; monitor the job performance of its employees; and look for and report signs that their patients were being targeted and/or abused emotionally, sexually, physically, financially, and/or by other fraudulent means by PP4AL's employees, servants, and/or agents." See Gnik Complaint ¶ 545; Lovitt Complaint ¶ 113. The Gnik Plaintiffs and Lovitt Plaintiffs maintain that Johnson and PP4AL knew that their failure to create, implement, and enforce policies to ensure the proper vetting of their employees would increase the likelihood that a patient would be victimized by an employee. See Gnik Complaint ¶ 547; Lovitt Complaint ¶ 115. The Gnik Plaintiffs and Lovitt Plaintiffs allege that Johnson and PP4AL owed a duty to the Gnik Plaintiffs and Lovitt Plaintiffs to use ordinary care and skill to avoid causing injury. See Gnik Complaint ¶ 548; Lovitt Complaint ¶ 116. The Gnik Plaintiffs and Lovitt Plaintiffs allege that Johnson and PP4AL breached this duty by failing to ensure that Avery had the appropriate education, training, certification, and/or licenses. See Gnik Complaint ¶¶ 549-552.; Lovitt Complaint ¶¶ 116-119.

---

[8] Count V in the Lovitt Complaint.

95. The last cause of action against Johnson and PP4AL is for Constructive Fraud and is labeled as Count VI in the Gnik Complaint and Count VII in the Lovitt Complaint. The Gnik Plaintiffs and Lovitt Plaintiffs allege that PP4AL and Johnson made, either innocently or negligently, false statements regarding Avery's degrees, licenses, and experience as a psychologist. See Gnik Complaint ¶ 555; Lovitt Complaint ¶ 123. The Gnik Plaintiffs and Lovitt Plaintiffs allege that they relied on these misrepresentations and that they were damaged by their reliance on these misrepresentations. See Gnik Complaint ¶¶ 561-562; Lovitt Complaint ¶¶ 129-130.

***The Gause Lawsuit***

96. According to the Complaint[9] ("Gause Complaint") in the Gause Lawsuit, Johnson was the owner of PP4AL. See Gause Complaint ¶¶ 11-12.

97. In late 2015, Jennifer Gause ("Gause") took her family to PP4AL where multiple members of her family underwent psychological testing, including her husband ("Mr. Gause"), her biological children C.D., I.G., and A.G., and her stepchild, L.D. (collectively, "Gause Plaintiffs"). Id. at ¶13.

98. Gause and her family regularly saw doctors at PP4AL who conducted testing, evaluations, diagnoses, and provided treatment and therapy to the family as patients.

99. Avery was their psychologist, and they saw her frequently. Id. at ¶ 14.

100. Avery diagnosed Mr. Gause with autism. Id. at ¶ 15.

101. The Gause Complaint alleges that Avery was also involved in diagnosing each of the children. She diagnosed C.D. with autism and ADHD; L.D. with autism, ADHD, central

[9] A copy of the Gause Complaint is attached as Exhibit D hereto. Collectively, the Green Complaint, Gnik Complaint, Lovitt Complaint, and Gause Complaint are referred to as the "Underlying Complaints."

processing disorder, dyslexia, and visual spatial/perceptual deficit and cognitive impairment; and I.G. and A.G. with ADHD. Id. at ¶ 16. Avery suggested therapeutic treatment for the entire family, and L.D. and I.G. attended multiple therapy sessions at PP4AL with Avery. Mr. Gause also attended therapy sessions with Avery at least once a month. Based on the therapy and diagnoses of the family, Avery suggested that they each take prescription medication. Id. at ¶¶ 17-18.

102. However, according to the Gause Complaint, in Avery's role as a psychologist she did not have authority to prescribe medication to her patients, and did not do so. Instead, she recommended medication requirements to her patients and Johnson would prescribe the suggested medication. Id. at ¶ 19. In fact, Johnson prescribed each of the medications recommended for the Gause family by Avery. Id. at ¶ 20. Gause noticed that some of the children's behavioral issues increased as a result of the medications prescribed. Id. at ¶ 21.

103. The testing and treatment that the family underwent was expensive, and Gause was required to pay the costs of that treatment almost entirely out of pocket. In early 2017, PP4AL and Avery advised Gause to apply for a Grant from the Northern Virginia Autism Society to assist with the expense of treatment. Id. at ¶¶ 22-23.

104. According to the Gause Complaint, the first half of the Grant was disbursed directly to PP4AL, while disbursement of the second half was conditioned on submission of a receipt by PP4AL indicating that the first half of the Grant was used for testing procedures associated with Gause's application. Despite repeated requests by Gause to see the receipt, none was ever provided by PP4AL, and it is unclear if the Grant money was ever used for the Gause family's testing expenses. Id. at ¶¶ 24-26. However, Gause never received a credit to her

account for the second half of the Grant, and had to cover subsequent expenses herself. Id. at ¶ 26.

105. Between March and September 2018, PP4AL billed Gause for services as if they were outside of her insurance network even though her insurance company verified that the services rendered were covered as in-network services. When Gause brought this to PP4AL's attention it was blamed on administrative staff and the issues were unresolved for months, with only three of seven incidents where she was billed incorrectly for out-of-network services being resolved. Id. at ¶¶ 27-29. In addition, PP4AL incorrectly charged Plaintiff for co-pays even after she had reached her insurance deductible but no refunds were ever received. Id. at ¶¶ 30-31.

106. According to the Gause Complaint, PP4AL employed and held Avery out as a licensed psychologist when in fact she was not. Further, Avery was unqualified to treat patients, never completed her undergraduate degree and never completed a Masters degree in psychology. Id. at ¶ 32.

107. The Gause family first learned that Avery had been practicing psychology without a license after a November 30, 2018 visit by a police officer at their home wherein he inquired about their experience with Avery. Id. at ¶ 33.

108. Shortly after this, in January 2019, PP4AL closed its doors. Id. at ¶ 34.

109. According to the Gause Complaint, in May 2019 Avery was arrested and charged with 13 felonies, including practicing psychology without a license and false pretenses. Id. at ¶ 34.

110. Gause and her family suffered emotional harm due to the knowledge that they were likely misdiagnosed and improperly treated by an unlicensed and unqualified individual purporting to be a medical doctor. They also suffered considerable financial loss and spent over

$10,000 on testing and treatment at PP4AL. Id. at ¶¶ 35-36. Each family member will be required to undergo additional testing and retesting in order to be properly diagnosed, which will be extremely costly, time-consuming and emotionally draining. Id. at ¶37.

111. The Gause Complaint asserts seven causes of action against Johnson, PP4AL, and Avery, as follows: Fraud against Avery (Count I); Negligence against Avery (Count II); Vicarious Liability against PP4AL (Count III); Negligent Hiring and Retention against PP4AL and Johnson (Count IV); Virginia Consumer Protection Act against all Defendants (Count V); Fraud in the Inducement against all Defendants (Count VI); and Breach of Contract against All defendants (Count VII). All Counts other than Counts V and VII (Breach of Contract) seek $10,500 in compensatory damages, $40,000 in future medical expenses and $2 million in punitive damages.

112. As to Count I, the Gause Complaint alleges that Avery intentionally and knowingly made a false representation of material fact with the intent to mislead the Gause family when she held herself out as a licensed psychologist. As a result of the fraudulent misrepresentations, Gause and her family have suffered emotional damages and financial damages. The Gause Complaint alleges that Avery's holding herself out as a licensed medical practitioner knowingly without a license or any training in any medical field constituted a willful, wanton and conscious disregard for the safety and rights of others, and that Avery's actions were taken with a reckless indifference to the consequences which were likely to lead to the injury of her patients. Id. at ¶¶ 39-44. All Counts other than Counts V and VII repeat the allegations concerning willful, wanton and conscious disregard as well as reckless indifference to the consequences on the part of Avery.

113. As to Count II, the Gause Complaint alleges that Avery, having held herself out as a psychologist, had a special duty of care to act in their best interest and not to act to their detriment. She breached that duty when she tested, diagnosed and treated the Gause Plaintiffs without a medical license or adequate training in psychology, and when she suggested that the Gause Plaintiffs take certain medications ultimately prescribed by Johnson. Id. at ¶¶ 47-49.

114. In Count III, the Gause Plaintiffs allege that Avery was acting within the scope of her employment at PP4AL when she pretended to be a licensed psychologist and subsequently tested, diagnosed and treated members of Gause's family. As a result, PP4AL is alleged to be vicariously liable for all damages sustained as a result of Avery's conduct. Id. at ¶¶ 54-55 and 57.

115. In Count IV, the Gause Plaintiffs allege that PP4AL and Johnson knew or should have known that Avery was not a licensed psychologist, and hired Avery without checking her background, credentials, experience, licensing and/or education history. Id. at ¶¶ 61-62. Had they checked her credentials and background they would have known that she was not a licensed psychologist and would also have learned that she had not completed an undergraduate program or a Masters program in psychology. Id. at ¶ 63. The negligent hiring and subsequent retention of a psychologist employee who is not a licensed medical practitioner and does not have training in any medical field is willful and wanton conduct on the part ofPP4AL and Johnson, and if nothing else was done with a reckless indifference to the consequences.

116. Count V alleges that the Virginia Consumer Protection Act applies to the transactions for professional services between Plaintiffs and the Defendants. Johnson and PP4AL held Avery out as a licensed psychologist and such representations and assurances constituted misrepresentations of a material fact and a violation of the Consumer Protection Act.

117. According to Count VI, the Gause Plaintiffs entered into an agreement with PP4AL for services to include psychological testing, diagnoses and treatment of the Gause Plaintiffs. Prior to entering into that agreement, PP4AL, Johnson and Avery held Avery out as a licensed psychologist, which she was not. These representations were made by defendants to induce the Plaintiffs to enter into the agreement for services.

118. Under Count VII, the Gause Plaintiffs allege that the agreement is a legally binding contract that required specific performance of all terms, including by PP4AL, Johnson and Avery. The failure to provide medical services rendered by a licensed medical professional constituted a breach of the terms of the agreement. Further, the wrongful billing of Gause for co-pays she did not owe, as well as for out of network fees, was a breach of the terms of the agreement. Finally, the failure to provide Gause with information regarding the Grant and its disbursement for the expenses of testing and treatment was also a breach of the contract. Id. at ¶¶ 92-97.

***Facts Regarding Avery Known to Johnson as of the Signing of 2017 Policy Renewal Applications for PP4AL and Johnson***

119. In 2012, Johnson founded PP4AL as a multidisciplinary clinic offering comprehensive medical, behavioral health, and cognitive/educational services to children.

120. In November 2012, Johnson retained Avery on behalf of PP4AL on a part-time basis as an in-house, educational advocate. In May 2013, Avery joined PP4AL on a full-time basis. She was at that time responsible for educational advocacy, tutoring and other educational functions.

121. Commencing July 2014, PP4AL retained Avery as a fulltime health service provider with the title of Director of Cognition and Instruction. In that position, Avery

performed services as a psychologist, including administering testing to patients and engaging in counseling and therapy services.

122. Prior to Avery's assumption of the position of Director of Cognition and Instruction, Johnson requested that Avery provide confirmation of her educational degrees and proof of appropriate licensure. Avery never provided Johnson with proof of such licensure. Instead, Avery advised Johnson that because of Avery's autism, Avery was exempted from the standard Board of Psychology licensing requirements and instead had been granted a three-year provisional license to practice as a psychologist in Virginia.

123. Avery provided Johnson with copies of what purported to be diplomas from Grand Canyon University for a PhD in general psychology and from Virginia Commonwealth University for a doctorate in clinical psychology. Avery did not provide documentation of other degrees she claimed to hold. Avery never provided Johnson with any documentation of any "provisional license" to practice as a psychologist in Virginia.

124. Prior to Avery's assumption of the position of Director of Cognition and Instruction in July 2014, Johnson knew that in the Spring of 2014, the Spotsylvania County School Division had complained to the Virginia Department of Health Professions ("DHP") DHP that Avery was engaged in the unlicensed practice of psychology, and that Avery had thereafter advised Johnson that the matter had been closed as undetermined, subject to being reopened if additional complaints were received.

125. In January 2017 Johnson asked Avery about the status of her licensure to practice psychology in Virginia. Avery advised Johnson that Avery did not believe she would be able to obtain permanent licensure, and did not respond to Avery's question as to why Avery believed so.

126. Johnson urged Avery to seek licensure in the District of Columbia; but Avery advised Johnson that Avery did not think she could obtain permanent licensure from the District.

127. Based on information and belief, in or around March 2017, Johnson noticed that Avery became distant and disengaged from the practice and her patients and was also late to appointments and frequently rescheduled them. Avery also became increasingly unreliable and regularly failed to provide dates and times to see patients.

128. By August 2017 PP4AL had removed Avery completely from the schedule for patient treatment. On October 10, 2017, PP4AL terminated Avery's employment with PP4AL.

## POLICY PROVISIONS

129. MMIC issued a Medical Professional Liability Policy, Policy No. PS119567 (the "Policy"), to Johnson for the policy period from September 1, 2017 to September 1, 2018 (the "2017-2018 Policy") and renewed the Policy for the policy period from September 1, 2018 to September 1, 2019 (the "2018-2019 Policy") (collectively, the "Policy").[10] Thereafter, MMIC issued an Extended Reporting Endorsement effective March 2, 2019, extending the period for reporting claims for an unlimited duration in accordance with applicable provisions and endorsements of the Policy. Pursuant to the Extended Reporting Period Schedule of Liability Limits, the Limits of Liability under the Policy were $2,400,000 per Claim and $7,200,000 Annual Aggregate.

130. Relevant portions of the Policy are set forth below.

> **I. PROFESSIONAL LIABILITY COVERAGE**
>
> Under this policy, the Company and the **Insured** agree that the Company will provide the following professional liability coverage:

---

[10] Copies of the 2017-2018 Policy and the 2018-2019 is attached as Exhibits E and F, respectively, hereto. Except where noted otherwise, the policy provisions cited herein are contained in both policies.

**(a)** Coverage A. Individual Professional Liability

The Company will pay, on behalf of the **Insured** listed under Coverage A" of the Declarations Page, all damages that the **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:

**(i)** because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declaration Page, and before the end of the **Policy Period**;

**(ii)** and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting Period.

**(b)** Coverage B. **Medical Practice** Professional Liability

The Company will pay, on behalf of the **Medical Practice** listed under Coverage B of the Declarations Page, all damages that an **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:

**(i)** because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date stated in the Declarations Page, and before the end of the **Policy Period;**

**(ii)** and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting Period.

**II. LIMITS OF LIABILITY**

The following Limits of Liability apply to this policy:

**(a)** Limits of Liability - Each **Claim**

Subject to paragraph (b) below, the Limits of Liability stated in the Declarations Page as applicable to each **Claim** is the most the Company will pay for all damages resulting from any one **Claim** to which this insurance applies.

* * *

**(c)** Related **Claims** or Multiple Claimants

The following rules apply to related **Claims** or Multiple Claimants:

**(i)** all **Claims** arising out of, or in connection with, the same **Medical Incident** shall be considered one related **Claim** subject to the Each **Claim** Limits of Liability as stated in the Declarations Page as applicable to each **Insured . . .**

* * *

**(d)** The Limits of Liability stated in the Declarations Page include any and all costs, fees, expenses and prejudgment interest as awarded by a court to any plaintiff.

* * *

**IV. INSURED'S DUTIES**

In addition to all the conditions and other responsibilities described throughout this policy, the **Insured** has all of the following duties:

* * *

(g) To notify the Company, as soon as practicable and in writing, of any material change in the **Insured's** practice, including, but not limited to:

(iii) a change in an **Insured's** medical licensing status;

* * *

(v) any investigation of an **Insured** by a state medical licensing agency, licensed hospital or health care facility, or medical review board;

(h) To notify the Company, as soon as practicable and in writing, of material changes in the **Medical Practice** including, but not limited to:

(i) the addition or deletion of any physician or **Advanced Practice Provider** to or from the **Medical Practice**;

* * *

(i) the addition or deletion of any physician or **Advanced Practice Provider** to or from the **Medical Practice**;

**X. EXCLUSIONS**

The following exclusions apply regardless of whether the **Claim** or **Legal Action** is intertwined with the rendering of **Professional Services**. This insurance does not apply to damages arising out of or in connection with any of the following:

(a) An act, error or omission by an **Insured** prior to the effective date of this policy if:

(i) an **Insured** knew or should have known of a **Medical Incident** that by its nature may result in a **Claim**;

* * *

(c ) An act, error or omission of a physician or **Advanced Practice Provider** who is not listed as an **Insured** in the Declaration Page unless the **Insured** has purchased from the Company an endorsement insuring the vicarious liability of the **Insured** for the acts, errors, or omissions of any such person.

* * *

(e) **Professional Services** that are outside the scope of the **Insured's** specialty as stated in the **Insured's** most recent application, renewal questionnaire, or similar information provided in support of issuance of this policy.

(f) The rendering of or failure to render **Professional Services** in any location where the **Insured** was not licensed to practice medicine and where such a license was required.

(g) Providing **Professional Services** during the suspension, revocation, or surrender of an **Insured's** license or certificate to practice medicine, or which constitutes a violation of, or falls outside the scope of any restriction imposed upon such license or certificate.

* * *

(l) Advertising, marketing, warranting (express or implied), or soliciting patients for **Professional Services**.

* * *

(v) Damages arising out of, in connection with, or enhanced, exacerbated, or aggravated by an **Insured's** misrepresentation or concealment of any material fact or circumstance relating to a **Claim**, including any involvement in the alteration of patient records, or the willful failure to preserve any relevant evidence.

* * *

(w) An allegation asserting an unfair or deceptive act or practice . . .

(x) An **Insured's** criminal act or an **Insured's** violation of any statute, ordinance or regulation that provides for any criminal penalty whether or not there is a criminal charge, prosecution, or conviction.

* * *

(y) Any willful, fraudulent, malicious . . . or intentional acts or omissions . . . However, this exclusion shall not preclude coverage for acts of gross negligence

* * *

(aa) Damages alleging wrongful termination, refusal to employ, demotion, evaluation, reassignment, discipline, or other employment related practices.

**XI. DEFINITIONS**

The following definitions shall apply to the **boldface** terms contained in this policy:

**(a)** **"Advanced Practice Provider"** means nurse practitioners, physician assistants, certified registered nurse anesthetists, certified nurse midwives, psychotherapists, licensed clinical social workers, podiatrists, chiropractors, and dentists . . .

**(b)** **"Claim"** means, and is considered to be, first made against an Insured upon the earliest of:

(i) an **Insured** having knowledge of a **Medical Incident** that by its nature may result in a demand or request for payment of damages or for services to which this insurance applies; or

(ii) an **Insured** receiving a notice of a demand for money, for services, or any other notice indicating that a **Claim** may be made because of a **Medical Incident**; or

(iii) an **Insured** receiving notice of a threatened or filed Legal Action alleged to have resulted from a **Medical Incident**. All **Claims** arising out of or in connection with the same **Medical Incident** shall be deemed to have been made at the time the first **Claim** is made.

All Claims arising out of or in connection with the same Medical Incident shall be deemed to made at the time the first Claim is made.

* * *

(d) **"Insured"** means:

(i) Each individual listed in Coverage A of the Declarations Page;

* * *

(iii) Any **Advanced Practice Provider** listed in Coverage B of the Declarations Page;

(iv) any **Medical Practice** listed in Coverage B of the Declarations Page . . .

* * *

(g) **"Medical Incident"** means an act, error or omission, or series of related acts, errors or omissions, arising out of or in connection with the rendering or failure to render **Professional Services**. A continuing course of treatment of a patient shall be considered one Medical Incident.

* * *

(j) "**Non-Physician Employees**" means those individuals while acting within the scope of and in furtherance of their employment by the **Medical Practice** or by an **Insured** listed in the Declarations Page under Coverage A.

* * *

(l) **"Professional Services"** means those medical or health care services the **Insured** provides, including:

(i) medical . . . treatment . . .

(ii) making medical diagnoses and rendering medical opinions and/or advice;

(iii) prescribing, furnishing or dispensing drugs or medical, surgical, or dental supplies or appliances;

* * *

## XII. POLICY CONDITIONS

The following conditions apply to this policy:

**(a)** Action Against the Company

No legal action shall be brought by an **Insured** against the Company until there has been full compliance by the Insured with all of the terms of this policy. In addition, no legal action shall be brought against the Company for reimbursement of monies payable by an Insured until the amount of the **Insured's** obligation to pay has been determined finally by judgment after trial, by arbitration, or by written agreement of the claimant and the Company. No person or organization has any right under this policy to bring the Company into any action to determine the **Insured's** liability for a Claim.

* * *

**(h)** **Insured's** Representations

By acceptance of this policy, each Insured agrees that the statements in the respective applications, renewal questionnaires, and any other documents submitted to the Company are true and correct. In addition, it is understood and agreed that those statements are incorporated into and shall form a part of this policy. The Company reserves the right to rescind this policy or any coverage provided hereby, for any material misrepresentations made by an **Insured**.

131. Relevant portions of PP4AL's and Johnson's Policy applications are set forth below.

***Medical Mutual Insurance Company of North Carolina***
***Entity Professional Liability Application***

132. PP4AL's June 19, 2017 policy application includes, in relevant part, the following question, answers and certifications.

**Organization**

Type of Practice (select the one most appropriate) * **Single Specialty Practice**

**Prior Acts Coverage Certification**

I request Prior Acts Coverage retroactive to 11/01/2012 , which is consistent with the attached Declarations page from my current carrier.

I certify that I have no knowledge of any professional liability claims which have been asserted against this applicant, or any related professional corporation or professional association for which I am seeking coverage, which have not been reported to my prior or applicable carrier.

I furthermore certify that I have no knowledge of any occurrence, incident or circumstance likely to result in such a claim as of this date, other than those reported on this application.

* * *

**I certify that the above is true complete and correct to the best of my knowledge, information and belief. I understand that an incorrect or incomplete response could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.**

**General Information**

**Non-Physician/Non-Dentist Personnel**

Do you employ or contract with any non-physician or non-dentist personnel? **Yes**

Provide the number of personnel for each category:

Nurses * **0**

CRNAs * **0**
Nurse Midwives * **0**
Podiatrists * **0**
Pharmacists * **0**
Nurse Practitioners * **1**
Physician Assistants * **0**
Chiropractors * **0**
Dental Assistants/Hygienists * **0**
Psychotherapists * **0**
Licensed Clinical Social Workers * **2**
Anesthesia Assistants * **0**
Other * **2**

Please specify: * **Licensed Professional Counselors**

**Claims History**

* * *

**2.)** Do you have knowledge of any circumstances involving the rendering or failure to render professional services that could result in a claim being brought against you? **No**

**Authorization and Release**

I, the undersigned Applicant, understand that this is an application and is not an insurance binder. I certify the representations in this application to be true and understand that the policy if issued, is conditioned upon the truth of the representations in this application. I further understand that the falsity of any representations made in this application for insurance could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.

* * *

**** Signed by **Jonijj68@gmail.com** using password confirmation on **06/19/2017 - 22:17:47** ****

**Medical Mutual Insurance Company of North Carolina**
**Medical Practitioners Professional Liability Application**

133. Johnson's July 13, 2017 policy application includes, in relevant part, the following question, answers and certifications.

**Prior Acts Coverage Certification**

I request Prior Acts Coverage retroactive to 11/01/2012 , which is consistent with the attached Declarations page from my current carrier.

I certify that I have no knowledge of any professional liability claims which have been asserted against this applicant, or any related professional corporation or professional association for which I am seeking coverage, which have not been reported to my prior or applicable carrier.

I furthermore certify that I have no knowledge of any occurrence, incident or circumstance likely to result in such a claim as of this date, other than those reported on this application.

* * *

**I certify that the above is true complete and correct to the best of my knowledge, information and belief. I understand that an incorrect or incomplete response could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.**

**Claims History**

* * *

**2.)** Do you have knowledge of any circumstances involving the rendering or failure to render professional services that could result in a claim being brought against you? **No**

**Authorization and Release**

I, the undersigned applicant, understand that this is an application and is not an insurance binder.

I certify the representations in this application to be true and understand that the policy if issued, is conditioned upon the truth of the representations in this application. I further understand that the falsity of any representations made in this application for insurance could cause the denial of a claim or the cancellation of my protection if coverage is written as a result of this application.

* * *

**** Signed by **jonijj68@gmail.com** using password confirmation on **07/13/2017 - 22:47:49** ****

**COUNT I**

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Due to Materially False Statements on the Policy Applications.***

134. Plaintiff incorporates paragraphs 1 through 133 by reference herein as if they were set forth in full.

135. Johnson's certifications in the 2017 Entity and Medical Professional renewal applications, that the applicant had "no knowledge of any occurrence, incident or circumstance likely to result in such a claim as of this date, other than those reported on this application," were false.

136. Johnson knew, as of the date of the signing of the applications, that Avery was repeatedly missing appointments with patients, failing to reschedule missed appointments, and arriving late to other appointments. Johnson knew by such time that Avery had become distant and disengaged from the practice and her patients and that Avery had become increasingly unreliable.

137. Johnson knew, as of the date of the signing of the applications, that Avery had failed to provide any substantiation to her claimed "provisional license" despite repeated requests to do so, that Avery had advised Johnson of a complaint in 2014 by the Spotsylvania County School Division to DHP that Avery was practicing as an unlicensed psychologist, and that Avery had advised Johnson that the matter had been closed as undetermined, subject to being reopened if additional complaints were received. By early 2017, Johnson knew that Avery would not be able to secure permanent licensing due to undisclosed issues that Avery failed to explain.

138. The Entity Professional Liability Application required that Johnson disclose whether PP4AL employed a psychotherapist. The applications falsely indicated that PP4AL employed "zero" psychotherapists.

139. The Entity Professional Liability Application reported that the insured was a single specialty practice (i.e., pediatrics), rather than a multidisciplinary practice that employed a psychotherapist as part of a range of health services offered.

140. Additionally, the Policy required in Section IV(h)(i) that the insured "advise the Company as soon as practicable and in writing of material changes in the Medical Practice, including but not limited to…the addition or deletion of any physician or Advanced Service Provider to or from the Medical Practice." PP4AL retained Avery to provide services in 2012 and to serve as a full-time, in-house psychologist in 2014, and terminated Avery's employment effective September 30, 2017. At no time did PP4AL or Johnson advise the Company that PP4AL or Johnson was adding or deleting an Advanced Service Provider or provide any information with regard to Avery as required by the Policy.

141. Johnson's above responses and certifications were materially false and were relied upon by MMIC in deciding to issue the insurance applied for, in that MMIC would not have issued the Policy on the same terms had truthful answers been provided.

142. Under the terms of the Policy, the responses and certifications on the 2017 Entity and Medical Professional renewal applications became a part of the Policy. The materially false answers to the questions cited above relieves MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

## COUNT II

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims Stated Are Precluded from Coverage Under Policy Exclusion Section X(a)(i).***

143. Plaintiff incorporates paragraphs 1 through 142 by reference herein as if they were set forth in full.

144. The Policy excludes coverage for "damages arising out of or in connection with" an act error or omission by the Insured prior to the effective date of the Policy if "the Insured knew or should have known of a Medical Incident that by its nature may result in a Claim." See Policy Section X(a)(i).

145. The effective date of the Policy was September 1, 2017. Prior to that that date, PP4AL and Johnson were aware of an act, error or omission arising out of or in connection with the rendering or failure to render Professional Services by Avery that were likely to result in a Claim.

146. Prior to September 1, 2017, PP4AL and Johnson knew that Avery's performance, including failing to keep or reschedule treatment and patient appointments, was so increasingly erratic and unreliable throughout the summer of 2017 that by August 2017 PP4AL had removed her completely from the schedule. Upon information and belief, PP4AL and Johnson also knew prior to September 1, 2017 that Avery's purported three year "provisional license" would have expired in or about early 2017 and that Avery was unlicensed during a time when she was continuing to work for PP4AL as a psychologist conducting therapy for patients.

147. The conduct underlying these allegations are excluded under the Policy and relieve MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

## COUNT III

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims Stated Are Precluded from Coverage Under Policy Exclusion Section X(c).***

148. Plaintiff incorporates paragraphs 1 through 147 by reference herein as if they were set forth in full.

149. The Policy excludes coverage for "damages arising out of or in connection with" an act, error or omission of an Advanced Practice Provider who is not listed as an Insured in the Declaration Page of the Policy, unless the Insured has purchased from the Company an endorsement insuring the vicarious liability of the Insured for the acts, errors, or omissions of any such person. (Policy Sec. X(c)).

150. PP4AL retained Avery as a psychologist and psychotherapist and neither disclosed that fact to MMIC nor listed Avery in the Declaration Page of the Policy. The claims against Johnson and PP4AL set forth in the Underlying Complaints seek "damages arising out of or in connection with" Avery's acts, errors, or omissions. As such, coverage for the damages sought in the Underlying Complaints appear to be precluded in full pursuant to Exclusion X(c) of the Policy.

151. The conduct underlying these allegations are excluded under the Policy and relieve MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

**COUNT IV**

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims Stated Are Precluded from Coverage Under Policy Exclusion Section X(l).***

152. Plaintiff incorporates paragraphs 1 through 151 by reference herein as if they were set forth in full.

153. The Policy excludes coverage for "damages arising out of or in connection with" "advertising, marketing, warranting (express or implied) or soliciting patients for Professional Services." (Policy Sec. X(l)). Count VI of the Green Complaint and Gnik Complaint and Count VII of the Lovitt Complaint allege constructive fraud in connection with certain representations and warranties that PP4AL and Johnson allegedly made to the Green Plaintiffs, Gnik Plaintiffs, Lovitt Plaintiffs, and Gause Plaintiffs regarding the qualifications of Avery. As such, damages sought under Count VI of the Green Complaint and Gnik Complaint and Count VII of the Lovitt Complaint are excluded from coverage under the Exclusion X(l) of the Policy.

154. The conduct underlying these allegations are excluded under the Policy and relieve MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

**COUNT V**

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims Stated Are Precluded from Coverage Under Policy Exclusion Section X(w).***

155. Plaintiff incorporates paragraphs 1 through 154 by reference herein as if they were set forth in full.

156. The Policy excludes coverage for "damages arising out of or in connection with" an "allegation asserting an unfair or deceptive act or practice." (Policy Sec. X(w)). The

Underlying Complaints in their various counts allege what amounts to a deceptive trade practice to induce the Green Plaintiffs, Gnik Plaintiffs, Lovitt Plaintiffs, and Gause Plaintiffs to undertake medical services with an unlicensed provider in order to obtain financial gain. Damages arising out of or in connection with such an unfair or deceptive trade practice are excluded from coverage under the Exclusion X(w) of the Policy.

157. The conduct underlying these allegations are excluded under the Policy and relieve MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

## COUNT VI

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims Stated Are Precluded from Coverage Under Policy Exclusion Section X(aa).***

158. Plaintiff incorporates paragraphs 1 through 157 by reference herein as if they were set forth in full.

159. The Policy excludes coverage for "damages arising out of or in connection with" damages alleging certain listed wrongful "employment related practices." (Policy Sec. X(aa)). Count II of the Green Complaint alleges gross negligence by PP4AL and Johnson in failing to properly verify the credentials of Avery when acting to hire her on behalf of PP4AL. These facts allege a failure to perform an employment function. Count V of the Green Complaint, Count IV of the Gause Complaint, and the general allegations in the Gnik Complaint and Lovitt Complaint allege negligent hiring which directly states a claim for an "employment related practice." Damages arising out of or in connection with such allegations of such practices are excluded from coverage under the Exclusion X(aa) of the Policy.

160. The conduct underlying these allegations are excluded under the Policy and relieve MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

## COUNT VII

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims Stated Are Precluded from Coverage Under Policy Exclusion Section X(v).***

161. Plaintiff incorporates paragraphs 1 through 160 by reference herein as if they were set forth in full.

162. The Policy excludes coverage for "Damages arising out of, in connection with, or enhanced, exacerbated, or aggravated by an Insured's misrepresentation or concealment of any material fact or circumstance relating to a Claim…" (Policy Sec. X(v)). Each of the Underlying Complaints allege that Johnson and PP4AL made misrepresentations concerning Avery's credentials. The Green Plaintiffs, Gnik Plaintiffs, Lovitt Plaintiffs, and Gause Plaintiffs allege that they would not have sought treatment from PP4AL or Johnson had these misrepresentations not been made.

163. Damages arising out of or in connection with such allegations concerning misrepresentations are excluded from coverage under the Exclusion X(v) of the Policy.

164. The conduct underlying these allegations are excluded under the Policy and relieve MMIC of any obligation to defend or indemnify Johnson or PP4AL with regard to the claims set forth in the Underlying Complaints.

## COUNT VIII

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims are Considered One Related Claim Deemed Made Prior to the Effective Date of the Policy.***

165. Plaintiff incorporates paragraphs 1 through 164 by reference herein as if they were set forth in full.

166. Section I(a)(ii) of the Policy provides that to come within the Policy's coverage provisions, a Claim must have been first made and reported either during the Policy Period, or during any applicable Extended Reporting Period.

167. The Policy further provides in relevant part that "'Claim' means, and is considered to be, first made against an Insured upon the earliest of: (i) an Insured having knowledge of a Medical Incident that by its nature may result in a demand or request for payment of damages or for services to which this insurance applies . . ." Section II(c)(i) of the Policy provides in relevant part that "all Claims arising out of, or in connection with, the same Medical Incident shall be considered one related Claim subject to the Each Claim Limits of Liability as stated in the Declarations Page as applicable to each Insured . . ."

168. Based on the above facts, Johnson had knowledge of "a Medical Incident that by its nature may result in a demand or request for payment of damages or for services to which this insurance applies" prior to the effective date of the Policy, such that the claims set forth in the Underlying Complaints—which under the Policy are considered to be a single related Claim—are related and considered to have been made prior to the Policy's effective date.

169. Accordingly, because Johnson had knowledge of a Medical Incident prior to the effective date of the Policy, MMIC is not obligated to defend or indemnify Johnson or PP4AL against the claims set forth in the Underlying Complaints.

## COUNT IX

***Declaration that MMIC Has No Duty to Defend or Indemnify Johnson or PP4AL in the Underlying Lawsuits Where the Claims are Related to and Interdependent upon Excluded Conduct of Avery.***

170. Plaintiff incorporates paragraphs 1 through 169 by reference herein as if they were set forth in full.

171. Irrespective of the labels of the causes of action stated in the Underlying Complaints, the factual assertions of the Underlying Complaints against Johnson and PP4AL allege negligent hiring, supervision, or retention of Avery.

172. No coverage is available under the Policy, the Renewal Policy, or the Extended Reporting Endorsement where the conduct of Avery underlying such allegations is excluded and where the claims against Johnson and PP4AL are related to and interdependent upon Avery's excluded conduct.

173. All of Avery's alleged conduct falls within multiple exclusions cited above, including without limitation Exclusions e, f, g, l, v, w, x and y of Section X of the Policy and the Renewal Policy; and the claims against Johnson and PP4AL are related to and interdependent upon such excluded conduct.

174. Accordingly, MMIC is not obligated to defend or indemnify Johnson or PP4AL against the claims set forth in the Underlying Complaints because those claims are related and interdependent on conduct excluded under the Policy.

WHEREFORE, Plaintiff prays that this Court order the following relief:

a) Determining and adjudicating the rights and liabilities of the parties to Plaintiff's policy of insurance with regard to the existence of any duty to defend or

indemnify Johnson and PP4AL with regard to the claims set forth in the Underlying Complaints;

b) Declaring that MMIC has no duty to defend or indemnify Johnson and PP4AL in the Underlying Lawsuits;

c) For such other and further relief as is just and equitable.

Date: July 23, 2021

Respectfully submitted,

MEDICAL MUTUAL INSURANCE
COMPANY OF NORTH CAROLINA

By Counsel

/s/ Danny M. Howell
Danny M. Howell (VSB No. 30352)
danny@dmhowelllaw.com
Robert Jackson Martin, IV (VSB No. 80655)
jackson@dmhowelllaw.com
Jennifer L. Rowlett (VSB No. 81373)
jennifer@dmhowelllaw.com
Law Offices of Danny M. Howell, PLLC
6861 Elm Street, Suite 3D
McLean, VA 22101
Phone: (703) 556-8900
Fax: (703) 237-1224

*Counsel for Medical Mutual Insurance Company of North Carolina*

# EXHIBIT A

# COMMONWEALTH OF VIRGINIA

STAFFORD CIRCUIT COURT
Civil Division
1300 COURTHOUSE RD PO BOX 69
STAFFORD VA 22554
(540) 658-4220

Summons

To: JONI J JOHNSON
PRIVATE PROCESS

Case No. 179CL19002221-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, July 25, 2019

Clerk of Court: KATHLEEN M STERNE

by ______________________
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name: WHITE, JACK L
(703)590-1234

# COVER SHEET FOR FILING CIVIL ACTIONS

COMMONWEALTH OF VIRGINIA

Case No. CL19-2221
(CLERK'S OFFICE USE ONLY)

Stafford County Circuit Court

G3 COMMUNITY SERVICES v./In re: COVENTRY HEALTH CARE OF VIRGINIA, INC.,
PLAINTIFF(S) DEFENDANT(S)
VERNON GREEN JR. d/b/a AETNA Better Health of Virginia, et al.

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [x] Other General Tort Liability

## ADMINISTRATIVE LAW
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS
- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [ ] Other (please specify)

[x] Damages in the amount of $ 2,313,142.45 are claimed.

07/19/2019
DATE

[ ] PLAINTIFF [ ] DEFENDANT [x] ATTORNEY FOR [x] PLAINTIFF [ ] DEFENDANT

Samuel M. Adelmann
PRINT NAME

1751 Pinnacle Drive, Suite 1000
ADDRESS/TELEPHONE NUMBER OF SIGNATOR
Tysons, VA 22102 (703) 590-1234

sadelmann@fhhfirm.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

# Civil Action Type Codes
(Clerk's Office Use Only)

Accounting ... ACCT
Adoption ... ADOP
Adoption – Foreign ... FORA
Adult Protection ... PROT
Aid and Guidance ... AID
Amend Death Certificate ... ADC
Annexation ... ANEX
Annulment ... ANUL
Annulment – Counterclaim/Responsive Pleading ... ACRP
Appeal/Judicial Review
- ABC Board ... ABC
- Board of Zoning ... ZONE
- Compensation Board ... ACOM
- DMV License Suspension ... JR
- Employment Commission ... EMP
- Employment Grievance Decision ... GRV
- Local Government ... GOVT
- Marine Resources ... MAR
- School Board ... JR
- Voter Registration ... AVOT
- Other Administrative Appeal ... AAPL

Appointment
- Conservator of Peace ... COP
- Church Trustee ... AOCT
- Custodian/Successor Custodian (UTMA) ... UTMA
- Guardian/Conservator ... APPT
- Marriage Celebrant ... ROMC
- Standby Guardian/Conservator ... STND

Approval of Transfer of Structured Settlement ... SS
Asbestos Litigation ... AL
Attachment ... ATT
Bond Forfeiture Appeal ... BFA
Child Abuse and Neglect – Unfounded Complaint ... CAN
Civil Contempt ... CCON
Claim Impleading Third Party Defendant – Monetary Damages/No Monetary Damages ... CTP
Complaint – (Miscellaneous) ... COM
Compromise Settlement ... COMP
Condemnation ... COND
Confessed Judgment ... CJ
Contract Action ... CNTR
Contract Specific Performance ... PERF
Counterclaim – Monetary Damages/No Monetary Damages ... CC
Cross Claim ... CROS
Declaratory Judgment ... DECL
Declare Death ... DDTH
Detinue ... DET
Divorce
- Complaint – Contested/Uncontested ... DIV
- Counterclaim/Responsive Pleading ... DCRP
- Reinstatement – Custody/Visitation/Support/ Equitable Distribution ... CVS

Driving Privileges
- Reinstatement pursuant to § 46.2-427 ... DRIV
- Restoration – Habitual Offender or 3rd Offense ... REST

Ejectment ... EJET
Encumber/Sell Real Estate ... RE
Enforce Vendor's Lien ... VEND
Escheatment ... ESC
Establish Boundaries ... ESTB
Expungement ... XPUN
Forfeiture of Property or Money ... FORF
Freedom of Information ... FOI
Garnishment ... GARN
Injunction ... INJ
Intentional Tort ... ITOR
Interdiction ... INTD
Interpleader ... INTP
Interrogatory ... INTR
Judgment Lien – Bill to Enforce ... LIEN
Landlord/Tenant ... LT
Law Enforcement/Public Official Petition ... LEP
Mechanics Lien ... MECH
Medical Malpractice ... MED
Motor Vehicle Tort ... MV
Name Change ... NC
Other General Tort Liability ... GTOR
Partition ... PART
Permit, Unconstitutional Grant/Denial by Locality LUC
Petition – (Miscellaneous) ... PET
Product Liability ... PROD
Quiet Title ... QT
Referendum Elections ... ELEC
Reinstatement (Other than divorce or driving privileges) ... REIN
Removal of Case to Federal Court ... REM
Restore Firearms Rights – Felony ... RFRF
Restore Firearms Rights – Review ... RFRR
Separate Maintenance ... SEP
Separate Maintenance – Counterclaim/Responsive Pleading ... SCRP
Sever Order ... SEVR
Sex Change ... COS
Taxes
- Correct Erroneous State/Local ... CTAX
- Delinquent ... DTAX

Termination of Mineral Rights ... MIN
Trust – Impress/Declare/Create ... TRST
Trust – Reformation ... REFT
Uniform Foreign Country Money Judgments ... RFCJ
Unlawful Detainer ... UD
Vehicle Confiscation ... VEH
Voting Rights – Restoration ... VOTE
Will Construction ... CNST
Will Contested ... WILL
Writs
- Certiorari ... WC
- Habeas Corpus ... WHC
- Mandamus ... WM
- Prohibition ... WP
- Quo Warranto ... WQW

Wrongful Death ... WD

COPY

VIRGINIA:

IN THE CIRCUIT COURT OF STAFFORD COUNTY

G3 COMMUNITY SERVICES

and,

VERNON GREEN JR.

Plaintiffs,

v.

COVENTRY HEALTH CARE OF VIRGINIA, INC., d/b/a AETNA Better Health of Virginia R/A: C.T. Corporation System 4701 Cox Road, Suite 285 Glen Allen, VA 23060; and

PEDIATRIC PARTNERS FOR ATTENTION AND LEARNING, INC., 2128 Jefferson Davis Hwy, Suite 201 Stafford, VA 22554; and

SHARONDA L. AVERY, 10 Snow Drive Stafford, Virginia 22554; and

JONI J. JOHNSON, 50 Lafayette Street Stafford, Virginia 22554; and

MARYANN BYRNE, 108 Brandice Street Stafford, VA 22554; and

Defendants.

Civil Action No: CL19-2721

JURY TRIAL DEMANDED

FILED CLERK OF COURT 2019 JUL 19 PM 2:27

## COMPLAINT

Plaintiffs, G3 Community Services, and Vernon Green Jr., by and through counsel, hereby move this Court to enter judgment in their favor against Defendants Coventry Health Care of

Virginia, Inc. ("Aetna"), Pediatric Partners for Attention and Learning, Inc. ("PP4AL"), Sharonda L. Avery ("Ms. Avery"), Joni J. Johnson ("Dr. Johnson"), and MaryAnn Byrne ("Ms. Byrne"), (collectively "Defendants") and in support of their Complaint state as follows.

**NATURE OF ACTION**

1. This is a civil action alleging negligence, gross negligence, breach of contract, quantum meruit, negligent hiring, actual fraud, constructive fraud, conspiracy, and conversion.

**PARTIES**

2. Plaintiff **G3 Community Services** ("G3CS" or "Plaintiff") is a Virginia 501(c)(3) non-profit organization with its principal place of business located in Stafford County.

3. Plaintiff **Vernon Green Jr.** ("Mr. Green") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in Stafford County, Virginia.

4. Defendant **Coventry Health Care of Virginia, Inc., d/b/a Aetna Better Health of Virginia** ("Aetna") is a corporation organized and existing under the laws of Virginia, with its principal place of business located at 9881 Mayland Drive, Richmond, Virginia 23233. Aetna regularly conducts business in Stafford County.

5. Defendant **Pediatric Partners for Attention and Learning, Inc.** ("PP4AL") is a corporation organized and existing under the laws of Virginia, with its principal place of business located at 2128 Jefferson Davis Highway, Suite 201 Stafford, Virginia 22554.

6. Defendant **Sharonda L. Avery** ("Ms. Avery") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 10 Snow Drive, Stafford, Virginia 22554.

7. Defendant **Joni J. Johnson** ("Dr. Johnson") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 50 Lafayette Street Stafford, Virginia 22554.

8. Defendant **MaryAnn Byrne** ("Ms. Byrne") is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 108 Brandice Street, Stafford, VA 22554.

## JURISDICTION AND VENUE

9. Venue is appropriate in Stafford, County because G3CS has its principal place of business and regularly conducts business in Stafford County and because the acts complained of principally occurred in Stafford County within the Commonwealth of Virginia.

10. At all times relevant to this Complaint, Mr. Green resided in Stafford County and sought treatment from the Defendants in Stafford County.

11. At all times relevant to this Complaint each of the Defendants lived in or regularly conducted business in Stafford County.

12. This Court has subject matter jurisdiction pursuant to Virginia Code §8.01-262 (1) through (4) because each of the Defendants reside or have their principal office in Stafford County and because the relevant acts giving rise to this complaint occurred in Stafford County.

## FACTS

13. Mr. Green is a service-disabled veteran who served honorably in the Army for more than 20 years, retiring as a Chief Warrant Officer.

14. During his service Mr. Green specialized in cyber-security, information technology, and operational technology.

15. Shortly after his retirement, Mr. Green founded a Small Business Administration 8(a) certified, service disabled, veteran, and minority owned small business which contracts both commercially and with the U.S. government to provide cyber-security and information technology services.

16. Due to the success of Mr. Green's efforts with the company he founded, he began undertaking efforts to provide vocational assistance and mentorship opportunities for young African-American males in Stafford County. These community service efforts quickly expanded to various other demographics.

17. As a result of the many philanthropic opportunities and invitations Mr. Green received, in 2017 he founded G3 Community Services ("G3CS") which is a 501(c)(3) nonprofit organization set up to give back to the community. The mission of G3CS is to restore, inspire and empower the family unit through coaching, mentorship, and education; thereby strengthening their community.

18. Expanding upon the original vocational assistance, G3CS grew its program offerings to include mentoring adolescent boys and girls, working in and through schools in Stafford County, and providing income assistance for the underprivileged, as well as other support offerings within the community.

19. Separate from his philanthropic efforts, in or around early 2016, Mr. Green sought treatment to address his service-related Post-Traumatic Stress Disorder ("PTSD"), a mental health condition identified in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5).

20. Mr. Green selected Dr. Johnson, owner and founder of Pediatric Partners for Attention and Learning, Inc. ("PP4AL"), who was and is a licensed member of the healing arts, and a medical practitioner.

21. Dr. Johnson referred Mr. Green to "Doctor" Sharonda Avery, for medical treatment and assistance. Ms. Avery was held out to be a licensed member of the healing arts and an agent of PP4AL.

22. Dr. Johnson identified Ms. Avery as a licensed psychologist, authorized to practice in the Commonwealth of Virginia.

23. Dr. Johnson and Ms. Avery claimed that Ms. Avery had multiple degrees, including a Doctorate of Philosophy (PhD) in General Psychology from Grand Canyon University; a

Doctorate in Psychology (PsyD) in Clinical Psychology from Virginia Commonwealth University; a Masters of Education in the field of Special Education, Cross-Categorical from Grand Canyon University, as well as several bachelor's degrees.

24. For nearly a year, Ms. Avery personally provided medical treatment to Mr. Green for his PTSD, under the direction of and as an agent for Dr. Johnson and her PP4AL practice.

25. Ms. Avery's work was not adequately supervised. She was allowed to work with Mr. Green alone and apparently there was no peer or supervisory review of her treatment regimen, of any kind.

26. Although she lacked both a medical license and Drug Enforcement Administration licensure to prescribe medications, Ms. Avery prescribed medication to Mr. Green. Her prescriptions were signed off on by Ms. Maryann Byrne, another agent of the PP4AL practice.

27. Mr. Green was invoiced by, and made payments to, PP4AL for medical treatment provided by Ms. Avery.

28. Mr. Green executed an agreement with Aetna to receive health insurance benefits, and paid monthly premiums as required under the agreement.

29. Accordingly, Aetna was Mr. Green's duly authorized insurance provider.

30. PP4AL, Dr. Johnson, Ms. Byrne and Ms. Avery, were in-network providers with Aetna.

31. PP4AL billed Aetna for treatment Mr. Green received from Ms. Avery.

32. Dr. Johnson approved the invoices and billings sent to Mr. Green and Aetna.

33. Aetna approved of and paid the contracted rates for the invoices received from PP4AL for the treatment Mr. Green received from Ms. Avery, thereby representing and approving that Ms. Avery was a duly licensed member of the healing arts.

34. Dr. Johnson received remuneration for billing Mr. Green and Aetna, for medical treatments provided by Ms. Avery.

35. Mr. Green reasonably believed that he was receiving competent medical treatment and care from Ms. Avery for his PTSD and anxiety.

36. Mr. Green reasonably relied upon his belief that he was receiving competent medical treatment and care from Ms. Avery for his PTSD and anxiety.

37. Based on the recommendation of Dr. Johnson, and on Ms. Avery's continued affirmative representation that she was a licensed psychologist, Mr. Green discussed employment with Ms. Avery to work as the Executive Director in his non-profit organization, G3CS.

38. In early 2017, Mr. Green discontinued his treatment from Ms. Avery, with a view to hiring her.

39. In violation of duties imposed by the Commonwealth of Virginia, Ms. Avery failed to provide Mr. Green a referral or recommendations for continued treatment from a qualified member of the healing arts.

40. On information and belief, aware of the discontinuation of medical treatment, Dr. Johnson, a licensed medical doctor, failed, in violation of duties imposed by the Commonwealth of Virginia, to provide Mr. Green a referral for continued treatment to a qualified member of the healing arts.

41. With Mr. Green no longer under Ms. Avery's care, on June 1, 2017, G3CS hired Ms. Avery to serve in the role of Executive Director.

42. Ms. Avery's job duties as Executive Director included overseeing the day-to-day operations of the organization, networking and evangelizing G3CS programs to the community including to Stafford County schools, and developing business.

43. As an extension of her duties, Ms. Avery was granted access to G3CS's bank accounts, including being issued a debit card for the organization's checking account.

44. G3CS had specific protocols in place for expenditures related to their community service programs.

45. Specifically, if an individual was in need of financial assistance, then that individual was required to fill out company-created documentation to certify the nature and scope of the need.

46. The submitted documentation would then be reviewed by G3CS staff to ensure compliance with the applicable program. Mr. Green would then, exercising his sole managerial authority and discretion, approve or deny the request.

47. Ms. Avery was not authorized to approve grants or make purchases for the entity, on her own volition without prior approval.

48. Beginning in early 2018, when auditing the accounts for year-end analysis, Mr. Green and his staff noticed unaccounted for expenditures attributable to the actions of Ms. Avery. Concerned about what appeared to be unauthorized expenses, Mr. Green and his staff instructed Ms. Avery to provide support for the expenditures.

49. Ms. Avery failed and outright refused to provide documentation supporting the legitimacy of the expenses.

50. As part of his efforts to market Ms. Avery's skill set, Mr. Green requested Ms. Avery provide documentation of her claimed degrees and licensure as a psychologist.

51. Ms. Avery never provided board licensure or documentation of any educational degrees.

52. On March 26, 2018, Ms. Avery was terminated as the Executive Director of G3CS.

53. Contemporaneous with her termination, G3CS discovered numerous improper and unauthorized expenditures attributable to Ms. Avery.

54. Staff of G3CS discovered that Ms. Avery had made multiple misappropriations of corporate funds for personal purchases, including payments for her personal vehicle's car insurance, rental furniture for her private home, payment of personal cable TV bills, charges for hotel rooms, personal cellular telephone service, private jewelry, unauthorized cash withdrawals, and other expenses which amounted to a misappropriation of business funds.

55. As is currently known, Ms. Avery made $13,142.45 in unauthorized purchases with G3CS funds.

56. Upon discovery of the apparent embezzlement, G3CS reported the misappropriation of funds to the Stafford County Sheriff's Office. Ms. Avery was then charged with multiple crimes, including embezzlement, obtaining money by false pretenses, and credit card fraud.

57. Upon further investigation by the Sheriff's Office, it was determined that Ms. Avery is not, and has never been, a licensed accredited health care provider. Nor was or is she authorized to perform any duties as a psychologist, therapist, clinician or member of the healing arts in the Commonwealth of Virginia, nor in any State or principality of the United States. In short, Ms. Avery's claims of being licensed or trained to provide any counseling or treatment are simply false.

58. Mr. Green and G3CS came to learn that Ms. Avery does not hold any degrees from any accredited institution of higher education either at the baccalaureate or post-graduate level.

59. At no time did Dr. Johnson, Ms. Byrne or PP4AL, nor any health care provider or insurer of Mr. Green engage in the required due diligence to ensure Ms. Avery was actually

licensed to provide medical treatment and counselling services. Indeed, both PP4AL and its agents, as Plaintiff's health care provider, as well as Plaintiff's health insurance carrier appeared to or did represent that Ms. Avery was a properly licensed and qualified practitioner.

60. G3CS has suffered severe harm due to Ms. Avery's misrepresentations and actions including pecuniary losses, loss of business opportunities, damage to reputation, embarrassment, inconvenience, costs and attorney's fees.

61. Mr. Green has suffered severe harm as a direct result of Ms. Avery's representations and actions, as well as the actions and representations of Aetna, PP4AL, Dr. Johnson, and Ms. Byrne, including pecuniary losses, loss of business opportunities, damage to reputation, embarrassment, humiliation, inconvenience, a sense of betrayal, mental anguish, profound injustice, costs and attorney's fees.

**COUNT I:**
**NEGLIGENCE**
**(Mr. Green v. Aetna)**

62. Plaintiff restates and realleges the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

63. Defendant Aetna had a duty to protect its insureds from unlicensed and non-credentialed practitioners within its network of providers. At a minimum, Aetna had a duty to ask for proof of licensure and to demand proof of certification of the qualifications to engage in any medical practice regulated by the Commonwealth of Virginia.

64. Aetna also had a duty to ensure that the actual care given to Mr. Green was provided by a properly licensed health care professional and to avoid payment to any employer who falsely or negligently held Ms. Avery out to be a competent health care professional.

65. By failing to undertake this minimal duty, Aetna negligently breached its duty and Mr. Green was severely harmed as a direct result.

66. Aetna also had a duty to maintain reasonable and adequate standards and procedures for credentialing and recredentialing providers with whom it contracted.

67. Indeed, Aetna contracted with PP4AL and the physicians and practitioners within the PP4AL practice to cover services on an "in-network" basis. Thus, further vouching for the quality of care of the provider and the certification of the licensure and training of the in-network providers it contracted with.

68. Aetna owed a duty to its insureds to periodically investigate, verify and recredential medical practices within its network, including PP4AL.

69. Aetna breached its duty to its insureds, including Mr. Green, by among other things, failing to properly recredential its providers, including PP4AL.

70. Aetna's negligence was the direct and proximate cause of harm to Mr. Green.

71. As a direct and proximate result of Aetna's negligence, Mr. Green received unprofessional, unlicensed, and incompetent treatment for his medical condition.

72. As a direct and proximate result of Aetna's negligence, Mr. Green was deprived of professional and competent medical treatment.

73. As a direct and proximate result of Aetna's negligence, Mr. Green suffered damages, including without limitation, past and future medical expenses, mental anguish, and pain and suffering.

74. Additionally, as a further direct and proximate result of Aetna's negligence, Mr. Green suffered damages, including without limitation, legal fees incurred during the course of the investigation and criminal prosecution of Ms. Avery.

75. Accordingly, Mr. Green seeks judgment against Aetna as to Count I, including without limitation, compensatory damages including pain and suffering, mental anguish, and emotional distress, plus attorney's fees and costs.

**COUNT II:**
**GROSS NEGLIGENCE**
**(Mr. Green v. Aetna, PP4AL, Dr. Johnson, Ms. Byrne)**

76. Plaintiff restates and realleges the allegations in paragraphs 1 through 75 above, as if fully set forth herein.

77. The failure of Aetna, PP4AL, Dr. Johnson, and Ms. Byrne to take the simple untroublesome step of ensuring proper certification of a medical health care provider—namely, Ms. Avery—culminates in the very definition of gross negligence: the utter disregard of prudence amounting to the complete neglect of the safety of another.

78. The fact that Ms. Avery was knowingly unlicensed to practice medicine in any state, and had no educational training in the fields in which she held herself to be qualified, and consciously rendered medical opinions and diagnoses, demonstrated an utter disregard to all persons she treated and exhibited an extreme lack of care.

79. Both Ms. Avery and her employer (PP4AL and Dr. Johnson) held themselves out as providing services to vulnerable populations—taking advantage of the disadvantaged—to include persons with disabilities and special needs children. The fact that neither her employer, nor the insurers who paid for her services and insured the patients who saw Ms. Avery, verified to be sure that Ms. Avery held the proper credentials to render medical decisions amounts to an utter disregard for public health and safety and demonstrates a conscious indifference towards their professional duty.

80. As a direct and proximate result of this gross negligence, Mr. Green suffered damages, including without limitation, insurance premiums, medical bills, mental anguish, and legal fees in the investigation and criminal prosecution of Ms. Avery.

81. Accordingly, Mr. Green seeks judgment against Aetna, PP4AL, Dr. Johnson, and Ms. Byrne as to Count II, including without limitation, compensatory damages, attorney's fees, and costs.

82. Further, as the negligence was gross in nature, Mr. Green is entitled to punitive damages in the full statutory maximum amount of $350,000.

**COUNT III:**
**BREACH OF CONTRACT**
**(Mr. Green v. Aetna)**
**(In the Alternative)**

83. Plaintiff restates and realleges the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

84. Mr. Green signed an insurance policy with Aetna to receive health insurance benefits and coverage (the "Agreement").

85. The Agreement was and is a valid, enforceable, and legally-binding agreement between Mr. Green and Aetna.

86. Pursuant to the Agreement Aetna owed Mr. Green an obligation to provide in-network medical professionals who were duly licensed and authorized to practice the healing arts for which they held themselves out as qualified.

87. Aetna breached its obligations to Mr. Green by failing to verify and recredential professionals and medical practices within its network, including PP4AL and Ms. Avery.

88. Mr. Green performed all of his duties, promises and obligations to Aetna, to include paying his monthly premiums.

89. As a direct result of Aetna's breach, Mr. Green suffered severe and extensive damages.

90. As a direct result of Aetna's breach, Mr. Green was damaged by receiving incompetent and unlicensed medical diagnoses, opinions and advice.

91. As a direct result of Aetna's breach, Mr. Green suffered damages of at least $50,000.

92. As a consequential damage of Aetna's breach, Mr. Green was damaged because he was deprived of the opportunity to seek competent and licensed medical advice and treatment, due to the false belief, perpetuated by Aetna, that he was already receiving licensed and competent medical advice and treatment.

93. Accordingly, Mr. Green seeks judgment against Aetna as to Count III, including without limitation, direct and consequential damages, attorney's fees, and costs.

**COUNT IV:**
**QUANTUM MERUIT**
**(Mr. Green v. Aetna)**
**(In the Alternative)**

94. Plaintiff restates and realleges the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

95. Mr. Green made monthly premium payments to Aetna with the good faith, reasonable belief that he was receiving health insurance benefits in return, including a network of medical providers who were licensed, credentialed, and competent health care professionals.

96. Aetna knew that such premiums were paid by Mr. Green with the reasonable expectation of obtaining health insurance benefits and healthcare services from Aetna's network of licensed, credentialed, and competent health care professionals.

97. From early 2016 to early 2017, Mr. Green paid his monthly premiums and received services from Aetna's in-network healthcare provider, PP4AL and Ms. Avery, an individual unlicensed to render medical opinions and diagnoses.

98. Aetna benefited as it was financially enriched from the value of the premiums Mr. Green paid.

99. Aetna would be unjustly enriched if allowed to retain the benefits resulting from the premiums paid by Mr. Green, in that it failed to provide Mr. Green with a network of licensed, credentialed, and competent healthcare professionals.

100. It would be inequitable to reward Aetna with the premiums paid by Mr. Green when it failed to provide a network of licensed, credentialed and competent healthcare professionals in return.

101. Accordingly, Mr. Green seeks judgment against Aetna as to Count IV, including without limitation, direct and consequential damages in the value of his contributions, attorney's fees, and costs.

**COUNT V:**
**NEGLIGENT HIRING**
**(Mr. Green v. PP4AL, Dr. Johnson, and Ms. Byrne)**

102. Plaintiff restates and realleges the allegations in paragraphs 1 through 82 above, as if fully set forth herein.

103. PP4AL hired Ms. Avery to serve as a psychologist.

104. Dr. Johnson, on behalf of PP4AL, was the decisionmaker responsible for hiring Ms. Avery.

105. PP4AL knew or should have known at the time of hiring Ms. Avery that Ms. Avery was not a licensed psychologist and did not hold the appropriate credentials to practice psychology.

106. PP4AL had a duty to investigate Ms. Avery's credentials prior to holding her out as a psychologist.

107. PP4AL breached its duty to its patients by either failing to properly investigate and verify Ms. Avery's credentials, or knowingly holding Ms. Avery out as a psychologist without the proper licensure.

108. Ms. Avery caused severe harm to the patients she treated, including Mr. Green.

109. As a direct result of Ms. Avery's actions which were condoned by PP4AL, Dr. Johnson, and Ms. Byrne, Mr. Green suffered severe harm because he did not receive competent professional advice or treatment from Ms. Avery.

110. As a further direct result of Ms. Avery's actions which were condoned by PP4AL, Dr. Johnson, and Ms. Byrne, Mr. Green suffered further severe harm because he was deprived of the opportunity to receive competent treatment from a properly licensed professional, due to the misrepresentations of PP4AL, Dr. Johnson, and Ms. Byrne.

111. PP4AL is liable for the harm caused by Ms. Avery because it was foreseeable that she would cause harm to others by treating patients without a license.

112. Accordingly, Mr. Green seeks judgment against PP4AL, Dr. Johnson, and Ms. Byrne as to Count V, including without limitation, compensatory damages, attorney's fees, and costs.

**COUNT VI:**
**CONSTRUCTIVE FRAUD**
**(Mr. Green v. PP4AL, Dr. Johnson and Ms. Byrne)**

113. Plaintiff restates and realleges the allegations in paragraphs 1 through 112 above, as if fully set forth herein.

114. PP4AL, Dr. Johnson, and Ms. Byrne made false and material statements of fact to Mr. Green regarding Ms. Avery's educational degrees, licensure and experience as a psychologist.

115. Advertising Ms. Avery, within the practice of PP4AL, as a licensed psychologist with multiple graduate and post-graduate degrees were misrepresentations of existing facts.

116. PP4AL, Dr. Johnson, and Ms. Byrne negligently made the above false, deceptive and misleading, statements regarding Ms. Avery's credentials and licensure.

117. Alternatively, PP4AL, Dr. Johnson, and Ms. Byrne innocently made the above false, deceptive and misleading, statements regarding Ms. Avery's credentials and licensure.

118. In either event, PP4AL, Dr. Johnson and Ms. Byrne held Ms. Avery out as a licensed psychologist for the purpose of enriching themselves and harming Mr. Green.

119. PP4AL, Dr. Johnson and Ms. Byrne held Ms. Avery out as a licensed psychologist with the intent to mislead their patients, including Mr. Green.

120. Mr. Green relied on PP4AL, Dr. Johnson, and Ms. Byrne's false statements which induced him to begin treatment with Ms. Avery and continue to receive treatment from Ms. Avery.

121. Mr. Green was damaged by his reliance on PP4AL, Dr. Johnson, and Ms. Byrne's false statements by paying for unlicensed, unprofessional services as well as not receiving proper and necessary treatment for his medical condition.

122. Mr. Green continues to suffer and will suffer in the future, severe harm due to his reliance on PP4AL, Dr. Johnson, and Ms. Byrne's false statements.

123. Accordingly, Mr. Green seeks judgment against PP4AL, Dr. Johnson, and Ms. Byrne as to Count VI, including without limitation, compensatory damages, punitive damages, attorney's fees, and costs.

**COUNT VII:**
**ACTUAL FRAUD**
**(G3CS and Mr. Green v. Ms. Avery)**

124. Plaintiff restates and realleges the allegations in paragraphs 1 through 123 above, as if fully set forth herein.

125. Ms. Avery made false and material statements of fact to Mr. Green and G3CS regarding her educational degrees, licensure and experience as a psychologist.

126. Ms. Avery holding herself out as a licensed psychologist with multiple graduate and post-graduate degrees were misrepresentations of existing facts.

127. Ms. Avery's statements were intentionally false, deceptive and misleading, and made with the knowledge of their falsehood for the purpose of enriching herself and harming Mr. Green and G3CS.

128. Mr. Green relied on Ms. Avery's false statements in continuing to receive treatment from her.

129. G3CS relied on Ms. Avery's false statements in hiring her and advertising her credentials associated with their programs.

130. Mr. Green was damaged by his reliance on Ms. Avery's false statements by paying for unlicensed, unprofessional services as well as not receiving proper and necessary treatment for his medical condition.

131. G3CS was damaged by its reliance on Ms. Avery's false statements by paying her a salary for which she was not qualified and loss of goodwill and reputation by associating its name with hers.

132. G3CS continues to suffer and will suffer in the future, severe harm due to its reliance on Ms. Avery's false statements.

133. As a direct result of Ms. Avery's misrepresentations, G3CS incurred legal fees directly attributable to ensuring the integrity of G3CS was not compromised, either within the community or under its legal and regulatory obligations.

134. As a direct result of Ms. Avery's wrongdoing G3CS incurred, and continues to incur, legal fees to ensure it can continue to make necessary contributions to the community of Stafford County.

135. Mr. Green continues to suffer and will in the future suffer severe harm due to his reliance on Ms. Avery's false statements.

136. Accordingly, G3CS and Mr. Green seek judgment against Ms. Avery as to Count VII, including without limitation, compensatory damages, punitive damages, attorney's fees, and costs.

**COUNT VIII:**
**COMMON LAW CONSPIRACY**
**(Mr. Green v. All Defendants)**

137. Plaintiff restates and realleges the allegations in paragraphs 1 through 136 above, as if fully set forth herein.

138. Defendants Aetna, PP4AL, Dr. Johnson, Ms. Byrne and Ms. Avery combined and undertook a concerted effort to deprive Mr. Green of licensed, credentialed, and competent healthcare services and treatment in furtherance of their conspiracy to enrich themselves.

139. The Defendants combined for the lawful purpose of providing healthcare services and treatment by the unlawful means of holding out an unlicensed, unqualified and incompetent individual to provide such services.

140. As alleged above, Defendants committed tortious conduct including negligence, fraud and constructive fraud in furtherance of the conspiracy.

141. As a direct and proximate result of the conspiratorial actions of the Defendants Mr. Green suffered severe and extensive damages including payments for premiums and medical bills.

142. As a further direct and proximate result of the conspiratorial actions of the Defendants Mr. Green suffered severe damage by being deprived of competent healthcare services for his medical condition.

143. Mr. Green seeks judgment against all Defendants as to Count VIII and an award for the damages he suffered, including without limitation, compensatory damages including mental anguish and emotional distress, punitive damages, and attorney's fees and costs.

**COUNT IX:**
**CONVERSION**
**(G3CS v. Ms. Avery)**

144. Plaintiff restates and realleges the allegations in paragraphs 1 through 143 above, as if fully set forth herein.

145. Ms. Avery made multiple and repeated purchases with G3CS funds, for her own personal benefit.

146. Ms. Avery was not authorized to make purchases for her own benefit with G3CS funds.

147. Ms. Avery intentionally and knowingly misappropriated G3CS funds for her own benefit and to the detriment of G3CS.

148. By making unauthorized purchases, Ms. Avery wrongfully exercised authority over the goods, namely money, of G3CS.

149. Ms. Avery deprived G3CS of possession of its money.

150. Ms. Avery's actions were a denial of G3CS's rights over its own money.

151. G3CS suffered severe harm and damage as a result of Ms. Avery's wrongful and intentional taking of G3CS's funds.

152. G3CS has been damaged in an amount to be proven at trial, but no less than $13,142.45.

153. Accordingly, G3CS seeks judgment against Ms. Avery as to Count IX, including without limitation, compensatory damages, punitive damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mr. Vernon Green Jr., respectfully requests the following relief:

154. For Defendant Aetna's negligence (Count I) Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $500,000.

a. Additionally, Plaintiff requests the Court award him reasonable attorney's fees and costs in bringing this action.

155. For Defendants' Aetna, PP4AL, Dr. Johnson and Ms. Byrne's gross negligence (Count II) Plaintiff requests this Court award compensatory damages in an amount to be proven at trial, but not less than $500,000.

a. Additionally, Plaintiff requests the Court award exemplary and punitive damages in the full statutory maximum amount of $350,000.

b. Additionally, Plaintiff requests the Court award him reasonable attorney's fees and costs in bringing this action.

156. In the alternative, for Defendant Aetna's breach of contract (Count III) Plaintiff requests this Court award direct and consequential damages in an amount to be proven at trial, but not less than $100,000.

157. In the alternative, as quantum meruit for Plaintiff's payments to Aetna (Count IV) Plaintiff requests this Court award damages in an amount to be proven at trial, but not less than $50,000.

158. For Defendants' Dr. Joni Johnson, Ms. Maryann Byrne, and PP4AL's negligent hiring (Count V), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $500,000.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

159. For Defendants' Dr. Joni Johnson, Ms. Maryann Byrne, and PP4AL's constructive fraud (Count VI), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $500,000.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

160. For Defendant Ms. Avery's actual fraud (Count VII), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $500,000.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

161. For all of the Defendants' conspiracy to injure Plaintiff (Count VIII), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $750,000.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

162. Plaintiff, Mr. Green, as to all Defendants respectfully requests any such other relief as this Court deems proper and just.

WHEREFORE, Plaintiff G3 Community Services respectfully requests the following relief:

163. For Defendant Ms. Avery's actual fraud (Count VII), Plaintiff requests this Court to award compensatory damages in an amount to be proven at trial, but not less than $750,000.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

164. For Defendant Ms. Avery's conversion of property (Count IX), Plaintiff requests this Court to award damages in an amount to be proven at trial, but not less than $13,142.45.

a. Additionally, because Defendant's conduct was intentional, willful and wanton, Plaintiff requests the Court award punitive damages to the full extent permitted by law in the amount of $350,000.

b. Additionally, Plaintiff requests the Court award pre-judgment and post-judgment interest.

c. Additionally, Plaintiff requests the Court award its attorney's fees and costs in bringing this suit.

165. Plaintiff, G3CS, respectfully requests any such other relief as this Court deems proper and just.

**DEMAND FOR JURY TRIAL**

166. Plaintiffs demand a trial by jury on all claims in this matter.

Dated: July 19, 2019

WE ASK FOR THIS,

G3 COMMUNITY SERVICES and
MR. VERNON GREEN JR.
By Counsel

Jack L. White, *pro hac vice* forthcoming
Kevin E. Byrnes, VSB No. 47623
Samuel M. Adelmann, VSB No. 81786
**FH+H, PLLC**
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
jwhite@fhhfirm.com
kbyrnes@fhhfirm.com
sadelmann@fhhfirm.com
*Counsel for Plaintiffs*

# EXHIBIT B

# COMMONWEALTH OF VIRGINIA

STAFFORD CIRCUIT COURT
Civil Division
1300 COURTHOUSE RD PO BOX 69
STAFFORD VA 22554
(540) 658-4220

Summons

To: JONI JOHNSON MD
50 LAFAYETTE STREET
STAFFORD VA 22554

Case No. 179CL20001461-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on,Tuesday, May 12, 2020

Clerk of Court: KATHLEEN M STERNE

by ______________________________
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name: WHITE, MATTHEW M
(803)726-0050

**IN THE CIRCUIT COURT**
**OF VIRGINIA**
**(Stafford County)**

Cathy Gnik, Individually, and as Mother and Next Friend of N.A., a minor, and N.L., a minor; Courtney Andrew-Knight and Tristen Andrew-Major; Kathleen Bell, Individually, and as Mother and Next Friend of A.B., a minor; Nicki Burgess and Daniel Burgess, Individually, and as Parents and Next Friends of M.B., a minor; Brianna Cannavo, Individually, and as Mother and Next Friend of S.C., a minor; Kimberley Correa and Pedro Correa, Individually, and as Parents and Next Friends of A.C., a minor; Meagan Crawford and Carter Crawford, Individually, and as Parents and Next Friends of E.C., a minor; Sierra Davis, Valli Davis, and James Davis; Kasha Haywood and Jesse Haywood, Individually, and as Parents and Next Friends of Z.H., a minor; Ralph Johnson, Jr., Individually, and as Father and Next Friend of J.J., a minor; Catherine Middlekauff and Camden Middlekauff; Leslie Cockrell-Nalls and Billy Nalls, Individually, and as Parents and Next Friends of L.N., a minor, and as Parents of Karah Nalls, and Karah Nalls, Individually,; Kimberley Overton and Mark Ausley, Individually, and as Parents and Next Friends of L.O., a minor; Maria Pavlak and Richard Pavlak, Individually, and as Parents and Legal Guardians of Rita Pavlak; Austin Rodriguez; Jeffrey Roosa; Alveena Spencer; John Viarella; Ava Waggoner, Daphney Waggoner, and William Waggoner; and Lisa Williams and Mario Williams, Individually and as Parents and Next Friends of J.W., a minor, and N.W., a minor

Plaintiffs,

v.

Sharonda L. Avery;
Joni Johnson, M.D.;

Civil Action No.

JURY TRIAL DEMANDED

Pediatric Partners for Attention and Learning, Inc. f/k/a Pediatric Partners for Attention and Learning, LLC f/k/a Partners for Attention and Learning – BH, LLC;
United HelathCare Services, Inc.;
UnitedHealthcare Insurance Company;
Aetna Health Inc.;
Aetna Health and Life Insurance Company;
Aetna Health Insurance Company;
Aetna Life Insurance Company
Defendants.

**COMPLAINT**

COME NOW the Plaintiffs, Cathy Gnik, Individually, and as Mother and Next Friend of N.A., a minor, and N.L., a minor; Courtney Andrew-Knight and Tristen Andrew-Major; Kathleen Bell, Individually, and as Mother and Next Friend of A.B., a minor; Nicki Burgess and Daniel Burgess, Individually, and as Parents and Next Friends of M.B., a minor; Brianna Cannavo, Individually, and as Mother and Next Friend of S.C., a minor; Kimberley Correa and Pedro Correa, Individually, and as Parents and Next Friends of A.C., a minor; Meagan Crawford and Carter Crawford, Individually, and as Parents and Next Friends of E.C., a minor; Sierra Davis, Valli Davis, and James Davis; Kasha Haywood and Jesse Haywood, Individually, and as Parents and Next Friends of Z.H., a minor; Ralph Johnson, Jr., Individually, and as Father and Next Friend of J.J., a minor; Catherine Middlekauff and Camden Middlekauff; Leslie Cockrell-Nalls and Billy Nalls, Individually, and as Parents and Next Friends of L.N., a minor and as Parents of Karah Nalls, and Karah Nalls, Individually; Kimberley Overton and Mark Ausley, Individually, and as Parents and Next Friends of L.O., a minor; Maria Pavlak and Richard Pavlak, Individually, and as Parents and Next Friends of R.P., a minor; Austin Rodriguez; Jeffrey Roosa; Alveena Spencer; John Viarella; Ava Waggoner, Daphney Waggoner, and William Waggoner; and Lisa Williams and Mario Williams, Individually and as Parents and

Next Friends of J.W., a minor, and N.W., a minor (hereinafter collectively referred to as "Plaintiffs"), by counsel, and for their Complaint against Defendants, Sharonda L. Avery, Joni Johnson, M.D., Pediatric Partners for Attention and Learning, Inc. f/k/a Pediatric Partners for Attention and Learning, LLC f/k/a Partners for Attention and Learning – BH, LLC, United HelathCare Services, Inc., UnitedHealthcare Insurance Company, Aetna Health Inc., Aetna Health and Life Insurance Company, Aetna Health Insurance Company, Aetna Life Insurance Company (hereinafter collectively referred to as "Defendants"), state as follows:

1. This action is filed pursuant to The Multiple Claimant Litigation Act, Va. Code § 8.01-267.1, *et seq*.

2. Plaintiffs total more than six individuals joined herein as Plaintiffs in a single action.

3. Plaintiffs' claims involve common issues of law and fact and arise out of the same series of transactions or occurrences, and their claims are properly joined in accordance with Va. Code § 8.01-267.1, *et seq*. The common questions of law or fact predominate and are significant to the actions.

4. Joinder of all Plaintiffs' claims against Defendants herein (i) promotes the ends of justice and the just and efficient conduct and disposition of the actions; (ii) is consistent with each party's right to due process of law; and (iii) does not prejudice any individual party's right to a fair and impartial resolution of each action.

5. Joinder of all Plaintiffs' claims against Defendants herein will be more convenient for the parties, witnesses, and counsel than individual separate actions.

6. All of the Plaintiffs' claims are at the initial stage of litigation, and joinder of their claims more effectively utilizes judicial facilities and personnel and the Court's calendar, and avoids inconsistent rulings, orders, and judgments.

7. Joinder of all of Plaintiffs' claims against Defendants makes prompt settlement of the actions more likely and will not result in prejudice or confusion.

8. All of the Plaintiffs joined herein suffered injuries as a result of the negligence, gross negligence, recklessness, and/or intentional acts of Defendants.

9. All of the Plaintiffs joined herein allege that, between 2012 and 2019, they were defrauded by Sharonda L. Avery, Joni Johnson, M.D., and Pediatric Partners for Attention and Learning, Inc. f/k/a Pediatric Partners for Attention and Learning, LLC in that they were falsely led to pay for services and treatment by an individual, Sharonda Avery, who was not only a fake psychologist, but had not even graduated from college.

10. Plaintiffs' claims, if they had been filed separately, would have met the standards of Va. § 8.01-267.1 and would properly have been consolidated under Va. Code § 8.01-267.3.

11. Joinder of Plaintiffs' claims arising out of the injuries they sustained due to Defendants' negligent, grossly negligent, reckless, and intentional acts as alleged herein is the most efficient and convenient means of litigating these claims against Defendants.

***Parties***

12. Plaintiff, N.A., a minor, is currently 10 years old. N.A. sues by his Mother and Next Friend, Cathy Gnik. At times relevant to this cause of action, N.A. and his mother resided in Orange County, Virginia. Plaintiff Cathy Gnik is an adult residing in Orange County, Virginia.

13. Plaintiff, N.L., a minor, is currently 15 years old. N.L. sues by his Mother and Next Friend, Cathy Gnik. At times relevant to this cause of action, N.L. and his mother resided in Orange County, Virginia.

14. Plaintiff, Tristen Andrew-Major, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

15. Plaintiff, Courtney Andrew-Knight, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

16. Plaintiff, A.B., a minor, is currently 13 years old. A.B. sues by her Mother and Next Friend, Kathleen Bell. At times relevant to this cause of action, A.B. and her mother resided in Stafford County, Virginia. Plaintiff Kathleen Bell is an adult residing in Stafford County, Virginia.

17. Plaintiff, M.B., a minor, is currently 12 years old. M.B. sues by her Parents and Next Friends, Nicki Burgess and Daniel Burgess. At times relevant to this cause of action, M.B. and her parents resided in King George County, Virginia. Plaintiffs Nicki Burgess and Daniel Burgess are adults residing in King George County, Virginia.

18. Plaintiff, S.C., a minor, is currently 8 years old. S.C. sues by his Mother and Next Friend, Brianna Cannavo. At times relevant to this cause of action, S.C. and his mother resided in Spotsylvania County, Virginia. Plaintiff Brianna Cannavo is an adult residing in Spotsylvania County, Virginia.

19. Plaintiff, A.C., a minor, is currently 13 years old. A.C. sues by his Parents and Next Friends, Kimberley Correa and Pedro Correa. At times relevant to this cause of action, A.C. and his parents resided in Stafford County, Virginia. Plaintiffs Kimberley Correa and Pedro Correa are adults residing in Stafford County, Virginia.

20. Plaintiff, E.C., a minor, is currently 8 years old. E.C. sues by his Parents and Next Friends, Meagan Crawford and Carter Crawford. At times relevant to this cause of action, E.C. and his parents resided in Stafford County, Virginia. Plaintiffs Meagan Crawford and Carter Crawford are adults residing in Stafford County, Virginia.

21. Plaintiff, Sierra Davis, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Caroline County, Virginia.

22. Plaintiff, Valli Davis, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Caroline County, Virginia.

23. Plaintiff, James Davis, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Caroline County, Virginia.

24. Plaintiff, Z.H., a minor, is currently 14 years old. Z.H. sues by his Parents and Next Friends, Kasha Haywood and Jesse Haywood. At times relevant to this cause of action, Z.H. and his parents resided in Stafford County, Virginia. Plaintiffs Kasha Haywood and Jesse Haywood are adults residing in Stafford County, Virginia.

25. Plaintiff, J.J., a minor, is currently 16 years old. J.J. sues by his Father and Next Friend, Ralph Johnson, Jr. At times relevant to this cause of action, J.J. and his father resided in Stafford County, Virginia. Plaintiff Ralph Johnson, Jr. is an adult residing in Stafford County, Virginia.

26. Plaintiff, Camden Middlekauff, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Stafford County, Virginia.

27. Plaintiff, Catherine Middlekauff, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Stafford County, Virginia.

28. Plaintiff, L.N., a minor, is currently 16 years old. L.N. sues by his Parents and Next Friends, Leslie Cockrell-Nalls and Billy Nalls. At times relevant to this cause of action, L.N. and his parents resided in Stafford County, Virginia. Plaintiffs Leslie Cockrell-Nalls and Billy Nalls are adults residing in Stafford County, Virginia.

29. Plaintiff, Karah Nalls, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in Stafford County, Virginia. Plaintiffs Leslie Cockrell-Nalls and Billy Nalls are the parents of Karah Nalls.

30. Plaintiff, L.O., a minor, is currently 13 years old. L.O. sues by her Parents and Next Friends, Kimberley Overton and Mark Ausley. At times relevant to this cause of action, L.O. and her parents resided in Stafford County, Virginia. Plaintiffs Kimberley Overton and Mark Ausley are adults residing in Stafford County, Virginia.

31. Plaintiff, Rita Pavlak, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

32. Plaintiff, Maria Pavlak, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

33. Plaintiff, Richard Pavlak, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

34. Plaintiff, Austin Rodriguez, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

35. Plaintiff, Jeffrey Roosa, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Stafford County, Virginia.

36. Plaintiff, Alveena Spencer, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the Richmond County, Virginia.

37. Plaintiff, John Viarella, is a resident of the State of Massachusetts, over the age of 18, and currently resides in the Suffolk County, Massachusetts.

38. Plaintiff, Ava Waggoner, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

39. Plaintiff, Daphney Waggoner, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

40. Plaintiff, William Waggoner, is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides in the City of Fredericksburg, Virginia.

41. Plaintiff, J.W., a minor, is currently 14 years old. J.W. sues by his Parents and Next Friends, Lisa Williams and Mario Williams. At times relevant to this cause of action, J.W. and his parents resided in Stafford County, Virginia. Plaintiffs Lisa Williams and Mario Williams are adults residing in Stafford County, Virginia.

42. Plaintiff, N.W., a minor, is currently 16 years old. J.W. sues by his Parents and Next Friends, Lisa Williams and Mario Williams. At times relevant to this cause of action, N.W. and his parents resided in Stafford County, Virginia.

43. Defendant Sharonda L. Avery ("Ms. Avery") is a resident of the Commonwealth of Virginia, over the age of 18, and, at all times relevant herein, resided at 10 Snow Drive, Stafford, Virginia 22554. Ms. Avery is awaiting her criminal sentencing. At all times relevant, Ms. Avery was an employee, servant, and/or agent of PP4AL and Dr. Johnson.

44. Defendant Joni Johnson, M.D. ("Dr. Johnson"), is a resident of the Commonwealth of Virginia, over the age of 18, and currently resides at 50 Lafayette Street, Stafford, Virginia 22554. At all times relevant, Dr. Johnson was the owner and an employee of

Pediatric Partners for Attention and Learning, Inc. f/k/a Pediatric Partners for Attention and Learning, LLC f/k/a Partners for Attention and Learning – BH, LLC.

45. Defendant Pediatric Partners for Attention and Learning, Inc. f/k/a Pediatric Partners for Attention and Learning, LLC f/k/a Partners for Attention and Learning – BH, LLC ("PP4AL"), at all times relevant herein, was a domestic corporation registered with the Commonwealth of Virginia with its principal place of business at 2128 Jefferson Davis Highway, Suite 201, Stafford, Virginia 22554. At all times relevant herein, PP4AL offered medical, psychological, and other non-medical services to minors and their families. The Registered Agent of PP4AL is Joni J. Johnson at 50 Lafayette Street, Stafford, Virginia 22554.

46. Defendant Aetna Health Inc. is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located at 1425 Union Meeting Road, Blue Bell, PA 19422. Aetna Health Inc. regularly conducts business in Stafford County. The Registered Agent for Aetna Health Inc. is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

47. Defendant Aetna Health and Life Insurance Company is a corporation organized and existing under the laws of Connecticut, with its principal place of business located at 151 Farmington Avenue, RW4A, Hartford, CT 06156. Aetna Health and Life Insurance Company regularly conducts business in Stafford County. The Registered Agent for Aetna Health and Life Insurance Company is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

48. Defendant Aetna Health Insurance Company is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located at 1425 Union Meeting Road, Blue Bell, PA 19422. Aetna Health Insurance Company regularly

conducts business in Stafford County. The Registered Agent for Aetna Health Insurance Company is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

49. Defendants Aetna Health Inc., Aetna Health and Life Insurance Company, and Aetna Health Insurance Company are hereafter collectively to as "Aetna."

50. Defendant CIGNA Health and Life Insurance Company is a corporation organized and existing under the laws of Connecticut, with its principal place of business located at 900 Cottage Grove Road, Bloomfield, CT 06002. CIGNA Health and Life Insurance Company regularly conducts business in Stafford County. The Registered Agent for CIGNA Health and Life Insurance Company is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

51. Defendant Cigna National Health Insurance Company is a corporation organized and existing under the laws of Ohio, with its principal place of business located at 11200 Lakeline Blvd, Suite 100, Austin, TX 78714. Cigna National Health Insurance Company regularly conducts business in Stafford County. The Registered Agent for Cigna National Health Insurance Company is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

52. Defendants CIGNA Health and Life Insurance Company and Cigna National Health Insurance Company are hereafter collectively referred to as "Cigna."

53. Defendant United HealthCare Services, Inc. is a corporation organized and existing under the laws of Minnesota, with its principal place of business located at UnitedHealth Group Center, 9900 Bren Road East, Minnetonka, Minnesota 55343. United HealthCare Services, Inc. regularly conducts business in Stafford County. The Registered Agent of United

HealthCare Services, Inc. is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

54. Defendant UnitedHealthcare Insurance Company is a corporation organized and existing under the laws of Connecticut, with its principal place of business located at 185 Asylum Street, Hartford, CT 06103. UnitedHealthcare Insurance Company regularly conducts business in Stafford County. The Registered Agent of UnitedHealthcare Insurance Company is CT Corporation System at 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808.

55. Defendants United HealthCare Services, Inc. and UnitedHealthcare Insurance Company are hereafter collectively referred to as "United Healthcare."

### *56. Jurisdiction and Venue*

57. This Court has personal jurisdiction over Defendants pursuant to Va. Code § 8.01-328.1 (A)(1), (3), and (4).

58. At all times relevant to this Complaint each of the Defendants lived in or regularly conducted business in Stafford County.

59. Venue is proper in this Court pursuant to Va. Code § 8.01-262 (1), (2), (3), and (4).

### *Factual Allegations*

60. By information and belief, in or around 2012, Ms. Avery began working for PP4AL, a pediatric-focused medical practice that was solely owned by Dr. Johnson.

61. PP4AL, Dr. Johnson, and Ms. Avery advertised and led patients and the larger general public to believe that Ms. Avery was a licensed psychologist. Together, Defendants claimed that Ms. Avery had a Doctorate of Philosophy (Ph.D.) in General Psychology from Grand Canyon University, a Doctorate in Psychology (PsyD) in Clinical Psychology from

Virginia Commonwealth University, a Masters of Education in the field of Special Education, and Cross-Categorical from Grand Canyon University.

62. For approximately 5 years, children and their parents were led to believe that Ms. Avery was "Dr. Avery" and was qualified to render treatment, make diagnoses, and prescribe medications that were subsequently signed off on by Dr. Johnson and other physician employees of PP4AL.

63. Unbeknownst to the patients of Ms. Avery, PP4AL, and Dr. Johnson, Ms. Avery was not a licensed psychologist. Not only did Ms. Avery never obtain a Ph.D., PsyD, or Master's Degree, but she had never even graduated from college.

64. Ms. Avery was permitted to see patients, primarily minors, as a "psychologist." In addition to seeing children and their families at the offices of PP4AL, Ms. Avery also used her fake credentials to defraud families into hiring her to perform educational advocacy. In that setting Ms. Avery was advocating for public and private schools to provide services for the conditions that she had diagnosed, as an unlicensed and unqualified psychologist.

65. By information and belief, at or around September of 2017, Ms. Avery was fired from PP4AL as a result of her poor performance.

66. At no time, before or after Ms. Avery's firing, did Dr. Johnson or PP4AL notify patients that they were treated by an unlicensed and unqualified psychologist.

67. At no time, before or after Ms. Avery's firing, did Dr. Johnson or PP4AL warn patients that their diagnoses may have been erroneous and the medications prescribed for those diagnoses may be unnecessary because such diagnoses and prescriptions were made by an unlicensed and unqualified psychologist.

68. An initial investigation by the Stafford County Sherriff's Office of Ms. Avery's role at a Virginia 501(c)(3) non-profit organization, G3 Community Services, resulted in charges, including embezzlement, obtaining money by false pretenses, and credit card fraud.

69. Further investigation by the Stafford County Sherriff's Office uncovered that Ms. Avery was not a licensed accredited health care provider and was never authorized to perform any duties as a psychologist, therapist, clinician, or member of the healing arts in the Commonwealth of Virginia, nor anywhere else.

70. On May 6, 2019, Ms. Avery was arrested and charged in Stafford County, Virginia.

71. On February 19, 2020, Ms. Avery, after advice from her counsel Charlotte Hodges, Esq., reached a Plea Agreement with the Commonwealth of Virginia. Pursuant to the agreement, Ms. Avery entered a guilty plea, pursuant to Alford v. North Carolina, to the following criminal charges:

a. Obtain Money by False Pretenses (CR19-1046-00);
b. Obtain Money by False Pretenses (CR19-1046-01);
c. Obtain Money by False Pretenses (CR19-1046-02);
d. Obtain Money by False Pretenses (CR19-1046-03);
e. Obtain Money by False Pretenses (CR19-1046-04);
f. Forgery (CR19-1046-07);
g. Uttering (CR19-1046-08);
h. Perjury (CR19-501-07);
i. Uttering (CR19-501-09); and
j. Practice Psychology Without a License (CR19-501-12).

72. In exchange for her plea, the Commonwealth of Virginia agreed to *nolle prosequi* the remaining charges related to this case.

73. At the Hearing on February 19, 2020, the Commonwealth of Virginia presented evidence of fake diplomas used by Ms. Avery, fraudulent business cards used by Ms. Avery, and the website for PP4AL which specifically identified Ms. Avery as "Dr. Sharonda Avery PhD PsyD."

74. The Commonwealth of Virginia recalled stories of Ms. Avery getting angry at a parent who did not call her "Dr. Avery"; the thousands of dollars spent by families as a result of Ms. Avery's lies and misrepresentations; and the unnecessary medications that hurt patients of Ms. Avery and PP4AL. Some of the specific examples referenced by the Commonwealth of Virginia include plaintiffs in this lawsuit, including Plaintiff Austin Rodriguez, Plaintiff K.H., and Plaintiff Jeffrey Roosa.

75. Hon. Charles S. Sharp accepted the plea agreement and ordered Ms. Avery to return on July 17, 2020, for her sentencing. Hon. Sharp acknowledged that the charges that Ms. Avery pled guilty to carried a maximum prison sentence of up to 140 years.

76. At no point relevant herein did PP4AL or Dr. Johnson make any effort to confirm the credentials of Ms. Avery. To the contrary, PP4AL and Dr. Johnson both represented to their patients and the general public that Ms. Avery was a licensed and qualified psychologist.

77. While the damages sustained by each Plaintiff are different, all of the Plaintiffs suffered severe harm due to the misrepresentations and negligence of Ms. Avery, Dr. Johnson, and PP4AL. Such harm includes pecuniary loss, pain and suffering, pain of mind and body, emotional distress, damage to reputation, embarrassment, loss of self-esteem, disgrace, fright,

grief, humiliation, inconvenience, a sense of betrayal, mental anguish, profound injustice, loss of enjoyment of life, depression, psychological injuries, costs, and attorney's fees.

**Cathy Gnik, Individually, and as Mother and Next Friends of N.A., a minor, and N.L., a minor**

78. In April of 2016, Plaintiff Cathy Gnik ("Ms. Gnik") brought her children, Plaintiffs N.A. and N.L., to PP4AL to be assessed by Dr. Johnson and Ms. Avery, who she was led to believe was a licensed psychologist by Defendants PP4AL, Dr. Johnson, and Ms. Avery.

79. From May through July of 2016, N.A. was assessed by the following team of providers at PP4AL: "Dr. Joni J. Johnson, MD" (Medical Director); "S. Roni Avery, PhD, PsyD, MEdS" (Cognitive Specialist); "MaryAnn Byrne, Med., LPC, NCC" (Behavior Health Specialist); and "Joan Cephas, LCSW" (Behavior Health Specialist).

80. From May through July of 2016, N.L. was assessed by the following team of providers at PP4AL: "Dr. Joni J. Johnson, MD" (Medical Director); "S. Roni Avery, PhD, PsyD, MEdS" (Cognitive Specialist); "MaryAnn Byrne, Med., LPC, NCC" (Behavior Health Specialist); and "Joan Cephas, LCSW" (Behavior Health Specialist).

81. At the culmination of the "assessment," in a report signed by Ms. Avery and MaryAnn Byrne, N.A. was diagnosed as having Autism Spectrum Disorder Level 2, Severe Anxiety Disorder, ADHD Combined Type, and Visual Deficit R/O Convergence. The report also included referrals for N.A. to receive an ABA Therapist Referral; Behavioral Interventions; Care Coordination Conference; Development Optometry; Educational Advocacy for Public School; Medication Recommendation Given by Dr. Johnson; Parenting Coaching; Speech & Language Pathologist Referral; Pragmatics; Genetic Testing; and NeuroCogntive Attention Training (NAT).

82. At the culmination of the "assessment," in a report signed by Ms. Avery and MaryAnn Byrne, N.L. was diagnosed as having Autism Spectrum Disorder Level 2, Severe Anxiety Disorder, ADHD Combined Type, and Visual Deficit R/O Convergence. The report also included referrals for N.A. to receive an ABA Therapist Referral; Behavioral Interventions; Care Coordination Conference; Development Optometry; Educational Advocacy for Public School; Medication Recommendation Given by Dr. Johnson; Occupational Therapist Refferal; Parenting Coaching; Speech & Language Pathologist Referral: Pragmatics; Genetic Testing; and NeuroCogntive Attention Training (NAT).

83. Between April of 2016 and January of 2019, Ms. Gnik continued to entrust Defendants PP4AL, Dr. Johnson, and Ms. Avery with the care and treatment of her sons N.A. and N.L.

84. Ms. Gnik reasonably believed that N.A. and N.L. were receiving competent medical care and treatment from Ms. Avery and reasonably relied upon her belief that N.A. and N.L. were receiving competent medical care and treatment from Ms. Avery.

85. Additionally, during that time period, Ms. Avery attempted to get Ms. Gnik to hire her to assist with N.A.'s Individualized Education Plan ("IEP") process, but Ms. Gnik was unable to afford the services.

86. Ms. Gnik was invoiced by, and made payments to, PP4AL for services provided to N.A. and N.L. by Ms. Avery, Dr. Johnson, and the other employees, servants, and agents of PP4AL.

87. Ms. Gnik only trusted Defendants PP4AL, Dr. Johnson, and Ms. Avery to provide care and treatment to N.A. and N.L. because Defendants PP4AL, Dr. Johnson, and Ms. Avery